Kimberly M. Ingram-Hogan (SBN 305497)
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
Phone: (615) 252-3592
kingram@bradley.com

Erin J. Illman (SBN 238262)
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Phone: (704) 338-6026
Email: eillman@bradley.com

*Attorneys for Defendant Smith & Wesson Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| TONY D'ANTONIO, THOMAS THAYER, and REINA CUEVAS GARCIA, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>SMITH & WESSON INC.,<br><br>        Defendant. | Case No. 5:25-cv-03085-PCP<br><br>**SMITH & WESSON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge:        Hon. J. Casey Pitts<br>Hearing Date:  Aug. 21, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom:    8 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF MOTION............................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 2

I.      INTRODUCTION ...................................................................................................... 2

II.     STATEMENT OF THE ISSUES TO BE DECIDED............................................... 4

III.    RELEVANT ALLEGATIONS AND FACTUAL BACKGROUND ............................ 5

IV.     LEGAL STANDARD................................................................................................. 5

V.      ARGUMENT .............................................................................................................. 6

        A.      The Complaint fails to allege conduct that could sustain the first and second causes of action. ........................................................................................... 6

                1.      Plaintiff cannot state invasion of privacy claims against S&W for private communications to which S&W was a party.................................. 7

                2.      The Complaint does not plausibly allege a serious or highly offensive invasion of privacy....................................................................... 8

        B.      The Complaint fails to plausibly allege a violation of Section 631 of CIPA. ................................................................................................................ 10

                1.      S&W cannot be held directly liable under Section 631............................ 11

                2.      The Complaint does not allege a plausible predicate violation for an aiding-and-abetting claim under Section 631. ........................................... 11

                        a.      The Complaint fails to state a predicate violation of the prohibition on wiretapping a telegraph or telephone line. ............. 12

                        b.      The Complaint fails to state a predicate violation of the prohibition on "reading" or "learning" the contents of communications "while" in transit................................................... 12

                        c.      The Complaint fails to state a claim for using information obtained in violation of Section 631. ............................................ 14

                3.      Certain categories of Private Communications allegedly collected do not qualify as "contents" under Section 631(a). ................................... 15

C.   The Complaint fails to state a claim under Section 638.51 of CIPA. ................... 15

   1.   The alleged cookies and code are not pen registers as a matter of law. ........................................................................................................... 16

   2.   The Complaint does not plausibly allege that S&W used a pen register because Plaintiffs allege S&W tracked contents. ........................ 18

D.   The Complaint fails to state a plausible or particularized claim for common law fraud, deceit, and/or misrepresentation claim. ................................. 19

E.   The Complaint fails to state a claim for unjust enrichment because it does not identify a benefit received and retained. ........................................................ 21

F.   The Complaint fails to plausibly plead claims arising in contract. ...................... 21

   1.   Plaintiffs cannot state a claim for breach of implied contract because they have not identified any mutual obligations that create a contract. .......................................................................................................... 22

   2.   The Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing. .................................................... 23

G.   The Complaint fails to state a claim for trespass to chattels. ............................... 24

VI.   CONCLUSION .......................................................................................................... 25

MOTION TO DISMISS; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*A.B. by & Through Turner v. Google LLC*,

5

　737 F. Supp. 3d 869 (N.D. Cal. 2024) ....................................................................10

6

*Alameda Health Sys. v. Alameda Cnty. Employees' Ret. Ass'n*,

　100 Cal. App. 5th 1159 (2024) ..............................................................................23

7

*In re Ambry Genetics Data Breach Litig.*,

8

　567 F. Supp. 3d 1130 (C.D. Cal. 2021) .................................................................10

9

*Ashcroft v. Iqbal*,

10

　556 U.S. 662 (2009).................................................................................................6

11

*Astiana v. Hain Celestial Grp., Inc.*,

　783 F.3d 753 (9th Cir. 2015) .................................................................................21

12

*Aviles v. Liveramp, Inc.*,

13

　No. 24STCV19869, 2025 WL 487196 (Cal. Super. Ct., Jan. 28, 2025)...........16, 17

14

*B.K. v. Desert Care Network*,

15

　No. 2:23-CV-05021 SPG, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ................11

16

*Beckwith v. Dahl*,

　205 Cal. App. 4th 1039 (2012) ..............................................................................20

17

*Bell Atl. Corp. v. Twombly*,

18

　550 U.S. 544 (2007)..................................................................................................6

19

*Bird v. Real Time Resols., Inc.*,

20

　183 F. Supp. 3d 1058 (N.D. Cal. 2016) ............................................................19, 20

21

*Brodsky v. Apple Inc.*,

　445 F. Supp. 3d 110 (N.D. Cal. 2020) ...................................................................15

22

*California Crane Sch., Inc. v. Google LLC*,

23

　722 F. Supp. 3d 1026 (N.D. Cal. 2024) (Pitts, J.)..................................................21

24

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*,

25

　79 Cal. App. 5th 755 (2022) ............................................................................24, 25

26

*Casillas v. Transitions Optical, Inc.*,

　No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Ct., Sept. 9, 2024)..........16, 17

27

*Christie's Cabaret of Glendale LLC v. United Nat'l Ins. Co.*,

28

　562 F. Supp. 3d 106 (D. Ariz. 2021) .....................................................................16

*Clemco Indus. v. Com. Union Ins. Co.*,
    665 F. Supp. 816 (N.D. Cal. 1987), *aff'd*, 848 F.2d 1242 (9th Cir. 1988) ..............................16

*Cody v. Ring LLC*,
    718 F. Supp. 3d 993 (N.D. Cal. 2024) ..................................................................11, 12, 13, 14

*Cousin v. Sharp Healthcare*,
    681 F. Supp. 3d 1117 (S.D. Cal. 2023)...................................................................................10

*Doe v. Meta Platforms, Inc.*,
    690 F. Supp. 3d 1064 (N.D. Cal. 2023) ................................................................................24

*Esparza v. Kohl's, Inc.*,
    723 F. Supp. 3d 934 (S.D. Cal. 2024)................................................................................9, 10

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ........................................................................................ *passim*

*Fosson v. Palace (Waterland), Ltd.*,
    78 F.3d 1448 (9th Cir. 1996) ..................................................................................................22

*In re Google Assistant Priv. Litig.*,
    546 F. Supp. 3d 945 (N.D. Cal. 2021) ..................................................................................20

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................................................11

*Greenley v. Kochava, Inc.*,
    684 F. Supp. 3d 1024 (S.D. Cal. 2023) .................................................................................18

*Guz v. Bechtel Nat'l Inc.*,
    24 Cal. 4th 317 (2000) ...........................................................................................................23

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................................8, 19

*Heiting v. Taro Pharms. USA, Inc.*,
    728 F. Supp. 3d 1112 (C.D. Cal. 2024) ...........................................................................12, 15

*Heiting v. Taylor Fresh Foods, Inc.*,
    No. 24STCV12891, 2024 WL 3833296 (Cal. Super. Ct., July 31, 2024) ..............................18

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) .............................................................................................................7

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) ...................................................................................................................7

*Intel Corp. v. Hamidi*,
    30 Cal. 4th 1342 (2003) .........................................................................................................24

MOTION TO DISMISS; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..............................................9, 10

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)..............................24

*James v. Allstate Ins. Co.*,
No. 3:23-CV-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ..............................8

*Lau v. Gen Digital Inc.*,
No. 22-CV-08981-RFL, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ..............................20

*Lazar v. Superior Court*,
12 Cal. 4th 631 (Cal. 1996)..............................20

*Levings v. Choice Hotels Intern., Inc.*,
No. 23STCV28359, 2024 WL 1481189 (Cal. Super. Ct., Apr. 3, 2024)..............................17

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ..............................12, 13

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct., Mar. 13, 2024) ..............................16

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..............................8, 10

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023) ..............................20

*McCoy v. Alphabet, Inc.*,
No. 20-CV-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ..............................8, 10

*Mirmalek v. Los Angeles Times Comms. LLC*,
24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ..............................18, 19

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)..............................23

*Palacios v. Fandom, Inc.*,
No. 24STCV11264, 2024 WL 5494527 (Cal. Super. Ct., Sept. 24, 2024)..............................16, 17

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
223 Cal. App. 4th 1105 (2014) ..............................20

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
360 F. Supp. 3d 994 (N.D. Cal. 2018) ..............................22

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ..............................10

*Rodriguez v. Fountain9, Inc.*,
  No. 24STCV04504, 2024 WL 3886811 (Cal. Super. Ct., July 9, 2024) ...............................16

*Rodriguez v. Google LLC*,
  No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)................................13, 14

*Rodriguez v. Plivo Inc.*,
  No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Ct., Oct. 2, 2024) ...............................16

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
  No. 2:24-CV-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ......................7, 8

*Sanchez v. Cars.com Inc.*,
  No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct., Jan. 27, 2025)...........................16, 17

*Shah v. Fandom, Inc.*,
  754 F. Supp. 3d 924 (N.D. Cal. 2024) ...........................................................................18, 19

*Shulman v. Grp. W Productions, Inc.*,
  18 Cal. 4th 200 (1998) ..............................................................................................................7

*Smith v. YETI Coolers, LLC*,
  754 F. Supp. 3d 933 (N.D. Cal. 2024) .......................................................................................6

*Stemmelin v. Matterport, Inc.*,
  No. C 20-04168, 2020 WL 6544456 (N.D. Cal. Nov. 7, 2020)................................................19

*Swarts v. Home Depot, Inc.*,
  689 F. Supp. 3d 732 (N.D. Cal. 2023) ..............................................................................12, 13, 15

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .....................................................................................................6

*Tavernetti v. Superior Court*,
  22 Cal. 3d 187 (1978) ..............................................................................................................10

*Thomas v. Papa Johns Int'l, Inc.*,
  No. 22CV2012 DMS, 2024 WL 2060140 (S.D. Cal. May 8, 2024).......................................10

*Torres v. Prudential Fin., Inc.*,
  No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .............................14

*Valenzuela v. Keurig Green Mountain, Inc.*,
  674 F. Supp. 3d 751 (N.D. Cal. 2023) .............................................................................12, 13, 14

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .............................................................................................6, 20

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
  472 F. Supp. 3d 649 (N.D. Cal. 2020) .....................................................................................24

MOTION TO DISMISS; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES

*Williams v. DDR Media, LLC,*
  No. 22-CV-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ....................................7

*Williams v. TMC Health,*
  No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ..........................8

*Williams v. What If Holdings, LLC,*
  No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ..............................11

*X Corp. v. Bright Data Ltd.,*
  733 F. Supp. 3d 832 (N.D. Cal. 2024) ...........................................................................25

*In re Zynga Privacy Litig.,*
  750 F.3d 1098 (9th Cir. 2014) .......................................................................................15

**Statutes**

Cal. Penal Code § 631(a) ...................................................................................... *passim*

Cal. Penal Code § 638.50(b) ......................................................................................17, 19

Cal. Penal Code § 638.51(a) ................................................................................. *passim*

California Invasion of Privacy Act ....................................................................... *passim*

Federal Wiretap Act ..........................................................................................................15

**Other Authorities**

California Senate Bill 690....................................................................................................16

Fed. R. Civ. P. 8 ...................................................................................................................3

Fed. R. Civ. P. 9(b) ....................................................................................................3, 6, 20

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 6

MOTION TO DISMISS; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 21, 2025, at 10:00 a.m., or such other date and time as the Court prefers, before the Honorable J. Casey Pitts, San Jose Courthouse, Courtroom 8, 4th Floor, 280 South First Street, San Jose, CA 95113, Defendant Smith & Wesson Inc. ("S&W") will, and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for entry of an order dismissing Plaintiffs Tony D'Antonio, Thomas Thayer, and Reina Cuevas Garcia's Class Action Complaint (Doc. 1) (hereafter, "Complaint") in its entirety with prejudice.

As grounds for this Motion, S&W states that the Complaint fails to state a claim upon which relief can be granted for seven reasons. First, Plaintiffs fail to state claims for invasion of privacy and intrusion upon seclusion because: (a) S&W cannot intrude upon communications to which it was a party and (b) the nature of the information shared is not highly offensive or a serious invasion of privacy as a matter of law. Second, Plaintiffs' claim for a violation of CIPA's wiretapping provision, Cal. Penal Code § 631, fails because: (a) S&W cannot eavesdrop upon conversations to which it is a party and (b) Plaintiffs have not plausibly pled a predicate violation that S&W allegedly aided and abetted. Third, Plaintiffs' claim for a violation of CIPA's pen register statute, Cal. Penal Code § 638.51, fails because website "cookies" and related code are not, and are not plausibly pled to be, pen registers. Fourth, Plaintiffs' claim for fraud, deceit, and/or misrepresentation fails because Plaintiffs have not pled this claim with particularity and have not plausibly alleged harm resulting from any alleged misrepresentation. Fifth, Plaintiffs have failed to adequately plead a claim for unjust enrichment because the Complaint does not identify a benefit S&W received and retained. Sixth, Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing fail because Plaintiffs have not identified a contract containing mutual obligations. Seventh, and finally, Plaintiffs' claim for trespass to chattels fails because an alleged trespass upon privacy rights is not sufficient to state a claim, and Plaintiffs have not plausibly pled any damage to their personal property.

The Motion is based on this Motion, the incorporated Memorandum of Points and Authorities, any reply brief, and any further argument the Court might allow.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

Plaintiffs attempt to pioneer new data-privacy claims in this putative class action.

4 Originally, lawsuits regarding data privacy targeted the party that was collecting and using the

5 data. But Plaintiffs seek to hold S&W liable for third parties' alleged tracking of Plaintiffs' activity

6 on S&W's website. The "hook" for these novel claims is the allegation that S&W offered Plaintiffs

7 the opportunity to opt out of cookies but did not honor those opt outs with respect to third-party

8 cookies. For the reasons explained herein, Plaintiffs stretch the claims pled beyond their logical

9 limits, and the Court should dismiss the claims with prejudice.

10

First, Plaintiffs cannot state a viable claim for a privacy violation under the common law.

11 Both torts alleged—invasion of privacy and intrusion upon seclusion—require the *defendant* to

12 intrude upon the plaintiff's private communications. Here, Plaintiffs allege that third parties

13 intruded upon their communications with S&W on *its* website. As a matter of law, a party to a

14 communication cannot invade the privacy of that communication. Further, even if such an

15 intrusion were theoretically possible, it certainly is not alleged here. The type of intrusion alleged

16 in the Complaint does not meet the high bar required for an invasion of privacy or intrusion upon

17 seclusion claim. Privacy torts simply were not designed to hold a defendant liable for allegedly

18 allowing a third party to view a plaintiff's information.

19

Second, Plaintiffs also cannot state a viable claim under the wiretapping provision of the

20 California Invasion of Privacy Act ("CIPA"), Penal Code § 631. Because S&W is a party to the

21 alleged communications on its website, it is exempt from direct liability under Section 631. As a

22 result, S&W could only be held liable if it aided and abetted another's violation of one of the three

23 prohibitions listed in Section 631: tapping telephone or telegraph lines; reading, learning, or

24 attempting to read or learn the contents of communications while the communication is in transit;

25 or using information obtained in one of those ways. The Complaint, however, does not identify

26 any telephonic or telegraphic communications. It also does not identify any communications for

27 which a third party read, learned, or attempted to read the contents while the communication was

28 in transit. Again, Plaintiffs are attempting to stretch a statute that was designed to criminalize

MOTION TO DISMISS; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES

specific behavior—wiretapping—and apply it to a defendant who allegedly allowed its own communications to be shared. The claim cannot be sustained.

Third, Plaintiffs also cannot state a viable claim under CIPA's pen register statute, Penal Code § 638.51. Plaintiffs theorize that cookies are pen registers because they record IP addresses and device or browser information. Although there is a split of authority among California courts, S&W respectfully submits that cookies that collect the website user's IP address cannot be pen registers. Pen registers generally use mechanical technology to track the number called at the destination—not the user's information. Here, Plaintiffs allege that S&W's website cookies collected their own IP addresses, rather than information at the destination. And there is good reason not to expand CIPA's pen register statute to the collection of IP addresses since this would criminalize an activity that allows the Internet to function. Furthermore, Plaintiff has not plausibly alleged that the cookies at issue here are pen registers. The Complaint alleges that the cookies on S&W's website collect the contents of communication, and the Penal Code defines pen registers as devices and processes that do *not* collect the contents of the communication. As a result, Plaintiffs' interpretation of the pen register statute is not viable.

Fourth, the Complaint does not meet the pleading standards of Federal Rules of Civil Procedure 8 and 9(b) in alleging a claim for fraud, deceit, and misrepresentation. Rule 9(b) requires Plaintiffs to allege when, where, and how a misrepresentation was made to Plaintiffs, and the Complaint fails to do so. The Complaint also does not explain what harm such misrepresentations caused. As a result, Plaintiffs fail to plausibly allege the fundamental elements of fraud.

Fifth, Plaintiffs cannot state a claim for breach of contract or quasi-contract. The Complaint attempts to assert a claim for unjust enrichment, yet it fails to plausibly plead that S&W received and retained a benefit. Without such an allegation, the claim fails as a matter of law. Further, Plaintiffs' claims for breach of an implied contract and breach of the implied duty of good faith and fair dealing fail because the Complaint does not plausibly allege the existence of any contract between Plaintiffs and S&W. At most, the Complaint points to alleged unilateral statements in a privacy policy, which do not create a contract. Stated another way, mere statements of policy posted on a website cannot possibly make a contract.

Sixth, and finally, the Complaint fails to state a claim for trespass to chattels. The gravamen of the Complaint is that S&W failed to protect Plaintiffs' privacy interests, but a trespass to chattels claim cannot be grounded in privacy rights. Although Plaintiffs vaguely assert that the cookies loaded on S&W's website also interfered with Plaintiffs' computers and other devices, they do not allege any facts that make this conclusory allegation plausible. Again, this is a common law claim that does not reach as far as Plaintiffs seek to stretch it.

For all of these reasons, and as explained further below, the Court should dismiss the Complaint with prejudice.

## II.     STATEMENT OF THE ISSUES TO BE DECIDED

1.     Whether claims for invasion of privacy and/or intrusion upon seclusion fail when: (a) S&W was party to the "private" communications allegedly intruded upon and (b) the information collected and/or disclosed is of the type normally shared in a commercial context.

2.     Whether Plaintiffs have failed to plausibly plead a violation of CIPA's wiretapping statute where the Complaint does not allege that: (a) any telephonic or telegraphic communications took place or (b) the contents of communications were learned or read while the communication was in transit.

3.     Whether Plaintiff have failed to plausibly plead the use of a pen register in violation of CIPA's pen register statute where the alleged pen register recorded contents of communications, as well as IP addresses necessary for the function of the website.

4.     Whether Plaintiffs have failed to adequately plead a claim for fraud where the Complaint does not contain particularized allegations regarding the representations made to Plaintiffs and does not identify any harm resulting from the representations.

5.     Whether Plaintiffs have failed to adequately plead a claim for unjust enrichment where the Complaint does not identify a benefit S&W received and retained.

6.     Whether Plaintiffs' claims for breach of implied contract and breach of the implied covenant of good faith and fair dealing fail because the Complaint does not identify mutual obligations of the parties that created a contract.

7.    Whether Plaintiffs' claim for trespass to chattels fails because, as a matter of law, Plaintiffs cannot ground that claim in alleged privacy rights and have not plausibly pled any damage to their personal property.

## III.    RELEVANT ALLEGATIONS AND FACTUAL BACKGROUND

The Complaint centers on an alleged data privacy violation. Compl. ¶ 1. Specifically, Plaintiffs assert that a cookie consent banner pop-up was displayed to Plaintiffs and other consumers who visited S&W's website. *Id.* The pop-up gave Plaintiffs the option to "Reject All" cookies. *Id.* Further information about S&W's cookie usage was provided in S&W's Privacy Policy, which represented that "[w]e or our third-party providers place and store internet Cookies on your hard drive." *Id.* ¶ 24, 34. Plaintiffs acknowledge that they read the Privacy Policy. *Id.* ¶¶ 68, 76, 84, 154.

Nonetheless, Plaintiffs assert that they selected "Reject All" on the pop-up display and believed they declined cookies and tracking technologies. *Id.* ¶¶ 2–3, 26. Plaintiffs assert that S&W had integrated "resources and programming scripts" from certain third parties, including Google LLC, X Corp., Listrak, Inc., and Lightbox (the "Third Parties"). *Id.* ¶ 2. The third-party resources enabled cookies to be sent to Plaintiffs and other visitors' browsers, stored on their devices, and transmitted to the Third Parties along with user data. *Id.* ¶¶ 2–3, 16, 26. Plaintiffs maintain that the third-party cookies collected and tracked their "browsing activities and private communications with Defendant." *Id.* ¶¶ 20, 28. The Third Parties, Plaintiffs allege, analyzed and aggregated the user data to create consumer profiles and perform targeted advertising. *Id.* ¶¶ 4, 32.

Based on these allegations, Plaintiffs have accused S&W of invasion of privacy and intrusion upon seclusion, wiretapping and using a pen register in violation of CIPA, common law fraud, deceit, and/or misrepresentation, unjust enrichment, breach of implied contract, breach of implied covenant of good faith and fair dealing, and trespass to chattels. As explained below, none of Plaintiffs' nine causes of action state a claim upon which relief can be granted.

## IV.    LEGAL STANDARD

S&W moves to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive such a motion, "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Instead, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 664.

S&W further moves to dismiss Plaintiffs' claim for common law fraud, deceit, and/or misrepresentation for failing to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). This Rule requires a plaintiff bringing such a claim to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the heightened standard of Rule 9(b), a plaintiff must identify the "who, what, when, where, and how" of the alleged misconduct and explain how the statement or omission complained of was false or misleading. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted). In other words, Rule 9(b) requires plaintiffs to give "notice of the particular misconduct which is alleged" so defendants "can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

## V.    ARGUMENT

### A.    The Complaint fails to allege conduct that could sustain the first and second causes of action.

"The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024) (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014)). And for good reason: privacy torts were designed to protect individuals from extreme conduct that threatens reasonable expectations of privacy, not to make normal inconveniences unlawful. Here, Plaintiffs want to take tort law that protects against extreme behavior and apply it to online behavior on a commercial site. As explained below, the Court should reject this attempt.

MOTION TO DISMISS; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES

A claim for invasion of privacy under the California Constitution requires identification of (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994). When raising a common law claim for intrusion upon seclusion,[1] a plaintiff must allege that: (1) "the defendant . . . intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" (2) "in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). Here, the Complaint fails to plausibly allege: (1) *any* intrusion or invasion of a privacy interest because the "Private Communications" at issue were with S&W or (2) an intrusion or invasion that is serious or offensive enough to be actionable.

### 1.     Plaintiff cannot state invasion of privacy claims against S&W for private communications to which S&W was a party.

To show intrusion or invasion of a privacy interest, "the defendant must have penetrated some zone of physical or sensory privacy . . . or obtained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Hernandez*, 47 Cal. 4th at 286 (quotation omitted); *see also Facebook Tracking Litig.*, 956 F.3d at 601–02 (employing this test in the context of privacy claims related to online tracking technologies). However, "one cannot logically intrude into communications to which they are a party." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *8 (C.D. Cal. Feb. 27, 2025). As a result, an invasion of privacy claim fails as a matter of law when the plaintiffs shared the information with the defendant and bases their claim on the defendant sharing the information with third parties. *See id.* (dismissing cause of action for intrusion upon seclusion based upon disclosure of medical information to third parties); *Williams v. DDR Media, LLC*, No. 22-CV-

---

[1] California courts often view intrusion upon seclusion as a type of invasion of privacy. *See, e.g., Shulman v. Grp. W Productions, Inc.*, 18 Cal. 4th 200, 230–31 (1998). Although there can be some overlap among privacy torts, here, the Complaint makes clear what type of privacy torts it is alleging by stating the elements of such torts. *See* Compl. ¶¶ 95, 107. The Ninth Circuit has noted the conceptual overlap in these claims and generally analyzes them together. *See In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking Litig.*"), 956 F.3d 589, 601 (9th Cir. 2020).

03789-SI, 2023 WL 5352896, at *7 (N.D. Cal. Aug. 18, 2023) (dismissing privacy claim where the plaintiff voluntarily provided information to the defendant); *James v. Allstate Ins. Co.*, No. 3:23-CV-01931-JSC, 2023 WL 8879246, at *6 (N.D. Cal. Dec. 22, 2023) (same). Thus, in the context of tracking technologies, "the only *intrusion* is perpetrated by the technology companies, *not* [a d]efendant" who owns the site. *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *7 (D. Ariz. Sept. 30, 2024) (relied upon in *Saedi*).

Here, the Complaint alleges that third parties intruded upon Plaintiffs' seclusion and invaded their privacy and that S&W allowed that to happen (*see* Compl. ¶¶ 2, 97, 99, 108, 111), but **not** that S&W "intruded on" or "invaded" the privacy interest. Indeed, Plaintiff cannot plausibly allege an intrusion or invasion because all of the relevant conduct occurred on S&W's own website, such that S&W was a party to the communication. *See Saedi*, 2025 WL 1141168, at *8. This contrasts to *Facebook Tracking Litigation*, in which the plaintiffs sued the third party that was tracking the information, not the owner of the website that the plaintiffs intentionally visited. *See* 956 F.3d at 596 (describing core allegation that Facebook uses "plug-ins to track users' browsing histories when they visit third-party websites"). For these reasons, Plaintiffs fail to state an actionable claim against S&W.

### 2.    The Complaint does not plausibly allege a serious or highly offensive invasion of privacy.

"Courts in this district have held that data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022). Collection and disclosure of browsing histories has been held not to be "highly offensive," causing courts to dismiss privacy claims premised on such behavior. *See, e.g., McCoy v. Alphabet, Inc.*, No. 20-CV-05427-SVK, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2, 2021) (dismissing invasion of privacy claims premised on collection of user app activity); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (dismissing invasion of privacy claims premised on disclosure of browsing histories). Likewise, courts have dismissed invasion-of-privacy claims premised upon disclosure of unique device identifiers; geolocation information; personal data, such as "the user's gender, age, zip code

and time zone; and app-specific information, such as which functions [p]laintiff performed on the app." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1050, 1063 (N.D. Cal. 2012); *see also Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946–47 (S.D. Cal. 2024) (granting motion to dismiss where plaintiff alleged software captured the plaintiff's "personal details," "browsing history," and IP address).

Here, the Complaint fails to allege a highly offensive or serious invasion of privacy. The Complaint alleges that, through cookies on S&W's website, third parties collected Plaintiffs' "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." Compl. ¶ 3; *see also id.* ¶ 20 (further describing these categories); *id.* ¶ 97 (listing in cause of action for invasion of privacy); *id.* ¶ 108 (same for intrusion upon seclusion). Unlike in *Facebook Tracking Litigation*, 956 F.3d at 606, however, the Complaint does not allege that S&W or the Third Parties used these trackers to monitor activity when Plaintiffs were *not* on S&W's website.

Tracking of user identifiers, demographics, devices, and locations cannot be the basis of a claim for invasion of privacy or intrusion upon seclusion. To be clear, "user input data" like "name, age, gender, email address, location, and/or payment," or "demographic information" based on "inferences" about the same, is information that Plaintiffs input on S&W's site voluntarily. S&W cannot possibly have invaded Plaintiffs' privacy by collecting information that was voluntarily disclosed. *See supra* Part A.1. Even putting that legal obstacle aside, collecting or sharing this type of information simply is not highly offensive or a serious invasion of privacy. Indeed, courts have specifically rejected the notion that invasion of privacy claims can be based on collection and disclosure of device information, user identifiers, and geolocation data. *See, e.g.*, *Esparza*, 723 F. Supp. 3d at 946–47; *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1050, 1063.

The remaining categories of information all relate to Plaintiffs' activity on the website: browsing history, visit history, website interactions, interests and preferences, shopping behavior, referring URL, and session information. As described above, however, courts have directly held that privacy claims generally cannot be premised upon the collection of browsing history or the

plaintiff's activity on a website or app. *See, e.g.*, *Esparza*, 723 F. Supp. 3d at 946–47; *McCoy*, 2021 WL 405816, at *8; *Low*, 900 F. Supp. 2d at 1025; *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1050, 1063; *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126–27 (S.D. Cal. 2023); *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024). The exceptions to this usually involve medical information—a highly private category of information—or collection of information from minors. *See A.B. by & Through Turner v. Google LLC*, 737 F. Supp. 3d 869, 884 (N.D. Cal. 2024) (Pitts, J.); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 889–94 (C.D. Cal. 2024); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021). No such highly sensitive information is at issue here. On the contrary, the Complaint alleges that "Defendant manufactures firearms" and "operates the Website, which allows visitors to receive information about [its] products and learn where they can purchase them." Compl. ¶ 22. The Complaint (accurately) does not allege that visitors can purchase firearms on the website.

Thus, the question before the Court is whether collecting information about what interests and preferences a person shows through their activity on a website is highly offensive or a serious invasion. The Complaint argues that this is highly offensive because "Defendant represented that Website users could 'Reject All' cookies when, in fact, Defendant caused such third-party cookies to be stored on consumers' devices and browsers, and to be transmitted to third parties." Compl. ¶ 111. But this does not address the fact that the information shared simply was not of the type that would offend a reasonable person. As a result, the Complaint fails to state a claim for invasion of privacy or intrusion upon seclusion.

**B.    The Complaint fails to plausibly allege a violation of Section 631 of CIPA.**

Section 631(a) of CIPA prohibits "three distinct and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978). This section also prohibits prohibits "aid[ing], agree[ing] with,

employ[ing], or conspir[ing] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned [in the first three clauses]." Cal. Penal Code § 631(a).

In other words, Plaintiffs are attempting to stretch a statute designed to criminalize actual wiretapping—*i.e.*, spying on another person's communications—and use it to impose civil liability on a party to those communications if the party shares the information. As explained below, neither the purpose nor the plain text of the statute reaches such conduct. The Complaint fails to state a viable claim for violation of Section 631.

### 1.    S&W cannot be held directly liable under Section 631.

S&W cannot be held directly liable for violating any provision of Section 631 because these prohibitions apply "only to eavesdropping by a third party." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 998 (N.D. Cal. 2024) (quoting *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979)). In other words, because "[o]nly a third party can listen to a conversation secretly," a party to the communication cannot directly violate Section 631. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021); *see also Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("Parties to a conversation cannot eavesdrop on their own conversation," so only the aiding-and-abetting provision can apply to them). Here, the Complaint alleges liability based on Plaintiffs' communications with S&W's website. *See generally* Compl. ¶¶ 25–28. But because S&W was a party to any communications on its own website, it cannot be held directly liable under Section 631.

### 2.    The Complaint does not allege a plausible predicate violation for an aiding-and-abetting claim under Section 631.

To state an aiding-and-abetting claim, a plaintiff must plead that the aided party committed "an underlying predicate violation" of one of Section 631(a)'s three prohibitions. *B.K. v. Desert Care Network*, No. 2:23-CV-05021 SPG (PDx), 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024). Here, the Complaint does not plausibly allege such a violation and so fails to state a claim.

### a.    The Complaint fails to state a predicate violation of the prohibition on wiretapping a telegraph or telephone line.

The first potential predicate violation is "intentionally tap[ping] or mak[ing] any unauthorized connection . . . with any **telegraph or telephone** wire, line, cable, or instrument." Cal. Penal Code § 631(a) (emphasis added). "Courts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023). Importantly, "telephone" does not include "a smart phone or Wi-Fi-enabled laptop." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1106 (C.D. Cal. 2023),

Here, the Complaint does not state a predicate claim for wiretapping because the Complaint does not allege **any** conduct related to telephonic or telegraphic communications. Instead, all of the Complaint's allegations relate to Plaintiffs' activity on, and communications through, S&W's website. (*See, e.g.*, Compl. ¶¶ 18, 20, 62, 70, 78). As a result, Plaintiffs have failed to state a predicate violation of the first clause of Section 631(a).

### b.    The Complaint fails to state a predicate violation of the prohibition on "reading" or "learning" the contents of communications "while" in transit.

The second prohibition of Section 631(a) bars eavesdroppers from "read[ing]" or "learn[ing]" the contents of communications "'while' the communication is 'in transit . . . or is being sent from, or received' within California." *Cody*, 718 F. Supp. 3d at 1000 (quoting Cal. Penal Code § 631(a)). Plaintiffs fail to state a predicate violation of this section by the Third Parties.

Under CIPA, the timing of interception is key. The word "while" naturally "implies the interception must occur contemporaneous with the sending or receipt of the message." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). Thus, to state a plausible claim for violation of this section, a complaint must "allege specific facts as to how or when the interception takes place," *i.e.*, "sufficient detail to support an inference of in transit interception." *Licea*, 659 F. Supp. 3d at 1109–10; *see also Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024) ("To plausibly allege that Plaintiff's communications were intercepted while in transit, factual allegations regarding the method, or nature, of

interception are required."). Where a complaint fails to allege specific facts about the interception of the communication, this Court routinely dismisses the claims. *See, e.g.*, *Licea*, 659 F. Supp. 3d at 1109–11 (granting motion to dismiss Section 631(a) claim because, *inter alia*, the complaint did not allege specific facts showing that the communication was intercepted in transit); *Swarts*, 689 F. Supp. 3d at 746 (dismissing Section 631(a) claim and noting complaint "does not indicate *when* the interception occurs").

Merely inserting words such as "real time" and "intercept" does not allow a plaintiff to avoid the requirement to plead sufficient *facts* supporting that the communication was actually intercepted in transit. *See Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [the defendant] is intercepting their data in transit."); *Cody*, 718 F. Supp. 3d at 1001 (Plaintiff's "conclusory allegations restating the pleading requirement of real-time interception fail to provide specific factual allegations"). Instead, without a specific explanation of "[h]ow . . . these third parties interface with [the defendant's] platform," the "complaint is entirely speculative" and fails to state a plausible claim. *Valenzuela*, 674 F. Supp. 3d at 758.

Here, the Complaint fails to state a claim because it does not plausibly allege that third parties intercepted Plaintiffs' communications with S&W's website "while" in transit. The Complaint alleges that S&W "caused cookies, including the Third Parties' cookies, to be sent to Plaintiffs and other visitors' browsers, stored on their devices, and transmitted to the Third Parties along with user data." Compl. ¶ 3. The Complaint then alleges that "[t]hese third-party cookies permitted the Third Parties to track and collect data in real time regarding Website visitors' behaviors and communications." *Id.*; *see also id.* ¶ 20 ("[T]he third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to those third parties, enabling them to surreptitiously track in real time and collect Website users' personal information."); *id.* ¶ 28 (similar). But the Complaint entirely fails to explain *how* and *when* the cookies that are allegedly loaded on S&W's website are "transmitted to the Third Parties" or *how* those cookies allow third parties to intercept communications in real time. While Plaintiffs have

MOTION TO DISMISS; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES

sprinkled words like "intercept" and "real time" into the Complaint, those words do not render the claim plausible. *See Rodriguez*, 2022 WL 214552, at *2; *Cody*, 718 F. Supp. 3d at 1001.

Indeed, courts have repeatedly dismissed claims under the second clause of Section 631(a) when they fail to allege the same facts that are missing here. For example, in *Cody*, the plaintiff alleged that "third-party software [was] 'plugged into' [the defendant's] website, so that when a chat message is sent to [the defendant], it [was] 'first routed through [the third party's] server.'" 718 F. Supp. 3d at 1001. In dismissing the complaint, the court held that "[t]hese vague allegations fail to explain how the software works or how the interception occurs." *Id.* Likewise, a court in this District has rejected as overly vague the allegation that a code "allows the [third party] to secretly intercept in real time, eavesdrop upon and store transcripts of [the defendant's] chat communications," explaining "the complaint provides no detail as to how the interception occurs." *Valenzuela*, 674 F. Supp. 3d at 758. So too here: the Complaint fails to explain how the cookies allegedly work and how the interception occurs.

And notably, it would not be enough for Plaintiffs to merely allege that the Third Parties *collected* the communications in real time. "[L]iability under prong two of section 631 'requires some effort at understanding the substantive meaning of the message, report or communication.'" *Torres v. Prudential Fin., Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (quoting *Williams v. DDR Media, LLC*, No. 22-CV-03789-SI, 2024 WL 4859078, at *5 (N.D. Cal. Nov. 20, 2024)). And as one court explained, "it would stretch CIPA's statutory language too far to interpret 'while . . . in transit' to encompass any hypothetical future attempt to read or understand the meaning of a communication." *Id.* at *6. Thus, the plaintiff must allege facts showing that the aided third party attempted to learn the ***contents*** of the communication while it was in transit. Because the Complaint here fails to do so, Plaintiffs have failed to state a claim under the second clause of Section 631(a).

### c.     *The Complaint fails to state a claim for using information obtained in violation of Section 631.*

The third, and final, potential predicate violation is "us[ing] or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information" obtained in violation

of the first or second clauses. Cal. Penal Code § 631(a). Because the Complaint does not state a plausible claim that information was obtained in violation of the first or second clauses, it necessarily cannot state a plausible claim for violation of this provision. *See Swarts*, 689 F. Supp. 3d at 744 (citing *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020)).

### 3. Certain categories of Private Communications allegedly collected do not qualify as "contents" under Section 631(a).

A claim under Section 631 must be premised on the interception of the contents of a communication rather than record information about it. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). The distinction mirrors the Federal Wiretap Act, which defines "contents" as including "the substance, purport, or meaning of th[e] communication." *Id.* (quoting 18 U.S.C. § 2510). "Record information," on the other hand, "includes the name, address, and subscriber number or identity of a subscriber or customer." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (quoting 18 U.S.C. § 2702(c)(2)). "Record information" also includes IP addresses and geolocation. *See Heiting*, 728 F. Supp. 3d at 1123–24.

Here, the Complaint directly identifies what data Plaintiffs consider to be the "contents" of electronic communications (Compl. ¶ 129), but as a matter of law, some of that data is *not* contents. Specifically, "device information," "session information," "user identifiers," and "geolocation data" (*id.*) are not contents within the meaning of Section 631. As a result, no party could violate Section 631 by intercepting that information. The Court should dismiss the claim to the extent that it is based on interception of such record information.

### C. The Complaint fails to state a claim under Section 638.51 of CIPA.

Section 638.51 prohibits any person from "install[ing] or us[ing] a pen register . . . without first obtaining a court order." Cal. Penal Code § 638.51(a).[2] Here, Plaintiffs allege that the "cookies and the corresponding software code" installed on S&W's website are pen registers. Compl. ¶ 140. As explained below, this is incorrect as a matter of law. Again, the criminal statute that Plaintiffs seek to apply here does not stretch so far that it prohibits the conduct alleged in the Complaint.

---

[2] The California Legislature is in the process of amending CIPA in a manner that would apply retroactively to any case pending as of January 1, 2026. *See* California Senate Bill 690.

1

              **1.**       **The alleged cookies and code are not pen registers as a matter of law.**

2

      The cookies and code at issue simply are not pen registers. Where, as here, "*Erie* requires

3 a federal court sitting in diversity to apply state law on an issue, it obligates the court only to follow

4 the state's positive law and decisions of the state's highest court." *Christie's Cabaret of Glendale*

5 *LLC v. United Nat'l Ins. Co.*, 562 F. Supp. 3d 106, 116 n.2 (D. Ariz. 2021). "When these sources

6 are indeterminate, the federal court must make an '*Erie* guess' as to how the state's highest court

7 would resolve the issue." *Id.*; *see also Clemco Indus. v. Com. Union Ins. Co.*, 665 F. Supp. 816,

8 821 (N.D. Cal. 1987), *aff'd,* 848 F.2d 1242 (9th Cir. 1988).

9

      Neither the California Supreme Court nor the California Court of Appeals has issued any

10 opinions regarding the meaning of "pen register" in CIPA. Since 2024, however, the California

11 Superior Courts have dismissed at least seven cases premised on cookies or similar code

12 constituting a pen register. *See, e.g.*, *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL

13 487196, at *3 (Cal. Super. Ct., Jan. 28, 2025); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025

14 WL 487194, at *4 (Cal. Super. Ct., Jan. 27, 2025); *Rodriguez v. Plivo Inc.*, No. 24STCV08972,

15 2024 WL 5184413, at *2 (Cal. Super. Ct., Oct. 2, 2024); *Palacios v. Fandom, Inc.*, No.

16 24STCV11264, 2024 WL 5494527, at *3 (Cal. Super. Ct., Sept. 24, 2024); *Casillas v. Transitions*

17 *Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Ct., Sept. 9, 2024);

18 *Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 3886811, at *4 (Cal. Super. Ct., July

19 9, 2024); *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *3–4 (Cal.

20 Super. Ct., Mar. 13, 2024). These cases reveal three analytical principles that counsel for dismissal

21 here.

22

      ***First***, the alleged cookies at issue do not meet the definition of "pen register." A pen

23 register is "a device or process that records or decodes dialing, routing, addressing, or signaling

24 information transmitted by an instrument or facility from which a wire or electronic

25 communication is transmitted, but not the contents of a communication." Cal. Penal Code

26 § 638.50(b). Plaintiffs argue that IP addresses and device or browser information constitute

27 "routing, addressing, or signaling information." Compl. ¶ 140. But the pen register provision of

28 CIPA mirrors the federal Pen Register Act, and courts have expressly held that Act "applie[s] only

MOTION TO DISMISS; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES

to mechanical, telephone number-tracing technology, not technology used to collect the IP address from a desktop computer." *Cars.com*, 2025 WL 487194, at \*3. Further, the Complaint alleges that cookies track the *Plaintiffs'* IP addresses and the "device and browser that the user has used to access the Website" (Compl. ¶¶ 45, 140), but that does not show that Defendant "collect[ed] the *destination* information of communications from [a plaintiff's] computer." *Palacios*, 2024 WL 5494527, at \*3 (emphasis added). Thus, the Complaint fails to plausibly allege that the technology at issue is a pen register at all.

**Second**, there is no privacy interest in IP addresses or device/browser information. *See, e.g.*, *Casillas*, 2024 WL 4873370, at \*5–7; *Aviles*, 2025 WL 487196, at \*3 (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)). "Like telephone numbers, which provide instructions to the 'switching equipment that processed those numbers,' e-mail to/from addresses and IP addresses are not merely passively conveyed through third party equipment, but rather are voluntarily turned over in order to direct the third party's servers." *Aviles*, 2025 WL 487196, at \*3 (quoting *Forrester*, 512 F.3d at 510). Given that CIPA is designed to protect privacy interests, the prohibition on pen registers simply does not reach this type of information.

**Third**, as a practical matter, Plaintiffs' theory would subject every person running a website in California to liability that they can only avoid by abandoning the website. As the California superior courts have recognized, *every* website records IP addresses; that is what "makes the internet possible." *Casillas*, 2024 WL 4873370, at \*4. Surely, "[t]he pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them." *Id.*; *Aviles*, 2025 WL 487196, at \*3 (dismissing claim where "Plaintiff has not alleged anything above and beyond how the internet normally works"). This Court should reject Plaintiffs' overbroad and unworkable interpretation.

In contrast, S&W has located only two California superior court cases that denied a defendant's motion to dismiss a CIPA pen register claim. One of those cases, *Levings v. Choice Hotels Intern., Inc.*, No. 23STCV28359, 2024 WL 1481189 (Cal. Super. Ct., Apr. 3, 2024), did not consider the issues raised here. The other held that the plaintiff stated a claim because the information allegedly collected was sensitive, without addressing whether that information was

MOTION TO DISMISS; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES

"contents." *Heiting v. Taylor Fresh Foods, Inc.*, No. 24STCV12891, 2024 WL 3833296, at *4 (Cal. Super. Ct., July 31, 2024). This emphasis on the sensitivity of the data collected was based on the court's reading of *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023). *Greenley*, however, does not discuss the sensitivity of information collected in analyzing the CIPA claim, but rather in analyzing the common law claim for invasion of privacy. *See id.* at 1046–47.

S&W acknowledges that some federal district courts, including in this district, have concluded that tracking technologies are pen registers. *See, e.g.*, *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928 (N.D. Cal. 2024); *Mirmalek v. Los Angeles Times Comms. LLC*, 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024). As explained in the following section, those cases are inapposite because those technologies did not transmit "contents."[3] However, they are also incorrect interpretations of the statute for the reasons described above. S&W respectfully submits that the California Supreme Court would likely hold that § 638.51 does not apply to the factual circumstances alleged in the Complaint for the reasons described in the cases cited above.

### 2. The Complaint does not plausibly allege that S&W used a pen register because Plaintiffs allege S&W tracked contents.

Even if some cookies could be pen registers, the Complaint does not plausibly allege that the cookies at issue here were pen registers. As described above, a pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information . . . , but not the contents of a communication." Cal. Penal Code § 638.50(b). Here, Plaintiff theorizes that the cookies and code are pen registers because they record IP addresses and other device or browser information. *See* Compl. ¶¶ 45, 140. But importantly, the Complaint repeatedly alleges that these cookies and code record *other* information "regarding Website visitors' behaviors and communications," including their "website interactions, user input data, demographic information, interests and preferences, [and] shopping behaviors." Compl. ¶ 3; *see also* ¶¶ 4, 20–22, 26, 28, 31, 32, 35, 47–49, 54–56. That information is "contents," so tracking technology that records that information does not qualify as a pen register. *See* Cal. Penal Code § 638.50(b).

---

[3] Plaintiffs also cite *Greenley*—a case involving the use of a software developer kit, rather than the cookies at issue here—but there is no evidence that the *Greenley* court considered whether the kit transmitted contents.

Plaintiffs' allegations distinguish this case from those in which courts have held that the plaintiff stated a claim under CIPA's pen register statute. For example, in *Shah*, the court held that the plaintiffs sufficiently alleged "that the Trackers record addressing information, but not the content of the outgoing communication transmitted" because "[t]he Trackers are not alleged to collect the contents of [the alleged communication], *only* the user's IP address." 754 F. Supp. 3d at 928–29 (emphasis added). Likewise, in *Mirmalek*, the court emphasized that the plaintiff alleged that collection of IP addresses—and only IP addresses—violated CIPA's pen register statute. *See* 2024 WL 5102709 at *3. Because IP addresses were not contents, the court held that the complaint survived a motion to dismiss. *See id.* In so holding, the *Mirmalek* court explained that the definition of pen register was "specific as to the type of data [collected]." *Id.* (quoting *Greenley*, 684 F. Supp. 3d at 1050–51).

Because this Complaint expressly alleges that the cookies and code tracked contents, the holdings of *Shah* and *Mirmalek* are not persuasive here. Under their logic, however, the Complaint's express allegation that the cookies and code *did* transmit contents requires dismissal of this claim.

### D. The Complaint fails to state a plausible or particularized claim for common law fraud, deceit, and/or misrepresentation claim.

Plaintiffs fail to state a claim for common law fraud, deceit, and/or misrepresentation, and therefore, the claim should be dismissed. "A plaintiff alleging fraud under California law must plead facts demonstrating five elements: (1) a misrepresentation; (2) the speaker's knowledge of falsity; (3) the intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage." *Bird v. Real Time Resols., Inc.*, 183 F. Supp. 3d 1058, 1061 (N.D. Cal. 2016) (quotation omitted). A claim for misrepresentation has similar elements, requiring a knowingly or recklessly false statement of an "important fact" intended to induce reliance that was a substantial factor in causing the plaintiff's harm. *See id.* Either claim is subject to the pleading standards of Rule 9(b), which requires allegations regarding the "who, what, when, where, and how of the misconduct charged." *Hammerling*, 615 F. Supp. 3d at 1079; *Vess*, 317 F.3d at 1106; *Stemmelin v. Matterport, Inc.*, No. C 20-04168, 2020 WL 6544456, at *2 (N.D. Cal. Nov. 7, 2020).

Here, the Complaint alleges that S&W committed fraud[4] by deceptively informing Plaintiffs and class members that they could "Reject All" cookies (*see* Compl. ¶ 148), but it fails to provide particularized factual allegations to support a claim for fraud. The Complaint shows the contents of a "cookie banner" displayed on S&W's website (*id.* ¶ 1), but it does not allege the required specifics regarding when, where, and how this representation was made to Plaintiffs in particular. *See In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 968–69 (N.D. Cal. 2021) (dismissing claim for common law fraud, deceit, and/or misrepresentation where the plaintiffs failed to fulfill their "responsibility to detail what [adequate] security measures would be, and how Google failed to provide them").

The Complaint also fails to plausibly allege damage resulting from the misrepresentation. *See Bird*, 183 F. Supp. 3d at 1061. The Complaint alleges that Plaintiffs suffered an "injury-in-fact, including the loss of money and/or property." Compl. ¶ 152. That, however, is a conclusory allegation not entitled to the assumption of truth, and the Complaint never specifically explains what "money" or "property" Plaintiffs lost. *See Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1064 (2012) (noting that if the existence of damages alleged in a fraud pleading is too remote, speculative, or uncertain, then the pleading cannot state a claim for relief); *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1129–33 (2014) (plaintiffs' fraud claims failed because the plaintiffs did not allege why or how defendants' misrepresentations or concealment resulted in monetary damage). Likewise, the Complaint alleges that Plaintiffs have "suffered harm in the form of diminution of the value of their private and personally identifiable information and communications" (Compl. ¶ 152), but does not even hint at *how* the value of Plaintiffs' information has been diminished. This is insufficient to state a claim. *See Markels v. AARP*, 689 F. Supp. 3d 722, 730 (N.D. Cal. 2023) (dismissing fraud claim where plaintiffs failed to allege how the value of their personal information was diminished); *Lau v. Gen Digital Inc.*, No. 22-CV-08981-RFL, 2024 WL 1880161, at *4 (N.D. Cal. Apr. 3, 2024) (finding allegations regarding diminished value of information conclusory where complaint did not allege facts

---

[4] A common law fraud claim is referred to as "deceit" in California common law. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (Cal. 1996).

1  supporting that the plaintiffs had not been able to capture the full value of their information as a

2  result of defendant's alleged conduct).

3      **E.    The Complaint fails to state a claim for unjust enrichment because it does not**

4          **identify a benefit received and retained.**

5      "[I]n California, there is not a standalone cause of action for 'unjust enrichment,'" but "a

6  court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v.*

7  *Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quotations omitted). "To adequately

8  allege unjust enrichment as a quasi-contract claim for restitution, 'a plaintiff must show that the

9  defendant received and unjustly retained benefit at the plaintiff's expense.'" *California Crane Sch.,*

10 *Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024) (Pitts, J.) (quoting *ESG Capital*

11 *Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)). Thus, to plausibly plead a claim for

12 unjust enrichment, the plaintiff must identify what the benefit received and retained was. *See, e.g.*,

13 *California Crane Sch.*, 722 F. Supp. 3d at 1042 (dismissing unjust enrichment claim where the

14 plaintiff "does not identify what benefit the . . . defendant received *from [the plaintiff]* that should

15 be returned to [the plaintiff]").

16     Here, the Complaint fails to plausibly plead that S&W received and retained a benefit. The

17 Complaint broadly alleges that Plaintiffs "conferred an economic benefit on Defendant," but it

18 does not identify what this economic benefit was or how it has been unjustly retained. *See* Compl.

19 ¶ 162. Even taking as true Plaintiffs' allegations that S&W disclosed website data to third parties,

20 the Complaint does not allege how such disclosure created any economic benefit *for S&W*. This

21 type of conclusory pleading of the elements of the claim is insufficient to meet this Court's

22 pleading standards. *See, e.g., California Crane Sch.*, 722 F. Supp. 3d at 1042. As a result,

23 Plaintiffs' claim for unjust enrichment in the sixth cause of action should be dismissed.

24     **F.    The Complaint fails to plausibly plead claims arising in contract.**

25     In addition to the tort theories described above, the Complaint asserts claims for breach of

26 implied contract and breach of the implied covenant of good faith and fair dealing. These claims

27 fail because the Complaint does not identify a contract. Indeed, imposing liability for breach of

28 contract here would open the floodgates of litigation by suggesting that merely stating a policy on

a website creates a contract. That is not the law of California (or any other state), and the Court should dismiss the contract and quasi-contract claims.

       **1.**    **Plaintiffs cannot state a claim for breach of implied contract because they have not identified any mutual obligations that create a contract.**

The Court should dismiss Plaintiffs' claim for breach of implied contract because no contract existed between the parties. To plead a claim for breach of contract, a plaintiff must allege "(1) the existence of a contract with [the defendant], (2) their performance under that contract, (3) [the defendant] breached that contract, and (4) . . . [plaintiff] suffered damages." *Facebook Tracking Litig.*, 956 F.3d at 610 (citing *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)). Importantly, "[f]or a contract to exist, there must be an exchange for a promise." *Id.* at 610. Thus, in *Facebook Tracking Litigation*, the court found that a data use policy did not constitute a contract because it did "not require the user to make any commitment." *Id.* at 611. The court also observed that the policy provided "information—not commitments—regarding [the defendant]'s use of information and how users can control that information." *Id.*; *see also Fosson v. Palace (Waterland), Ltd.*, 78 F.3d 1448, 1454 (9th Cir. 1996) (noting that under California law, the doctrine of mutuality of obligation requires that the promises on each side of a contract must be binding obligations in order to be consideration for each other).

So too here. Plaintiffs quote portions of the Privacy Policy that explain how "cookies" work and how users can opt out of cookies on S&W's website. *See* Compl. ¶¶ 24, 34, 170, 171. That is merely informational—there is no promise made. And regardless, contracts require *mutual*, not unilateral, promises. *See Facebook Tracking Litig.*, 956 F.3d at 610. Although Plaintiffs allege that they "performed their obligations under the Privacy Policy or were excused from performance," those alleged obligations are not identified anywhere in the Complaint. Compl. ¶ 173. Because the Complaint does not plausibly allege either a contract or Plaintiffs' performance thereunder, Plaintiffs fail to state a claim.

To be clear, Plaintiffs cannot change this result by labeling their cause of action as one for breach of an "implied contract." An implied contract still requires "mutual agreement." *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1010 (N.D. Cal. 2018), *aff'd*,

815 F. App'x 117 (9th Cir. 2020). The difference is that the agreement is "manifested by conduct" and "not . . . expressed in words." *Id.* But here, Plaintiffs allege that S&W's alleged promise *was* expressed in words through the Privacy Policy and do not identify any "conduct" suggesting mutual agreement. Those facts do not create an implied contract. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1091 (W.D. Wash. 2024) (rejecting plaintiff's contention that when she provided user data to the defendant in exchange for services, the parties entered into an implied contract pursuant to which the defendant agreed to safeguard and not disclose the private information). The Court therefore should dismiss the seventh cause of action.

### 2. The Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing.

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should also be dismissed. "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000). A claim for breach of the implied covenant of good faith and fair dealing requires the existence of an express or implied contract because there is "no obligation to deal fairly or in good faith absent an existing contract." *Alameda Health Sys. v. Alameda Cnty. Employees' Ret. Ass'n*, 100 Cal. App. 5th 1159, 1191 (2024) (quotation omitted). For a plaintiff to adequately allege a claim for breach of the implied covenant of good faith and fair dealing, the allegations must "go beyond the breach of contract theories asserted." *Facebook Tracking Litig.*, 956 F.3d at 611.

Because Plaintiffs have failed to plausibly allege the existence of any express or implied contract (*see supra* Part F.1), their claim for breach of the implied covenant of good faith and fair dealing also should be dismissed. Moreover, Plaintiffs identify the exact same conduct as the basis for the claims for both breach of implied contract and breach of the duty of good faith and fair dealing: "causing third-party cookies to be stored on consumers' devices and browsers that enabled the Third Parties to track and collect Plaintiffs' and Class member's Private Communications." Compl. ¶¶ 172, 179. Because the allegations thus do not go beyond the breach theory asserted, the claim for breach of the implied covenant fails as a matter of law. *See Facebook Tracking Litig.*,

956 F.3d at 611. The Court therefore should dismiss the eighth cause of action.

      **G.    The Complaint fails to state a claim for trespass to chattels.**

"Under California law, trespass to chattels lies where an intentional interference with the possession of personal property has proximately caused injury." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350 (2003) (internal quotation and emphasis omitted). "[I]njury to the personal property or the possessor's interest in it *is* an element of the action." *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 762 (2022) (quoting *Intel*, 30 Cal. 4th at 1352). In the context of data collection from websites, California courts therefore have held that "data collection could constitute trespass to chattels only if it caused or threatened harm to the website's computer system." *Id.* (collecting cases); *see also Intel*, 30 Cal. 4th at 1353 (where there was "no actual or threatened damage to [plaintiff's] computer hardware or software and no interference with its ordinary and intended operation," defendant's trespass was not actionable); *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 686 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021) (dismissing trespass to chattels claim based on installation of malware because "the complaint does not detail any actual harm caused by defendant's program or access to WhatsApp's computers or servers").

Further, trespass to chattels does not protect a plaintiff's "interests in privacy and confidentiality." *Berkshire Hathaway*, 79 Cal. App. 5th at 765. Courts thus reject claims of trespass to chattels that are based on the installation of applications or cookies on the plaintiff's device and providing to third parties information obtained through such installation. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1088 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 22-CV-03580-WHO, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) (dismissing trespass to chattels claim based on cookies being placed on devices because the plaintiffs did "not allege that the presence of that cookie 'impairs' the operation of their devices in terms of diminished storage, decreased battery life, or otherwise"); *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *1, 14 (N.D. Cal. Sept. 20, 2011) (dismissing claim of trespass to chattels where plaintiff alleged defendants violated their privacy rights by unlawfully allowing third party applications to collect data from their devices).

Here, the Complaint fails to plausibly allege the elements of trespass to chattels. The Complaint identifies "personally identifiable information" as personal property with which S&W allegedly interfered. Compl. ¶ 190. Nothing in the Complaint, however, explains how S&W interfered with Plaintiffs' possession or use of that property, and in any event, Plaintiffs cannot ground their claim for trespass to chattels in alleged privacy rights. *See Berkshire Hathaway*, 79 Cal. App. 5th at 765; *Doe*, 690 F. Supp. 3d at 1088; *In re iPhone Application Litig.*, 2011 WL 4403963, at *1, 14. As a result, Plaintiffs cannot state a plausible trespass to chattels claim based on interference with personally identifiable information.

The Complaint also alleges that S&W interfered with Plaintiffs' "computers and other electronic devices" (Compl. ¶ 190), but it fails to allege facts to make this allegation plausible. In an apparent attempt to circumvent the authority cited above, the Complaint alleges that S&W's "trespass" damaged Plaintiffs in the form of "[r]eduction of storage, disk space, and performance of Plaintiffs' and other users' computing devices" as well as "[l]oss of value of Plaintiffs' and other users' computing devices." Compl. ¶ 191(b), (c). The Complaint, however, provides no alleged facts regarding the supposed reduction of storage, disk space, or performance or regarding any loss of value. These conclusory allegations are not enough to state a claim, particularly given that trespass to chattels is not designed to address these types of claims. *See X Corp. v. Bright Data Ltd.*, 733 F. Supp. 3d 832, 843 (N.D. Cal. 2024) (dismissing trespass to chattels claim where the plaintiff's complaint alleged a conclusory statement that the defendant's acts diminished server capacity); *Berkshire Hathaway*, 79 Cal. App. 5th  at 764 (agreeing that the appellants failed to state a claim of trespass to chattels because they did not allege damage or disruption to the computer system that the appellees wrongfully accessed). The Court should dismiss the ninth cause of action.

## VI. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

Dated: May 30, 2025

Respectfully Submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

*/s/ Kimberly M. Ingram-Hogan*

Kimberly M. Ingram-Hogan (State Bar No. 305497)
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
Phone: (615) 252-3592
kingram@bradley.com

Erin J. Illman (SBN 238262)
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Phone: (704) 338-6026
Email: eillman@bradley.com

*Attorney for Defendant Smith & Wesson Inc.*