**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

TONY D'ANTONIO, THOMAS THAYER, and REINA CUEVAS GARCIA, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

SMITH & WESSON INC.,

Defendant.

Case No. 5:25-cv-03085-PCP

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Hon. P. Casey Pitts

Hearing Date: August 21, 2025
Hearing Time: 10:00 AM
Courtroom: Courtroom 8, 4th Floor

# TABLE OF CONTENTS


I. **INTRODUCTION** .......... 1

II. **FACTUAL BACKGROUND** .......... 3

- A. S&W Falsey Told Plaintiffs and Other Users That They Could "Reject All" Cookies on the Website. .......... 3
- B. S&W Intentionally Designed the Website and the Website's Cookie Banner. .......... 5
- C. S&W Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both S&W and the Third Parties Profited. .......... 5

III. **ARGUMENT** .......... 6

- A. Plaintiffs Adequately Plead Claims for Common Law Invasion of Privacy and Intrusion Upon Seclusion. .......... 6
- B. Plaintiffs Have Adequately Pled CIPA Claims. .......... 9
  - 1. Plaintiffs Properly Allege a Violation of CIPA Section 631(a). .......... 9
  - 2. Plaintiffs Properly Plead a "Pen Register" Claim Under Section 638.51. .......... 11
- C. Plaintiffs Have Adequately Pleaded Their Fraud Claims. .......... 13
- D. Plaintiffs Sufficiently Plead a Mutual Agreement and Defendant is Estopped from Arguing Otherwise. .......... 14
- E. Plaintiffs' Unjust Enrichment Claim Is Properly Pled. .......... 15
- F. Plaintiffs Sufficiently Plead Trespass to Chattels. .......... 16
- G. Plaintiffs Request Leave to Amend If Necessary. .......... 17

IV. **CONCLUSION** .......... 17

# TABLE OF AUTHORITIES

**Cases**

*A.J. v. LMND Med. Grp.*,
No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ...................... 16

*Aceves v. U.S. Bank Nat'l Ass'n*,
192 Cal. App. 4th 218 (2011) ...................... 15

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ...................... 14

*Brown v. Natures Path Foods, Inc.*,
No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ...................... 13

*Bruton v. Gerber Prod. Co.*,
703 F. App'x 468 (9th Cir. 2017) ...................... 15

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*,
79 Cal. App. 5th 755 (2022) ...................... 17

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ...................... 11

*Cody v. Ring LLC*,
Case No. 23-cv-00562-AMO, 2024 U.S. Dist. LEXIS 30704
(N.D. Cal. Feb. 22, 2024) ...................... 10

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ...................... 13

*Davis v. Facebook, Inc. ("In re Facebook Inc. Internet Tracking Litig.")*,
956 F.3d 589 (9th Cir. 2020) ...................... 6, 7, 8, 17

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) ...................... 17

*eBay, Inc. v. Bidder's Edge, Inc.*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ...................... 16

*Fields v. Wise Media, LLC*,
No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914
(N.D. Cal. Sept. 24, 2013) ...................... 16

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ...................... 11, 12

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...................... 7

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ...................... 7

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ...................... 6

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (Cal. 1994) ...................... 8

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................... 8, 15

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ...................... 9

*In re GlenFed, Inc. Secs. Litig.*,
42 F.3d 1541 (9th Cir. 1994) ........ 13

*In re Google Location History Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ........ 7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 16

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ........ 17

*Intel Corp. v. Hamidi*,
30 Cal.4th 1342 (2003) ........ 16

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) ........ 10

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928(N.D. Cal. 2023) ........ 7, 15

*M.H. v. Done Glob. Inc.*,
No. 24-cv-03040-RFL, 2025 U.S. Dist. LEXIS 38456 (N.D. Cal. Feb. 26, 2025) ........ 9

*Mirmalek v. L.A. Times Communs. LLC*,
No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ........ 11, 12

*Moody v. C2 Educ. Sys.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ 11

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) ........ 13

*Oasis W. Realty, LLC v. Goldman*,
51 Cal. 4th 811 (Cal. 2011) ........ 14

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........ 8

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) ........ 8

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........ 9

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) ........ 9, 14

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) ........ 6, 7, 8

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 U.S. Dist. LEXIS 13476 (N.D. Cal. Jan. 25, 2022) ........ 11

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ........ 13

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ........ 17

*Shah v. Capital One Fin. Corp.*,
No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025) ........ 16

*Shah v. Fandom, Inc.*,
No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) ........ 11, 12

*Silver v. Stripe, Inc.*,
No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. 2021) .......... 7

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) .......... 8

*Summit Estate, Inc. v. United Healthcare Ins. Co.*,
No. 4:19-cv-06724 YGR, 2020 U.S. Dist. LEXIS 166721 (N.D. Cal. Sep. 10, 2020 .......... 14

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 10

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 8

*Yari v. Producers Guild of Am., Inc.*,
161 Cal. App. 4th 172 (2008) .......... 14

**Statutes**

Cal. Pen. Code § 631(a) .......... 9, 10

Cal. Pen. Code § 638.50(b) .......... 11, 12

Cal. Pen. Code § 638.51 .......... 9, 11

Cal. Pen. Code § 638.51(a) .......... 11

Cal. Pen. Code § 638.51(b) .......... 11

**Rules**

Fed. R. Civ. P. 9(b) .......... 13

## I. INTRODUCTION

In the age of the internet, data is the new oil. As companies develop increasingly invasive and integrated means of extracting and aggregating consumer data, consumers often rely on website's representations that they may browse free from the watchful eyes of third parties. In this case, the privacy that Defendant Smith & Wesson Inc. ("S&W") promised to visitors of its website was an outright lie. When Plaintiffs accessed S&W's website, they were presented with a cookie consent banner that promised users the opportunity to "Reject All" cookies—small text files that, when attached to a users' browser or device, enable third parties to track users and collect their personal data and private communications.




Little did Plaintiffs know, however, that electing "Reject All" meant nothing. In truth, S&W's website unlawfully and intentionally allowed third parties to place non-essential tracking cookies on the devices of Plaintiffs and every other visitor to its website, before, and ***even after*** Plaintiffs and many users explicitly "Reject[ed] All" third-party tracking cookies. As a result, S&W enabled third parties to track and record Plaintiffs' and other visitors' "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" against their consent. Class Action Compl., ECF No. 1 ("CAC") ¶ 3.

Plaintiffs brought the instant action seeking to hold S&W accountable for this outrageous invasion of their privacy and to stop S&W from engaging in this unlawful conduct. S&W now moves

to dismiss with a bevy of scattershot arguments claiming that Plaintiffs have not adequately alleged their claims. *See, generally* Motion to Dismiss, ECF No. 15 ("Mot."). Each of these arguments, however, misses the mark.

First, despite claiming that it would "honor" Plaintiffs opt out requests, S&W intentionally embedded its website with technology that transmitted Plaintiffs' otherwise private communications to third parties. In so doing, S&W is liable for violations common law invasion of privacy and intrusion upon seclusion. S&W's attempt to dodge liability by claiming that it was not S&W but third parties who intruded upon Plaintiffs' communications rings hollow. The point of S&W's cookie banner, and option to "Reject All" cookies, that it placed on its website was to assure users like Plaintiffs that their communications with S&W would be private. This was a lie and S&W knew it: S&W was the only one who could allow third party cookies on its website. It did so, in contravention of Plaintiffs' choices and expectations, for its own benefit. S&W cannot avoid liability for its actions by hiding behind the third parties whom it knowingly aided. Moreover, although not an issue to be resolved on the pleadings, Plaintiffs have alleged that the privacy violations were "highly offensive."

Second, Plaintiffs adequately plead their CIPA claims. Plaintiffs had a reasonable expectation that S&W would not disclose their communications and information through cookies because S&W made that promise, and set that expectation, itself through the cookie banner it programmed to pop up on its website. Despite establishing this expectation, S&W aided third parties in the ongoing and real-time interception of Plaintiffs' data, giving rise to Plaintiffs' claim under the fourth clause of CIPA Section 631(a). Further, Plaintiffs' claims based on the pen register theory survive because, as many courts have recognized, the statutory definition of a pen register extends to internet technologies that collect user data, not just telephones.

S&W's remaining arguments also fail. Plaintiffs have adequately pled fraud by alleging a misrepresentation of material fact, S&W's knowledge of falsity and intent to defraud, and resulting damages. Plaintiffs have also adequately alleged an implied contract, as well as grounds for promissory estoppel. Plaintiffs' unjust enrichment claim must proceed because Plaintiffs adequately plead that S&W unjustly benefited from the collection and monetization of Plaintiffs' private data.

Finally, Plaintiffs' trespass to chattels claim is properly based on harm to their property. In sum, S&W's arguments ignore the law, the facts, or both.

The Court should deny S&W's motion in its entirety.

## II. FACTUAL BACKGROUND

### A. S&W Falsey Told Plaintiffs and Other Users That They Could "Reject All" Cookies on the Website.

Like many companies, S&W designed its website, www.smith-wesson.com (the "Website") with resources and programming scripts from third parties that enable those parties to place cookies—small text files sent by a website server to a user's web browser and stored locally on the user's device—and other similar tracking technologies on visitors' browsers and devices to transmit cookies along with user data. CAC ¶ 2. S&W, however, offers consumers a choice to browse *without* having such cookies and other tracking technologies placed on their browsers, allowing consumers to use the Website without being tracked, followed, and targeted by third party data brokers or advertisers. *Id.*

When consumers visit the Website, S&W displays to them a popup cookie consent banner. *Id.* ¶ 1. S&W's cookie banner states that the Website uses cookies and other tracking technologies but expressly give users the option to control whether they are tracked and how their personal data is used. *Id.* S&W assures visitors that their "opt-out preference signal" will be "honored."




The cookie consent banner states "This website uses cookies and other tracking technologies to enhance user experience and to analyze performance and traffic on our website. We also share

information about your use of our site with our social media, advertising and analytics partners. If we have detected an opt-out preference signal then it will be honored. Further information is available in our Privacy Policy." *Id*. The banner then purported to provide users the opportunity to "Reject All" cookies. *Id*.

The representation that users could "Reject All" cookies was false. Instead, even when users clicked "Reject All" cookies, S&W nevertheless permitted many third parties to place on Plaintiffs' and Class members' devices and browsers the very cookies they had declined. *Id*. ¶¶ 27–30. Once placed, these cookies allowed Plaintiffs' and Class members' data to be transmitted to third parties in the manner and for purposes alleged in the Complaint and as described below. *Id*. ¶¶ 35–56.

Even after users elect to "Reject All" cookies, S&W surreptitiously enabled an enormous number of third parties—including Google LLC (YouTube, DoubleClick and Google Analytics), X Corp. (formerly Twitter), Listrak, Inc., Lightbox, and many more (the "Third Parties")—to place and/or transmit tracking cookies on the Website. *Id*. ¶ 2.

The cookies S&W wrongfully permitted the Third Parties to place on Plaintiffs' devices and browsers—despite Plaintiffs' express rejection and despite S&W's express representation to the contrary—permitted the Third Parties to track and collect data in real time regarding Plaintiffs' behaviors and communications, including their browsing history, IP addresses, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data (the "Private Communications"). *Id*. ¶¶ 3, 20, 31.

In particular, in 2024 and 2025, Plaintiffs accessed and browsed the Website. *Id*. ¶¶ 62, 70, 78. Even before the popup cookie banner appeared on their screens, S&W programmed the Website to enable the Third Parties to place cookies and tracking technologies on their devices and transmit their data to Third Parties without Plaintiffs' knowledge. *Id*. ¶¶ 66, 74, 82. Then, after Plaintiffs clicked "Reject All" cookies, they browsed the Website in reliance on the promises and representations S&W made in the cookie banner. *Id*. ¶¶ 65, 73, 81. Despite Plaintiffs' clear declination of cookies, S&W continued to permit the placement of cookies and the transmission of Plaintiffs' data to the Third Parties. *Id*. ¶¶ 67, 75, 83. This allowed the Third Parties to track and collect Plaintiffs' Private

Communications and data as they browsed the Website. *Id.*; *see also id.* ¶¶ 35–56 (describing user data and communications transmitted by the third party cookies S&W permitted to be placed when users browsed the Website).

**B. S&W Intentionally Designed the Website and the Website's Cookie Banner.**

S&W voluntarily—i.e. intentionally—integrated "third-party resources" from the Third Parties into the Website's programming. *Id.* ¶ 16. S&W chose to install or integrate the Website with resources from the Third Parties that, among other things, use cookies. *Id.* ¶ 23. Thus, when Plaintiffs and other Class members visited the Website, both first-party cookies and third-party cookies were placed on their devices and/or transmitted to S&W and the Third Parties. *Id.* S&W intentionally incorporated into the Website the software code that caused placement of the cookies. *Id.* S&W controls the software code of the Website—meaning it has complete control over whether first-party and third-party cookies are placed on users' devices and/or transmitted to third parties. *Id.* During the time period in which Plaintiffs accessed the Website, the Website—which, again, S&W developed, maintains, and controls—permitted the Third Parties to place, store, and/or transmit third-party tracking cookies on Plaintiffs' devices and browsers. *Id.* ¶ 23.

The Website allows visitors to view information about S&W products, purchase certain products, and to learn where products may be purchased in person and online. *Id.* ¶ 22. As they interact with the Website (e.g., by entering data into forms, clicking on links, and making selections), Website users communicate Private Communications to S&W. *Id.* The third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to the Third Parties, enabling them to, in real time, surreptitiously track and collect a Website users' Private Communications. *Id.* ¶ 28. Third-party cookies include an identifier that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions. *Id.* ¶ 32.

**C. S&W Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both S&W and the Third Parties Profited.**

S&W's uses and integrates the third-party resources on the Website pursuant to agreements between S&W and the Third Parties. *Id.* ¶ 16. S&W intentionally designed the Website with code that

allows Third Parties to place cookies and send data directly to themselves—allowing the Third Parties to, simultaneous with Plaintiffs' activity on the Website, analyze and aggregate the wrongfully collected data for their own purposes and financial gain. *Id*. ¶ 20.

Third-party cookies are used for a variety of purposes, including (i) analytics (e.g., tracking and analyzing visitor behavior, user engagement, and effectiveness of marketing campaigns); (ii) personalization (e.g., remembering a user's browsing history and purchase preferences to enable product recommendations); (iii) advertising/targeting (e.g., delivering targeted advertisements based on an aggregated profile of the user's behavior, preferences, and demographics); and (iv) social media integration (i.e. sharing users' activities with social media platforms). *Id*. ¶ 21. Ultimately, third-party cookies are utilized to boost website performance and revenue through the collection, utilization, and dissemination of user data. *Id*.

## III. ARGUMENT

### A. Plaintiffs Adequately Plead Claims for Common Law Invasion of Privacy and Intrusion Upon Seclusion.

Claims for common law invasion of privacy and intrusion upon seclusion require: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *Davis v. Facebook, Inc. ("In re Facebook Inc. Internet Tracking Litig.")*, 956 F.3d 589, 601 (9th Cir. 2020); *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286–87 (2009).

The conduct alleged here is a textbook example of an invasion of privacy: S&W promised Plaintiffs that they could "Reject All" cookies and that their opt outs would be "honored," but then immediately placed cookies on their devices and browsers anyway, and enabled third-parties to collect broad swaths of data that users like Plaintiffs asked to keep private. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28–29 (N.D. Cal. May 21, 2021) ("Per the FAC, Google intercepted data akin to 'browsing habits and histories,' including 'detailed URL requests, app browsing histories, and search queries which [p]laintiffs . . . sent to those apps[.]' . . . In sum, the Ninth Circuit has left little doubt as to plaintiffs' intrusion upon seclusion and invasion of privacy claims. Both survive Google's motion to dismiss.").

Here, Plaintiffs had a reasonable expectation of privacy in their private communications on the Website because S&W promised them that their browsing activity and Private Communications would remain private if they elected to reject all cookies. *In re Facebook Internet Tracking Litig.*, 956 F.3d at 603–04 (finding a reasonable expectation of privacy can arise if users decline consent to tracking, if a defendant makes an affirmative statement that users' information would not be collected, and/or if the nature of the information collected is sensitive (such as browsing history correlated with additional personal information)); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (plaintiffs "plausibly alleged a reasonable expectation of privacy because Google allegedly collected potentially sensitive data while users might not expect that Google was tracking them").

S&W's privacy violations were also highly offensive. Multiple recent district court decisions have recognized that the tracking and amassing of online data without consent is "highly offensive." *See, e.g., Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (the accumulation of online data was an invasion of privacy); *Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. 2021) (finding plaintiff stated claims for intrusion upon seclusion based on the aggregation of data); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157–58 (N.D. Cal. 2021) (finding the continuous collection of data when users turned off the "location history" setting was highly offensive); *Rodriguez*, 2021 U.S. Dist. LEXIS 98074, at *27 (users have a privacy interest in their browsing history); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (collection and sharing of data when the app was closed was an invasion of privacy). Here, more than just failing to obtain Plaintiffs' consent, S&W affirmatively represented—indeed, promised—that Plaintiffs could protect their privacy by rejecting all cookies.

"Determining whether a defendant's actions were "highly offensive to a reasonable person" requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 606 (citation omitted). Ultimately, the question of whether an intrusion is "highly offensive" is one that cannot be resolved on the pleadings because it is fact-intensive and entails weighing the

"extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry before concluding it "cannot be resolved at the pleading stage"); *Rodriguez*, 2021 U.S. Dist. LEXIS 98074, at *28 ("[n]or is the offensiveness of Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage,' than that ascribed to *Facebook*"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("[u]nder California law, courts must be reluctant to reach a conclusion at the pleading state about how offensive or serious the privacy intrusion is"); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1078 (N.D. Cal. 2016) ("[t]he offensiveness inquiry is fact-specific"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *9 (N.D. Cal. Oct. 23, 2019) ("a jury could conclude" that the intrusion into plaintiff's identity and browsing habits "is a highly offensive breach of norms"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury"). Indeed, the manner in which the data was collected is also significant. *See St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) (finding that "defendant's representations that sensitive information would not be disclosed is relevant to whether the disclosure was highly offensive" made the disclosure highly offensive). Here, the jury is entitled to consider all the circumstances surrounding S&W's conduct, including the fact that S&W lied about not tracking visitors, to determine whether S&W's invasion of privacy was highly offensive.

In seeking to dismiss Plaintiffs' Claims for common law invasion of privacy and intrusion upon seclusion S&W claims that it was the Third Parties, not S&W that invaded the privacy of Plaintiffs and, thus, S&W cannot be held liable. *See* Mot. at 7–8. But where, as here, a defendant *intentionally embeds* its website with technology that shares otherwise private conversations with third parties, a plaintiff may bring claims for common law invasion of privacy and intrusion upon seclusion:

> Done argues that its conduct cannot amount to an "intrusion" because Plaintiff willingly shared his information with Done, and therefore the third parties, not Done, are responsible for any alleged intrusion. Done's own conduct in obtaining Plaintiff's medical information may not have intruded on Plaintiff's seclusion. Here, though, Plaintiff does not base his claim solely based on Done's own alleged intrusion, but also separately alleges that Done "permitted unauthorized third parties to intrude" on

> Plaintiff's affairs by purposefully embedding tracking tools facilitating such intrusion. Such an allegation plausibly states a claim that Done knew the third parties' "conduct constitute[d]" an intrusion on seclusion and gave "substantial assistance" to them to so act.

*M.H. v. Done Glob. Inc.*, No. 24-cv-03040-RFL, 2025 U.S. Dist. LEXIS 38456, at *6–7 (N.D. Cal. Feb. 26, 2025) (citing *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (explaining California imposes liability on a defendant for intentional torts of another if the defendant knew of and substantially assisted the tortious conduct)). S&W intentionally assisted third parties in the alleged privacy violations, including with respect to communications to which S&W was not a party (*see* CAC ¶¶ 19, 47 (alleging the third-party cookies enable tracking across websites)), and thus is liable for the violations.

**B. Plaintiffs Have Adequately Pled CIPA Claims.**

Plaintiffs allege two claims under CIPA. First, Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up). Second, Plaintiffs allege that Defendant's conduct violates CIPA § 638.51, which prohibits the unconsented to installation and use of "pen registers" and "trap and trace devices." Each of Defendant's challenges to these claims are meritless.

**1. Plaintiffs Properly Allege a Violation of CIPA Section 631(a).**

Plaintiffs allege that S&W violated CIPA by aiding and abetting the Third Parties in violating Section 631(a), which prohibits, in relevant part, "any person . . . who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state," as well as "us[ing] or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any [such] information." Cal. Pen. Code § 631(a). This clause "can apply to internet communications." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1116 (S.D. Cal. 2024)

(citing *Cody v. Ring LLC*, Case No. 23-cv-00562-AMO, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. Feb. 22, 2024)); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").[1]

Here, Plaintiffs have alleged that Defendant integrated the Website with Third Party code that enables the Third Parties to use cookies to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." CAC ¶ 33. The Complaint includes extensive allegations describing how the cookies placed by the Third Parties transmit communications "in real time." *See, e.g., id.* ¶¶ 14–22. Specifically, Plaintiffs allege that "the third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to those third parties, enabling them to surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant." *Id.* ¶ 20. Plaintiffs further demonstrate the plausibility of these allegations by including screenshots showing network traffic that occurs after a user rejects all cookies using the Website's cookie banner and proceeds to browse the Website. *Id.* ¶¶ 29–30. As depicted, "despite the user's rejection of all cookies, the user's interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains like twitter.com; td.doubleclick.net; listrakbi.com; analytics.google.com, and others. As further shown in the right-hand column of the screenshots, the user's browser sent cookies along with those HTTP requests to the third parties." *Id.*

Defendant suggests that Plaintiffs do not allege that third parties intercepted Plaintiffs' communications "while" in transit. And although it is true that Plaintiffs must allege that "the interception must occur contemporaneous with the sending or receipt of the message," *see Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023), Plaintiffs clearly do so here. Indeed, Defendant's own Motion quotes several allegations describing how the Third Party Cookies at issue transmitted data in real time. Mot. at 13 (quoting CAC ¶¶ 3, 20, 28). Not only have

---

[1] S&W's arguments that it is not "directly liable under Section 631" (Mot. at 11) and that the first clause under 631(a) applies only to telegraph or telephone lines (Mot. at 12) are misplaced because Plaintiffs allege that S&W aided and abetted eavesdropping and unlawful use of information under the fourth clause of 631(a) (incorporating the second and third clauses).

Plaintiffs explained how third-party cookies operate, they identify specific examples of the cookies at issue that transmit data in real time. CAC ¶¶ 29–30. The cases cited by Defendant in support are easily distinguishable. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 U.S. Dist. LEXIS 13476, at *7–10 (N.D. Cal. Jan. 25, 2022) (plaintiffs specifically alleged that Google logged their data and then *subsequently* transmitted it, failed to describe how Google intercepted the relevant data in real time, and then made some vague and inapposite references to "real-time ad bidding," which was a separate issue); *see also Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (vague allegations that a third party was "plugged into" a website, and that messages were routed through its server, failed to specifically allege interception).

**2. Plaintiffs Properly Plead a "Pen Register" Claim Under Section 638.51.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Pen. Code § 638.50(b). Plaintiffs adequately plead each element of this definition by alleging that the Third Parties' cookies and the corresponding software code S&W installed that allows the Third Parties to attach cookies operate as "pen registers" because they are processes that record users' IP address and user-agent information, which is not the content of the electronic communications being transmitted from users' computers or smartphones to the Websites.

As S&W acknowledges, courts in this District have repeatedly rejected the argument that internet technologies are not pen registers as contrary to the statute's plain language. *See, e.g., Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023); *Moody v. C2 Educ. Sys.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024). This is because "the California' Legislature's chosen definition" of a pen register is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e.,

a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "[T]he Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiffs allege here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9. "[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there . . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*.

Like the plaintiffs in *Mirmalek*, *Greenley*, and *Shah*, Plaintiffs allege that the Third Party cookies and the corresponding software code installed by Defendant on its Websites are each a "device or process." *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 *with* CAC ¶ 144 (explaining how "cookies and the corresponding software code"—which are pen registers—were placed on Plaintiffs' and Class members' browsers and devices, and/or [] used to transmit Plaintiffs' and Class members' IP address and user-agent information). Thus, Defendant's argument limiting pen register claims to telephones fails.

S&W also argues that because Plaintiffs allege that certain Third Party cookies also tracked contents of communications, they cannot also plead that the Third Party cookies operated at pen registers under § 638.50(b). *See* Mot. at 18–19. Not so. A pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information . . . but not the contents of a communication." And this is precisely what Plaintiffs have alleged. *See* CAC ¶ 142 ("Some of the information collected by the Third Parties' cookies and the corresponding software, including IP addresses and user-agent information, does not constitute the content of Plaintiffs' and the Class's electronic communications with the Website."). Nothing that S&W cites states that simply because a device can function both as a wiretap (a device that intercepts communications) and a pen register (a

device that captures address and user-agent information but not communications) that the device is not a pen register. Indeed, it would do poor service to the broad language of the statute to prevent liability simply because a device is sophisticated enough to do both. Plaintiffs allege that the Third Parties' cookies and the corresponding software code installed by Defendant on its Website are "pen registers" because they are "device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information"—including, the IP address and user-agent information—from the electronic communications transmitted by Plaintiffs. CAC ¶ 140. Moreover, the Complaint alleges that the Third Parties attached several different cookies to Plaintiffs' devices and browsers, which collected different data sets. *See e.g.,* CAC ¶¶ 29–30, 35–56 (identifying and describing a variety of cookies, including ones that transmits a user's IP address). This is sufficient.

**C. Plaintiffs Have Adequately Pleaded Their Fraud Claims.**

"The Ninth Circuit has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022) (Gilliam, J.) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted)). "In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*), superseded by statute on other grounds as stated in *Ronconi v. Larkin*, 253 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Brown*, 2022 U.S. Dist. LEXIS 42760, at *7–8.

Despite S&W's assertion to the contrary, Plaintiffs have pleaded "the who, what, when, where, and how" of Defendants' fraud. They allege that Defendants (the who), fraudulently stated that users could "Reject All" cookies (the what), during the class period (when), on the Website (where), and that this fraudulent statement appeared on the cookie consent banner (the how). *E.g.*, CAC ¶¶ 1–3, 25, 27–28, 62–68, 70–76, 78–84 (alleging fraud); ¶¶ 16–20, 22–24 (alleging intentional conduct); ¶¶ 65,

67, 73, 75, 81, 83, 151 (alleging reliance); ¶¶ 57-61, 152 (alleging injury).

S&W's argument that Plaintiffs have failed to identify any loss of money, property, or value is misguided and ignores that Plaintiffs have alleged an invasion of protected interests, misappropriation of their information, and that their information has value. *See*, *e.g.*, CAC ¶¶ 57-61, 152. Invasions of privacy have long been recognized at common law as concrete injuries sufficient to support a lawsuit. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). And Plaintiffs "have a stake in the value of their misappropriated data." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) (denying summary judgment on a claim involving misappropriated data); *see also Rodriguez*, 2024 U.S. Dist. LEXIS 1290, at *35–36 (summarizing viable damages model based on "[u]ser's willingness to pay to prevent data collection").

### D. Plaintiffs Sufficiently Plead a Mutual Agreement and Defendant is Estopped from Arguing Otherwise.

Plaintiffs allege breach of implied contract claims based on S&W's failure to perform the promises it made in its Privacy Policy. "A claim for breach of an implied contract has the same elements as a claim for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Summit Estate, Inc. v. United Healthcare Ins. Co.*, No. 4:19-cv-06724 YGR, 2020 U.S. Dist. LEXIS 166721, at *8 (N.D. Cal. Sep. 10, 2020) (citing *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172 (2008)). "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011). Plaintiffs plead each of these elements in their breach of contract claims; S&W challenges only the existence of a mutual obligation (Mot. at 22–23). In S&W's view, Plaintiffs have not alleged a mutual agreement "manifested by conduct." Mot. at 23. Not so. S&W made certain promises in its cookie banner and Privacy Policy that users could opt out of cookies by clicking "Reject All" and that users' opt out preferences would be "honored." CAC ¶ 25. Plaintiffs, in turn, agreed to abide by the opt-out procedure offered by S&W and agreed to use the Website—providing S&W the opportunity to advertise and/or offer its products to Plaintiffs. Indeed, S&W's conduct in presenting the banner with language stating that users could "Reject All"

cookies and that such opt outs would be "honored" and subsequently doubling-down on this promise in the Privacy Policy is a clear offer for users to use the Website according to those terms. Plaintiffs, in turn, agreed to that promise when they clicked "Reject All" and proceeded to browse the Website. In short, S&W offered the use of its Website under certain terms. Plaintiffs accepted. That is an enforceable contract.

Alternatively, S&W's clear promises that Plaintiffs could "Reject All" cookies and that "[i]f we have detected an opt-out preference signal then it will be honored" in the cookie banner are enforceable promises because S&W is estopped from arguing to the contrary. Promissory estoppel applies whenever a "promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance' would result in an 'injustice' if the promise were not enforced[.]" *Aceves v. U.S. Bank Nat'l Ass'n*, 192 Cal. App. 4th 218, 225–27 (2011). Here, S&W made "a promise clear and unambiguous in its terms"—i.e., that Plaintiffs could "Reject All" cookies and that their opt out would be "honored" (CAC ¶ 1); there is "reliance by the party to whom the promise is made" CAC ¶¶ 65, 73, 81 (describing Plaintiffs' reliance on S&W's promises); Plaintiffs' "reliance [was] both reasonable and foreseeable"—indeed, S&W made an explicit promise that Plaintiffs' could "Reject All" cookies and doubled down by assuring users that it would "honor" opt out requests; and Plaintiffs were "injured by his or her reliance" (*see, e.g.*, CAC ¶ 184).

**E. Plaintiffs' Unjust Enrichment Claim Is Properly Pled.**

The Ninth Circuit has allowed independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook Consumer Priv.*, 402 F. Supp. 3d at 803 (permitting an independent unjust enrichment claim alongside valid breach of contract and fraud claims). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d 945. Here, Plaintiffs may bring an unjust enrichment claim because they allege that S&W benefited from using their Private Communications. CAC ¶¶ 21, 24, 57–61 (describing ways in which S&W benefited from the use of cookies); *see also Facebook Tracking*, 956 F.3d at 600 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data"

where they "allege that their browsing histories carry financial value"). "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claim in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegations that defendant benefitted from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to plead unjust enrichment).

**F. Plaintiffs Sufficiently Plead Trespass to Chattels.**

"In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (citation omitted). A plaintiff may satisfy the damages element by pleading that the trespass "impaired the condition, quality, or value of the personal property." *Fields v. Wise Media, LLC*, No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, at *12 (N.D. Cal. Sept. 24, 2013) (citing *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1356 (2003)). This includes where the alleged changes "establish a significant reduction in service constituting an interference with the *intended functioning* of the system." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (emphasis added).

Here, Plaintiffs easily plead each element by alleging that S&W intentionally, and contrary to Plaintiffs' express rejections, allowed the Third Parties to put cookies on their devices and browsers. CAC ¶¶ 16–20, 28–29 (describing intentional conduct), ¶¶ 25–30, 62–68, 70–76, 78–84 (describing placement of cookies despite express rejection). S&W argues that Plaintiffs have not alleged interference with their devices. Mot. at 24–25. But S&W's unauthorized use resulted in damage by reducing storage, disk space, and performance of Plaintiffs' and other Class members computing devices. CAC ¶ 190. This includes reducing the intended function of the system—i.e. Plaintiffs' ability to use their devices and browsers without being tracked by the Third Parties. Such breaches of privacy are sufficient to support the injury element of a claim for trespass to chattels. *See In re Facebook, Inc.*

*Internet Tracking Litig.*, 956 F.3d at 601; *see also In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (trespass to chattels properly pled where plaintiff "ha[s] alleged measurable harm from the loss of available storage space on their devices").

That S&W cites cases for the idea that a privacy interest cannot be the harm on which a trespass to chattels claim is based does not change this result. *See* Mot. at 25. In those cases, plaintiffs did not allege impairment of their property but focused solely on their privacy interests. *See, e.g., Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 765 (2022) (finding copying of data and invasion of privacy interests, without any alleged injury to property, did not support claim for trespass to chattels). Plaintiffs' claim for trespass to chattels, however, is not based on their *privacy* interests (although those were harmed by the trespass), but on their *property* interests in their devices and browsers. S&W caused the placement of third-party cookies onto Plaintiffs' devices and browsers, taking up storage space in an unauthorized manner, and materially altering and misappropriating the *functioning* of Plaintiffs' devices and browsers (causing them to take Plaintiffs' data and send it to third parties, after Plaintiffs had specifically sought to block such unauthorized use of their devices and browsers).

### G. Plaintiffs Request Leave to Amend If Necessary.

"[L]eave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiffs request leave to amend to cure the identified deficiencies.

## IV. CONCLUSION

For the foregoing reasons, S&W's motion to dismiss must be denied.

Dated: July 11, 2025

**GUTRIDE SAFIER LLP**

*/s/Seth A. Safier*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*