Kimberly M. Ingram-Hogan (SBN 305497)
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
Phone: (615) 252-3592
Email: kingram@bradley.com

Erin J. Illman (SBN 238262)
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Phone: (704) 338-6026
Email: eillman@bradley.com

*Attorneys for Defendant Smith & Wesson Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| TONY D'ANTONIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SMITH & WESSON INC.,<br><br>Defendant. | Case No. 5:25-cv-03085-PCP<br><br>**SMITH & WESSON'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>Judge: Hon. J. Casey Pitts<br>Hearing Date: Aug. 21, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 8 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. The Complaint fails to allege facts that support the privacy torts alleged in the first and second causes of action. ..... 2

A. The Complaint does not identify an actionable intrusion or invasion because the alleged private communications occurred on S&W's own website. ..... 2

B. The Complaint fails to allege a serious or highly offensive invasion of privacy. ..... 3

II. The Complaint fails to plausibly allege a violation of Section 631 of CIPA. ..... 5

III. The Complaint fails to plausibly allege a violation of Section 638.51 of CIPA. ..... 6

A. As a matter of law, the alleged cookies and code are not pen registers. ..... 7

B. The Complaint alleges that the cookies and code record contents, which prevents them from being pen registers. ..... 8

IV. The Complaint fails to state a claim for plausible or particularized claim for common law fraud, deceit, and/or misrepresentation. ..... 9

V. The Complaint fails to state a claim for unjust enrichment. ..... 10

VI. The Complaint fails to plausibly plead claims for breach of implied contract and breach of the implied covenant of good faith and fair dealing. ..... 11

VII. The Complaint fails to state a claim for trespass to chattels. ..... 12

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aceves v. U.S. Bank, N.A.*,
192 Cal. App. 4th 218, 120 Cal. Rptr. 3d 507 (2011), *as modified* (Feb. 9, 2011) ....................11

*Bajjuri v. Raytheon Techs. Corp.*,
641 F. Supp. 3d 735 (D. Ariz. 2022) ....................10

*Bird v. Real Time Resols., Inc.*,
183 F. Supp. 3d 1058 (N.D. Cal. 2016) ....................9

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Ct., Sept. 9, 2024)....................8

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ....................5

*Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp.*,
709 F. Supp. 3d 1217 (D. Nev. 2024)....................10

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................12

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................12

*Doe v. Tenet Healthcare Corp*,
No. 1:23-cv-01106-DC-CKD, 2025 WL 1635956 (E.D. Cal. June 9, 2025) ....................12

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ....................10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................3, 4, 11

*Fields v. Wise Media, LLC*
No. 3:12-cv-05160-WHA, 2013 WL 5340490 (N.D. Cal. Sept. 24, 2013)....................12

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ....................3

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ....................4

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................3

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................4

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ....................4

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) ....................12

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................12

*James v. Allstate Ins. Co.*,
No. 3:23-CV-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ....................2

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................4, 5

*Lau v. Gen Digital Inc.*,
No. 22-CV-08981-RFL, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ....................9

*M. H. v. Done Glob., Inc.*,
No. 24-CV-03040-RFL, 2025 WL 629613 (N.D. Cal. Feb. 26, 2025) ....................2

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023) ....................9

*Mirmalek v. Los Angeles Times Comms. LLC*,
24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ....................8

*Palacios v. Fandom, Inc.*,
No. 24STCV11264, 2024 WL 5494527 (Cal. Super. Ct., Sep. 24, 2024) ....................7

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................4

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ....................6

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-CV-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ....................2

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct., Jan. 27, 2025) ....................7

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ....................7, 9

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021)....................5

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-CV-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)....................5

*Torres v. Prudential Fin., Inc.*,
No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)....................6

*Williams v. DDR Media, LLC*,
No. 22-CV-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023)....................2

*Williams v. TMC Health*,
No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024)....................2

*X Corp. v. Bright Data Ltd.*,
733 F. Supp. 3d 832 (N.D. Cal. 2024)....................12

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................4

**Statutes**

Cal. Penal Code § 631....................5

Cal. Penal Code § 638.50....................7, 8, 9

Cal. Penal Code § 638.51....................7

**Other Authorities**

Fed. R. Civ. P. 8(a)....................9

Fed. R. Civ. P. 9(b)....................9

## INTRODUCTION

The Court should dismiss Plaintiffs' Complaint in its entirety. As explained in the Motion to Dismiss and herein, Plaintiffs are attempting to invent a cause of action where none exists.

Plaintiffs' common law claims for invasion of privacy and intrusion upon seclusion fail as a matter of law. First, even accepting the facts alleged as true, S&W did not intrude upon the seclusion of or invade Plaintiffs' privacy. S&W was party to the communications in question and cannot invade the privacy of its own communications, and the Complaint does not allege liability based on aiding and abetting any third parties' intrusion. Second, S&W's alleged conduct is not a highly offensive or serious intrusion. The Complaint does not allege that S&W tracked activity that occurred anywhere other than S&W's own website, and the type of consumer data allegedly collected would not be highly offensive to a reasonable person.

Plaintiffs' claims for violations of CIPA also fail as a matter of law. Plaintiffs' response clarifies that their Section 631 claim is based upon S&W aiding and abetting eavesdropping by third parties. The Complaint, however, fails to state allegations that plausibly show that the third parties *were* eavesdropping within the meaning of Section 631. Specifically, the Complaint does not allege that third parties learned the contents of communications in real time, which defeats a claim under Section 631. Similarly, Plaintiffs have not stated a viable claim for violation of CIPA's prohibition on pen registers. The tracking technology alleged in the Complaint is not a "pen register" because it collects information about the sender's IP address, not about the recipient. More importantly, CIPA excludes from the definition of "pen register" any technology that collects "contents" of communications, and the Complaint expressly alleges that the technology at issue here collected such contents. Plaintiffs cannot avoid this result by rewriting the statute so that pen registers can also collect contents.

Plaintiffs' remaining claims are inadequately pled. For the fraud claim, the Complaint fails to plausibly allege any harm that resulted from any alleged misrepresentations and fails to identify the facts about those representations with particularity. The Complaint similarly fails to identify a benefit that S&W retained and received at Plaintiffs' expense, defeating Plaintiffs' unjust enrichment claim. The Complaint also does not identify a contract that could support claims for

breach of contract or the implied covenant of good faith and fair dealing. Finally, the Complaint purports to assert a trespass to chattels claim, but fails to allege the measurable decrease in storage or other impairment of function that is required for such a claim in this context.

For all of these reasons, and as explained further in the Motion and below, the Court should dismiss the Complaint.

## ARGUMENT

### I. The Complaint fails to allege facts that support the privacy torts alleged in the first and second causes of action.

The Court should reject Plaintiffs' attempt to use privacy torts designed to protect against extreme behavior to impose liability for normal commercial activity in the digital era. As explained below, the Complaint does not allege: (1) an intrusion or invasion or (2) conduct that is highly offensive or a serious invasion of privacy.

#### A. The Complaint does not identify an actionable intrusion or invasion because the alleged private communications occurred on S&W's own website.

As a matter of law, a defendant cannot be held liable for invasion of privacy or intrusion upon seclusion when it was a party to the communications allegedly invaded or intruded upon. (*See* Mot. to Dismiss, Dkt. 15, at 7–8.) This is because "one cannot logically intrude into communications to which they are a party." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *8 (C.D. Cal. Feb. 27, 2025). Plaintiffs do not rebut this point. Indeed, Plaintiffs fail to even address any of the cases that S&W cited in which courts have dismissed claims against a defendant to whom the plaintiff provided the allegedly private information. *See id.*; *Williams v. DDR Media, LLC*, No. 22-CV-03789-SI, 2023 WL 5352896, at *7 (N.D. Cal. Aug. 18, 2023); *James v. Allstate Ins. Co.*, No. 3:23-CV-01931-JSC, 2023 WL 8879246, at *6 (N.D. Cal. Dec. 22, 2023); *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *7 (D. Ariz. Sept. 30, 2024).

Plaintiffs cite only one case to support the notion that a plaintiff may pursue a privacy tort against a defendant to whom the plaintiff provided the allegedly private information (Dkt. 19 at 8–9), and the Court should not adopt its reasoning here. In *M. H. v. Done Glob., Inc.*, No. 24-CV-03040-RFL, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025), the court concluded that the

plaintiff had adequately alleged facts that would allow it to impose liability based on the defendant's "substantial assistance" to third parties in invading the plaintiff's privacy. But Plaintiffs did not plead that S&W aided and abetted an invasion of privacy or intrusion upon seclusion. Instead, they pled that S&W *itself* invaded their privacy and intruded upon their seclusion (*see, e.g.*, Compl. ¶¶ 96, 101, 108), and that claim fails as a matter of law for the reasons explained in the Motion.

Not only do Plaintiffs fail to allege that these claims are based on alleged aiding and abetting, they also do not allege the facts that would support such a claim. A court may impose liability for aiding and abetting an intentional tort if the defendant "knows the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act." *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (emphasis omitted). Here, Plaintiffs have not pled that S&W knew that the Third Parties' conduct constituted a breach of a duty or that S&W gave the Third Parties substantial assistance or encouragement to so act. As a result, Plaintiffs have failed to state a claim for aiding and abetting invasion of privacy or intrusion upon seclusion.

### B. The Complaint fails to allege a serious or highly offensive invasion of privacy.

There is no dispute that claims for common law invasion of privacy and intrusion upon seclusion require that the invasion or intrusion be highly offensive. (*See* Dkt. 19 at 6.) The parties' disagreement centers around whether the conduct alleged here is "highly offensive to a reasonable person, and sufficiently serious and unwarranted so as to constitute an egregious breach of the social norms." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (internal quotes omitted); *see also In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) ("This district sets a high bar for the requisite intrusion that is highly offensive to a reasonable person." (internal quotation omitted)). While offensiveness *can* be a factual question, many courts have determined that electronic collection and disclosure of information cannot meet the high bar for this claim as a matter of law. (*See* Dkt. 15 at 8–10 (collecting authorities)).

In contrast, Plaintiffs cite to privacy tort claims that were materially different from the ones alleged here. Plaintiffs primarily cite cases that involved the defendant tracking activity outside of the defendant's own website. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (finding that "Plaintiffs' allegations of surreptitious data collection when individuals were not using [defendant's site] are sufficient to survive a dismissal motion on the issue" of lack of offensiveness); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (emphasizing allegations regarding "offline activity" in denying motion to dismiss); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1158 (N.D. Cal. 2021) (denying motion to dismiss on the ground that cases cited by defendant did not involve "continuous tracking or storage of comprehensive location data"); *Hart v. TWC Prod. & Tech. LLC,* 526 F. Supp. 3d 592, 602 (N.D. Cal. 2021) (denying motion to dismiss where defendant "allegedly tracked, stored, and shared precise location data on a continuous basis, even when the user did not have the app open"); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (determining that offensiveness was a factual question because the case was indistinguishable from *Facebook Internet Tracking Litigation*). And indeed, courts have specifically acknowledged that such off-site tracking activity is a distinguishing factor between what could be and what is not highly offensive as a matter of law. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) (granting a motion to dismiss because the plaintiff failed to allege that the defendants tracked her data outside of the defendants' website). Here, there is no allegation that S&W tracked any activity outside of its own website.

Further, the Complaint does not allege that S&W collected the type of information that would be highly offensive to collect or disclose. In granting a motion to dismiss with similar privacy tort claims, one court emphasized that "Plaintiffs do not allege that the data allegedly collected by [the defendant] is sufficiently specific or personal, and its collection sufficiently harmful, to be highly offensive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022). So too here. Indeed, some of the cases that Plaintiffs cite involved collection of medical information and hold that collection of "sensitive, health-related types of personal information . . ." goes beyond the "routine commercial behavior" of "collecting contact information for sending

advertisements." *Katz-Lacabe*, 668 F. Supp. 3d at 942; *see also St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675, at *13 (N.D. Cal. Oct. 1, 2024) (refusing to dismiss case because disclosure of medical information can be highly offensive). Plaintiffs have not alleged that S&W collected or shared that type of sensitive information.

Ultimately, Plaintiffs conflate the reasonable expectation of privacy and offensiveness elements of this claim in responding to S&W's Motion. S&W did not move to dismiss on the basis that Plaintiffs lacked a reasonable expectation of privacy.[1] Instead, S&W moved to dismiss on the basis that the conduct was not highly offensive as a matter of law. Under those authorities, Plaintiffs' claims fail as a matter of law for the reasons described above.

## II. The Complaint fails to plausibly allege a violation of Section 631 of CIPA.

The Complaint is unclear regarding which prohibitions in Section 631 of CIPA Plaintiffs allege S&W violated. The Motion therefore explained that Plaintiffs had failed to plausibly allege *either* a direct violation of, *or* aiding and abetting a violation of, any of the three prohibitions in Section 631: wiretapping, eavesdropping, or using information obtained through wiretapping or eavesdropping. (*See* Dkt. 15 at 11–15.) Plaintiffs have conceded that they are not pursuing a claim for a direct violation of Section 631 or for aiding and abetting wiretapping. (*See* Dkt. 19 at 10 n.1.) Thus, the only question for the Court is whether the Complaint plausibly alleges that S&W aided and abetted third parties in eavesdropping prohibited by Section 631.[2]

The Complaint does not plausibly allege that the Third Parties eavesdropped in violation of CIPA. The relevant provision bars eavesdroppers from "read[ing]" or "learn[ing]" the contents of communications "'while' the communication is 'in transit . . . or is being sent from, or received' within California." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1000 (N.D. Cal. 2024) (quoting Cal.

---

[1] The reasonable expectation of privacy was the only ground for dismissal analyzed in *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *5 (N.D. Cal. July 28, 2021). Indeed, the *Silver* court expressly declined to consider the offensiveness of the conduct, stating "whether a conduct was highly offensive cannot be resolved at the pleading stage." *Id.* As explained above, however, that is not accurate as a sweeping statement of law, though it may have been accurate on the facts of that case.

[2] Plaintiffs do not dispute that they cannot prevail on a claim for aiding and abetting violation of the third prohibition in Section 631—use of illegally obtained information—if they cannot show that the third party obtained the information through wiretapping or eavesdropping. (*See* Dkt. 15 at 14–15.)

Penal Code § 631(a)). As S&W explained in the Motion, stating an aiding-and-abetting claim for violating this provision requires alleging that the defendant aided third parties in intercepting the *contents* of communications in real time. (*See* Dkt. 15 at 12–14.) In response, Plaintiffs insist that they have adequately alleged that the interception occurred contemporaneously with the sending or receipt of the communication. (*See* Dkt. 19 at 10–11.) Not so.

The Complaint does not plausibly allege that the Third Parties read or learned the contents of the communications while they were in transit. Plaintiffs emphasize the Complaint's use of phrasing like "real time" (Dkt. 19 at 10), but merely stating an element of Plaintiffs' claim does not make the allegation plausible. *See Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *1 (N.D. Cal. Jan. 25, 2022) (finding allegations of interception in "real time" insufficient where complaint did not contain sufficient supporting facts). Further, in the cited paragraphs, Plaintiffs allege that the third-party cookies "permitted the Third Parties *to track and collect data* in real time." (Compl. ¶ 3 (emphasis added); *see also id.* ¶¶ 20, 28 (same).) Plaintiffs do not allege, however, that the cookies allowed the Third Parties to read or learn the contents of the communications in real time. *See, e.g.*, *Torres v. Prudential Fin., Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (intercepting and storing the contents of communications in real time is insufficient if nothing indicates that the defendant "reads or attempts to read the contents of the communication <u>while they are in transit</u>") (emphasis original)).

Simply put, the Complaint may allege that third parties tracked and stored data from S&W's website for later review—something that can occur when third-party companies collect communications. That does not mean, however, that the third parties read or learned the contents in real time, which would require contemporaneous work by the third party. As a result, the Complaint is missing the factual allegations necessary to support an element of a claim for aiding and abetting eavesdropping. The Court should dismiss Plaintiffs' claims under Section 631.

**III. The Complaint fails to plausibly allege a violation of Section 638.51 of CIPA.**

CIPA also prohibits the installation and use of a pen register, which is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the

contents of a communication." Cal. Penal Code §§ 638.50(b), 638.51(a). The Complaint alleges that the third-party cookies and code on S&W's website are pen registers because they collect IP addresses and information regarding the user's device and browser. (Compl. ¶¶ 44, 45, 140.) This argument fails, both as a matter of law and based on the allegations of the Complaint.

**A. As a matter of law, the alleged cookies and code are not pen registers.**

No question, there is a split of authority as to whether cookies and code can meet the definition of "pen register." (*See* Dkt. 15 at 16–18.) But Plaintiffs entirely ignore the existence of a split, addressing only the cases that favor their position without distinguishing any of the contrary authorities that S&W cited.

Nevertheless, there are fundamental differences between pen registers and the type of tracking technology at issue in the Complaint. (*See* Dkt. 15 at 16–17.) Pen registers are "mechanical, telephone number-tracing technology," while the cookies and code "collect the IP address." *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct., Jan. 27, 2025). Pen registers record information about the destination of the communications—traditionally, the phone number called. *See Palacios v. Fandom, Inc.*, No. 24STCV11264, 2024 WL 5494527, at *3 (Cal. Super. Ct., Sep. 24, 2024). In contrast, cookies and code record information about the sender of the communications, which is equivalent to recording what phone number made a call. *See generally id.*

Plaintiffs address this mismatch only indirectly, arguing that the Legislature's definition of "pen register" is intentionally "vague and inclusive" as to the form of the collection tool, which need only be a "device" or "process." (Dkt. 19 at 11–12.) That argument, however, ignores the full definition of "pen register," which limits its reach to those devices or processes that record or decode certain information "transmitted by an instrument or facility from which a wire or electronic communication is transmitted." Cal. Penal Code § 638.51(a). The information "transmitted by" that facility is the outgoing information, not the information about the sender. *See Palacios*, 2024 WL 5494527, at *3.

S&W's conclusion is not contrary to this Court's admonishment to "focus less on the form of the data collector and more on the result." *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928 (N.D.

Cal. 2024). The "result" here is the collection of information that CIPA does not regulate. For Plaintiffs' claim to succeed, IP addresses and information regarding the sender's device and browser must qualify as the "dialing, routing, addressing, or signaling information" referenced in the statute. Cal. Penal Code § 638.50(b). But information about the *sender's*—rather than the recipient's—IP address is not information used for dialing, routing, addressing, or signaling. Plaintiffs do not explain their reasoning in reaching a contrary conclusion. (*See* Dkt. 19 at 13.)

Finally, Plaintiffs do not address S&W's broader arguments. In the Motion, S&W explained that there is no privacy interest in IP addresses and information regarding the sender's device and browser because the sender chooses to disclose that information. (*See* Dkt. 15 at 17.) CIPA claims are designed to protect privacy, not criminalize disclosure of non-private information. Plaintiffs' position would "criminalize the process by which all websites communicate with all users who choose to access them." *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Ct., Sept. 9, 2024). Plaintiff simply ignores these points, preferring a reading of the statute that both ignores the plain words used therein and the broader context. Nevertheless, the Court should consider these issues.

### B. The Complaint alleges that the cookies and code record contents, which prevents them from being pen registers.

Even putting aside what is *per se* beyond the meaning of "pen register," the Complaint's allegations do not satisfy the definition. As S&W explained in the Motion, the Complaint specifically alleges that these cookies and code recorded "contents" of communications, which means they are not "pen registers." (*See* Dkt. 15 at 18.)

Plaintiffs' argument that a third party's tracking technology can be both a "wiretap" and a "pen register" (Dkt. 19 at 12–13) is unpersuasive. The Complaint did not allege that the tracking technology was both a wiretap and a pen register, and regardless, Plaintiffs fail to cite *any* authority holding that technology can be both. Moreover, Plaintiffs' argument is inconsistent with their insistence that the application of Section 638.51 turns on the "type of data collected." *Id.* at 11 (citing *Mirmalek v. Los Angeles Times Comms. LLC*, 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024)). Indeed, the very cases that Plaintiffs rely upon emphasize that the

technology deemed a pen register does *not* collect contents of communication. *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928 (N.D. Cal. 2024). Put another way, a device that ostensibly qualifies as a "pen register" that is also collecting the "contents" of communication *definitionally* removes itself from consideration as a "pen register" under CIPA. *See* Cal. Penal Code § 638.50(b) (definition of "pen register"). As a result, Plaintiffs cannot maintain their claim for violation of CIPA's prohibition on pen registers.

**IV. The Complaint fails to state a claim for plausible or particularized claim for common law fraud, deceit, and/or misrepresentation.**

The Motion raised two grounds of dismissal for Plaintiffs' claim for fraud, deceit, or misrepresentation: (1) a failure to plausibly plead damage pursuant to Rule 8(a) and (2) a failure to plead facts with particularity pursuant to Rule 9(b). (*See* Dkt. 15 at 19–21.)

***Plausibility.*** Damage is an element of Plaintiffs' claim that they must plead with supporting factual allegations. *See Bird v. Real Time Resols., Inc.*, 183 F. Supp. 3d 1058, 1061 (N.D. Cal. 2016) ("A plaintiff alleging fraud under California law must plead facts demonstrating . . . resulting damage."). The Motion pointed out that the Complaint alleges damages only in general terms, referring to a supposed "loss of money and/or property" and "diminution of the value of" PII without explaining what was lost and how its loss was connected to the fraud. (*See* Dkt. 15 at 20.)

Plaintiffs' Response focuses on how invasions of privacy and misappropriated data can be concrete injuries that establish standing, (Dkt. 19 at 14), but that misses the point. S&W did not argue that Plaintiffs lack standing for this claim. Instead, S&W argued that Plaintiffs had not plausibly pled an element of their claim: damage caused by the alleged misrepresentation. The Response does not add any insight into what the harm suffered by Plaintiffs is. They do not, for example, point to any factual allegations regarding how the value of their information was supposedly diminished. Simply stated, Plaintiffs failed to plausibly plead any loss of money or property, which is fatal to their common law fraud, deceit, and misrepresentation claim. *See Markels v. AARP*, 689 F. Supp. 3d 722, 730 (N.D. Cal. 2023); *Lau v. Gen Digital Inc.*, No. 22-CV-08981-RFL, 2024 WL 1880161, at *4 (N.D. Cal. Apr. 3, 2024).

***Particularity.*** Plaintiffs contend that they have pled the "who, what, when, where, and

how" of the misconduct charged (Dkt. 19 at 13), but the Complaint shows otherwise. While Plaintiffs' Response states that the "when" is "during the class period" (*id.*), such a broad assertion is insufficient to satisfy the level of particularity required. *See Bajjuri v. Raytheon Techs. Corp.*, 641 F. Supp. 3d 735, 757 (D. Ariz. 2022) (holding that the particularity requirement is not met by asserting that "virtually every statement made . . . during the Class Period . . . was, by definition, false"); *Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp.*, 709 F. Supp. 3d 1217, 1235 (D. Nev. 2024) (holding that the identification of specific instances during the class period is necessary to plead the "when"). Likewise, Plaintiffs claim that the "where" is "on the Website" (Dkt. 19 at 13), but Plaintiffs point to nothing else. For instance, Plaintiffs do not allege whether the alleged misrepresentation occurred on every page on the Website or only on specific pages. Simply stating that the alleged misrepresentation occurred on a website, with hundreds of different pages, is insufficient to meet the "where" pleading requirement.

For these reasons, Plaintiffs have failed to adequately plead their fraud claim, and the Court should dismiss the fifth cause of action.

**V. The Complaint fails to state a claim for unjust enrichment.**

An unjust enrichment claim requires the plaintiff to identify the benefit received and retained. *See, e.g.*, *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Plaintiffs have failed to do so here. (Dkt. 15 at 21.)

In response, Plaintiffs point to seven paragraphs in the Complaint that they claim "allege that S&W benefited from using their Private Communications" (Dkt. 19 at 15), but none of these paragraphs actually identify a benefit that was received and retained by S&W. Paragraph 21 describes the function of third-party cookies generally. (Compl. ¶ 21.) Paragraph 24 quotes S&W's Privacy Policy regarding cookies. (*Id.* ¶ 24.) And Paragraphs 57–61 illustrate ways that S&W "could profit" from the data but never actually allege that S&W *does* or *did* profit. (*Id.* ¶¶ 57–61.) Plaintiffs cite no authorities suggesting that these allegations suffice to state a claim. As a result, Plaintiffs have failed to plausibly plead a claim for unjust enrichment, and the Court should dismiss the sixth cause of action.

**VI. The Complaint fails to plausibly plead claims for breach of implied contract and breach of the implied covenant of good faith and fair dealing.**

Plaintiffs' claims for breach of implied contract and breach of the implied covenant of good faith and fair dealing fail for lack of the most fundamental element of such claims: a contract.

To try to establish a contract, Plaintiffs argue that "S&W made certain promises in its cookie banner and Privacy Policy that users could opt out of cookies by clicking 'Reject All' and that a user's opt out preferences would be 'honored.'" (Dkt. 19 at 14.) Plaintiffs' reference to the "cookie banner" as part of the contract is an unpled theory that the Court need not consider. The Complaint identifies only S&W's Privacy Policy on its website as the relevant contract (Compl. ¶¶ 170, 171, 177, 178), and for the reasons described in the Motion, that document is not a contract. (Dkt. 15 at 22.)

Regardless, the cookie banner is not a contract either. "For a contract to exist, there must be an exchange for a promise," so there is no contract where one party is not required to make any commitment. *Facebook Tracking Litig.*, 956 F.3d at 610. Plaintiffs argue that they "agreed to abide by the opt-out procedure offered by S&W and agreed to use the Website" when viewing the cookie banner (Dkt. 19 at 14), but notably, they fail to cite any allegations of the Complaint to support this argument. Further, the Complaint does not allege what Plaintiffs promised to do in order to "abide by the opt-out procedure" or "to use the Website." (*Id.*) On the contrary, the Complaint suggests that this was merely an option that Plaintiffs had regarding how to proceed—not a commitment. And, Plaintiffs do not even attempt to distinguish *Facebook Tracking Litig.*, 956 F.3d at 610, in which the Ninth Circuit held that a similar policy was not a contract. As a result, no contract was formed, and the seventh and eighth claims cannot proceed. (*See* Dkt. 15 at 22.)

Attempting to avoid dismissal of these claims, Plaintiffs pivot to another unpled theory: promissory estoppel. (Dkt. 19 at 15.) Promissory estoppel, however, is a separate claim that Plaintiffs have not pled. *See Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 225, 120 Cal. Rptr. 3d 507, 514 (2011), *as modified* (Feb. 9, 2011) (referring to the "elements of a promissory estoppel claim"). Plaintiffs cannot use an entirely separate legal claim to save their inadequately pled claims for breach of implied contract and breach of the implied covenant of good faith and fair dealing.

Further, S&W cannot address the sufficiency of the pleading of a claim that has not been pled. The Court should dismiss the seventh and eighth claims.

**VII. The Complaint fails to state a claim for trespass to chattels.**

A claim for trespass to chattels "does not lie where injuries are to privacy and confidentiality." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1087 (N.D. Cal. 2023). Thus, a plaintiff can only maintain a trespass to chattels claim for the installation of cookies if the plaintiff alleges that the installation caused damage to a plaintiff's computer hardware or software or interference with its ordinary and intended operation. *Id.* (*quoting Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1353 (2003)). Accordingly, a failure to allege that "the placement of cookies led to a measurable decrease in storage, memory, or any other impairment to their computing devices' functioning" is fatal to a trespass to chattels claim. *See, e.g.*, *Doe v. Tenet Healthcare Corp*, No. 1:23-cv-01106-DC-CKD, 2025 WL 1635956, at *24 (E.D. Cal. June 9, 2025) (granting a motion to dismiss trespass to chattels claim for failure to identify measurable damage or impairment). Courts in this District have declined to infer such interference where it is not alleged. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) ("[I]t is not obvious how the presence on one's computer of the cookies from the providers' websites would result in any cognizable reduction in storage, disk space, or performance."); *Fields v. Wise Media*, LLC, No. 3:12-cv-05160-WHA, 2013 WL 5340490, at *5 (N.D. Cal. Sept. 24, 2013) ("Allowing plaintiffs to assert a claim for trespass to chattels absent actual physical harm or impairment to their phones would vastly expand tort law and this order will not do so absent binding Ninth Circuit authority.").

Plaintiffs' bare assertion that the cookies damaged Plaintiffs' devices through the "[r]eduction of storage, disk space, and performance" (Compl. ¶ 191(b)) is not enough to state a trespass to chattels claim. *See, e.g., X Corp. v. Bright Data Ltd.*, 733 F. Supp. 3d 832, 843 (N.D. Cal. 2024). Plaintiffs point to *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012), but the *iPhone* plaintiffs alleged a "significant reduction in service constituting an interference with the intended functioning of the system" (*i.e.*, the phone). *Id.* at 1069. Here, Plaintiffs have not alleged any such specific harm. The Response argues that the placement of cookies "reduc[ed] the intended function of the system—*i.e.* Plaintiffs' ability to use their devices

and browsers without being tracked by the Third Parties" (Dkt. 19 at 16), but notably, it does not cite any allegations in the Complaint that supposedly state this. Such an allegation would not make sense; the "system" at issue is the S&W website, and there is no serious argument that cookies interfere with its function. If anything, cookies may interfere with the ability to use the website without tracking, but that is a privacy interest insufficient to support this claim.

The Court should dismiss the ninth cause of action for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

Dated: July 23, 2025

Respectfully Submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

*/s/ Kimberly M. Ingram-Hogan*

Kimberly M. Ingram-Hogan (State Bar No. 305497)
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
Phone: (615) 252-3592
Email: kingram@bradley.com

Erin J. Illman (SBN 238262)
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Phone: (704) 338-6026
Email: eillman@bradley.com

*Attorneys for Defendant Smith & Wesson Inc.*