UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY D'ANTONIO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SMITH & WESSON INC.,<br><br>    Defendant. | Case No. 25-cv-03085-PCP<br><br>**ORDER DENYING IN PART, GRANTING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

In their class action complaint, plaintiffs Tony D'Antonio, Thomas Thayer, and Reina Cuevas Garcia allege that defendant Smith & Wesson violated their privacy rights by placing certain cookies on their devices even though they had expressly opted out of receiving such cookies. Smith & Wesson moves to dismiss plaintiffs' lawsuit for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants in part and denies in part Smith & Wesson's motion to dismiss.

## BACKGROUND

Smith & Wesson manufactures firearms and owns and operates a website where users can get information about Smith & Wesson products and learn where to purchase them.[1] Smith & Wesson's website places cookies—text files that identify users to websites—on users' browsing devices. Cookies allow websites to recognize individual users because they are sent to a website's server alongside requests for the website's content. If a website stores third-party cookies on a user's device, the third-party can track that user across different websites. Owners of websites can use cookies to analyze users' behavior, personalize information presented, target advertising, and integrate social media functions.

---

[1] The Court assumes the truth of the allegations in the complaint for the purposes of Smith & Wesson's Rule 12(b)(6) motion.

Smith & Wesson presented users with a choice as to how they would be tracked while on its website. Smith & Wesson's privacy policy explains that its website uses cookies and that plaintiffs can "opt out of accepting Cookies altogether …." For California consumers, Smith & Wesson's popup cookie consent banner told users that the site uses cookies "to enhance user experience and to analyze performance and traffic" on the site. The banner also said that Smith & Wesson shares information about use of the site with social media, advertising, and analytics partners. The banner stated that if Smith & Wesson detected an "opt-out preference" it would be honored. Below this text, the banner gave users the option to "Accept Cookies," "Reject All," or "Manage Privacy Preferences." In other words, Smith & Wesson's popup cookie consent banner told users that the website they were visiting used cookies but appeared to give users some control over how they would be tracked and how their personal data would be used.

Plaintiffs allege that, in reality, if users clicked "Reject All" Smith & Wesson's website nonetheless placed Smith & Wesson and third-party cookies on users' devices and allowed third parties—including Google LLC, X Corp, Listrak, Inc. and Digioh LLC domains—to use those cookies to track users' online activities, including, plaintiffs allege, their "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data."

Plaintiffs Tony D'Antonio, Thomas Thayer, and Reina Cuevas Garcia are California residents who say Smith & Wesson tracked them despite their having expressly rejected all cookies. D'Antonio allegedly visited Smith & Wesson's website in or around February 2025, Thayer in or around November 2024, and Garcia in or around 2024. Each alleges that they viewed Smith & Wesson's popup cookie consent banner upon visiting the website and selected the "Reject All" cookies button. Smith & Wesson nonetheless allegedly enabled cookies and other tracking technology to be placed on plaintiffs' devices and thereby allowed their data to be transmitted to third parties.

Plaintiffs bring suit on behalf of a class of similarly situated people, defining the class as "[a]ll persons who browsed the Website in the State of California after clicking the 'Reject All'

button in the popup cookies consent banner within the four years preceding the filing of this Complaint." Plaintiffs bring claims for (1) invasion of privacy; (2) intrusion upon seclusion; (3) wiretapping in violation of the California Invasion of Privacy Act (CIPA); (4) use of a pen register in violation of CIPA; (5) common law fraud, deceit, or misrepresentation; (6) unjust enrichment; (7) breach of contract; (8) breach of the implied covenant of good faith and fair dealing; and (9) trespass to chattels. Plaintiffs seek injunctive relief, damages, and fees. Smith & Wesson moves to dismiss plaintiffs' complaint for failure to state a claim under Rule 12(b)(6).

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

**ANALYSIS**

**I.    Invasion of Privacy & Intrusion upon Seclusion**

Smith & Wesson argues that plaintiffs have failed to adequately plead the substantive elements of their causes of action for invasion of privacy and intrusion upon seclusion because Smith & Wesson did not intrude upon communications and any alleged intrusion was not highly offensive. Because both causes of actions have similar elements, they are considered together. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Both require plausibly alleging, first, that the defendant intruded into a "place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" and, second, that the defendant's intrusion was "highly offensive." *Id.*; *see also Hammerling v. Google*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022).

Smith & Wesson first argues that it cannot be liable for "intruding" upon its own interactions with plaintiffs. But plaintiffs base their claim not only "on [Smith & Wesson's] own alleged intrusion," but also on their allegation "that [Smith & Wesson] permitted unauthorized third parties to intrude … by purposefully embedding tracking tools facilitating such intrusion." *M. H. v. Done Glob. Inc.*, No. 24-cv-03040-RFL, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (internal quotation marks omitted). As Smith & Wesson recognizes, a party is liable when it "aids and abets the commission of an intentional tort" if the party "knows the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act." *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006). Knowledge means "actual knowledge of the specific primary wrong the defendant substantially assisted." *Id.* While Smith & Wesson argues that plaintiffs fail to adequately allege an intrusion by third parties or that Smith & Wesson aided and abetted those intrusions, plaintiffs allege that Smith & Wesson voluntarily "chose," "caused," and "allowed" third-party tracking tools to integrate into its website "pursuant to agreements" with those third parties. Dkt. 1 ¶¶ 3, 16, 23, 32; *see also id.* ¶ 24 (quoting Smith & Wesson's website privacy policy, which states, "We or our third-party providers place and store internet Cookies on your hard drive"). Plaintiffs further allege these tools enable third parties to track and collect users' data and personal information in real time. *Id.* ¶¶ 3, 20, 23, 27, 28. These

4

allegations are sufficient to plead that Smith & Wesson facilitated third parties' intrusions into their privacy and seclusion.

Smith & Wesson also argues that plaintiffs fail to adequately allege a highly offensive intrusion because they voluntarily input personal information into Smith & Wesson's website and the information itself was of a routine and commercial nature. Whether a particular invasion or intrusion was "highly offensive" presents a mixed question of law and fact, *see Hill v. NCAA*, 7 Cal. 4th 1, 40 (1994) ("[W]hether defendant's conduct constitutes a serious invasion of privacy are mixed questions of law and fact."), and requires considering the "degree and setting of the intrusion" and "the intruder's motives and objectives," *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009). The "ultimate question of whether … tracking and collection practices could highly offend a reasonable individual is an issue that [often] cannot be resolved at the pleading stage." *See In re Facebook*, 956 F.3d at 606. As a result, dismissal under Rule 12(b)(6) is appropriate only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests." *Hill*, 7 Cal. 4th at 40. "[D]eceit can be a kind of 'plus' factor" in determining whether an action is highly offensive. *See In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) (quoting *Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019)).

Plaintiffs allege that Smith & Wesson collected and facilitated third-party collection of "their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." Even if the Court were to accept Smith & Wesson's argument that disclosure of this type of information, standing alone, would be insufficient to constitute a highly offensive intrusion, plaintiffs have pleaded that Smith & Wesson affirmatively promised not to collect or enable the collection of this information. According to plaintiffs' allegations, Smith & Wesson misled them by collecting and enabling the collection of this information notwithstanding their promise not to do so. As a result, they have alleged the kind of deceit "plus factor" necessary to support their claim of a highly offensive intrusion, and Smith

& Wesson's reliance on cases like *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012), and *Hammerling*, 615 F. Supp. 3d 1060, is misplaced. Neither case involved a specific promise that users would not be tracked in specific ways. *See In re iPhone*, 844 F. Supp. 2d at 1049–50; *Hammerling*, 615 F. Supp. 3d at 1078–79.

Plaintiffs also allege that they selected the "Reject All" cookies button on Smith & Wesson's popup cookie consent banner and believed that doing so "would allow [them] to opt out of, decline, and/or reject all cookies and other tracking technologies." Plaintiffs allege that they "only then" continued using the website. Had plaintiffs known cookies would still be stored on their devices, they allegedly "would not have used the Website or, at a minimum, [] would have interacted with the Website differently." Smith & Wesson thus not only misled users into thinking that their cookie rejections would be effective but also led them to engage in tracked conduct they otherwise would not have undertaken. Given that plaintiffs have alleged an intrusion undertaken through deceptive conduct, plaintiffs have pleaded facts sufficient to preclude the Court from concluding, as a matter of law, that Smith & Wesson's invasion was not "highly offensive."

Smith & Wesson's motion to dismiss plaintiffs' intrusion upon seclusion and invasion of privacy claims is therefore denied.

## II. Wiretapping

California Penal Code § 631(a) prohibits:

1) "by means of any machine, instrument, or contrivance, or in any other manner, intentionally tap[ping] or mak[ing] any unauthorized connection … with any telegraph or telephone wire, line, cable, or instrument"

2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"

3) "us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained" and

4) "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above…."

Smith & Wesson argues that plaintiffs have inadequately alleged a violation of Clause 2 and that plaintiffs have failed to adequately plead a violation of Clauses 3 or 4 because a violation of those

clauses depends in this case on a violation of Clause 2.[2]

Clause 2 of California Penal Code Section 631(a) prohibits "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[ing], or attempt[ing] to read, or to learn the content or meaning of any message, report, or communication while the same is in transit." Smith & Wesson argues that plaintiffs cannot state a claim under this clause because the "contents" of their communications were not intercepted and, even assuming they were, they were not intercepted while "in transit."

The first issue is dispositive. Although plaintiffs' allegations are likely sufficient to establish that the technology at issue enabled some "communications" to be intercepted, *see Wiley v. Universal Music Grp.*, No. 25-cv-03095-PCP, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025), plaintiffs do not specifically allege that *their* communications were intercepted. Plaintiffs repeatedly allege that Smith & Wesson enabled third parties to track the information and communications of "Website users." But with respect to *their own* interactions with Smith & Wesson's website, plaintiffs allege only that they visited the website and chose to "Reject All" cookies. They do not allege that, in interacting with Smith & Wesson's website, they personally engaged in any communications with the website whose content could have been intercepted. *Cf. Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1077, 1083 (C.D. Cal. 2021); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 854–55, 861–62 (C.D. Cal. 2024); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936–39 (N.D. Cal. 2023); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *2 (N.D. Cal. Oct. 1, 2024); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022). In the absence of any allegation that plaintiffs themselves interacted with the website in a manner that involved communications whose contents could have been intercepted, they fail to plead the elements of a valid wiretapping claim. That claim will therefore be dismissed with leave to amend.

### III.   Pen Register

California Penal Code § 638.51(a) prohibits "install[ing] or us[ing] a pen register" without

---

[2] Plaintiffs do not seek to pursue any claim under Clause 1.

7

a court order under specific circumstances. Section 638.50(b) defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."

Smith & Wesson first argues that California's pen register law applies to telephones and not to cookies that collect a web user's IP address. The text of the statute, however, contains no such limitation. Section 638.50's definition does not limit "pen registers" to telephones, even though other sections of CIPA are expressly so limited. *See Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025) (citing Cal. Penal Code §§ 631(a), 632.7).

Smith & Wesson's interpretation is also inconsistent with the California Legislature's purpose in enacting CIPA. Given ambiguity in construing California state law, "California courts 'determine the Legislature's intent so as to effectuate the law's purpose.'" *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) (quoting *Skidgel v. Cal. Unemp. Ins. Appeals Bd.*, 12 Cal. 5th 1, 14 (2021)). The California Legislature enacted CIPA and prohibited pen registers to "protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society," as the California Supreme Court observed. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002) (cleaned up). CIPA's purpose of protecting individuals' privacy would be ill-served by limiting Section 638.51 to telephones in the absence of a strong textual basis for that limitation.

Smith & Wesson also contends that because California law prohibits pen registers that record information "but not the contents of a communication," the law cannot apply to devices that *also* collect the contents of a communication. This Court recently considered that argument and rejected it in *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1152–55. Smith & Wesson does not offer any arguments that lead the Court to reach a different conclusion here.

For these reasons, the cookies placed on certain users' devices might amount to an

unauthorized pen register.³ Once again, however, the problem with plaintiffs' pen register claim is that they have not alleged that *they* ever communicated with the website. In the absence of any allegation that they communicated with the website, they cannot allege that the "dialing, routing, addressing, or signaling information" relating to any such communication was unlawfully tracked.

As with plaintiffs' wiretapping claim, Smith & Wesson's motion to dismiss plaintiffs' pen register claim is granted with leave to amend. Should plaintiffs choose to amend this claim, they must identify not only their communications with Smith & Wesson's website but also the specific "dialing, routing, addressing, or signaling information" for outgoing communications that was tracked.

### IV.     Common Law Fraud, Deceit, or Misrepresentation

Smith & Wesson argues that plaintiffs' common law fraud, deceit, or misrepresentation claim should be dismissed because plaintiffs fail to plead with particularity the manner in which Smith & Wesson allegedly made misrepresentations to plaintiffs. Common law fraud in California requires "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (emphasis removed). A state law fraud claim being pursued in federal court must also satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement by pleading "the who, what, when, where, and how of the misconduct alleged." *Id.* at 1126. One of the purposes of the specificity required of Rule 9(b) is to "provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs." *Id.* at 1125 (internal quotation marks omitted).

Plaintiffs Thayer and D'Antonio adequately plead "the who, what, when, where, and how" of Smith & Wesson's alleged misrepresentations. *See id.* at 1126. Both allege that in or around

---

³ Smith & Wesson argues (1) that plaintiffs' pen register claim fails because the complaint alleges that the cookies collected IP addresses but not information on the destination to which the IP addresses were sent and (2) that plaintiffs have no privacy interest in IP addresses. Because the Court dismisses plaintiffs' pen register claim with leave to amend, these arguments will not be addressed at this time but may be raised in response to any amended pen register claim plaintiffs might pursue.

November 2024 and February 2025, respectively, they visited Smith & Wesson's website and were immediately shown the popup cookie consent banner that represented they could decline all cookies by clicking "Reject All." This representation was allegedly false because Smith & Wesson in fact tracked plaintiffs' activity using cookies and transmitted their data to third parties. These allegations are sufficient to provide Smith & Wesson with "adequate notice" of the fraud alleged. *See id.* at 1125.

In contrast, plaintiff Cuevas Garcia inadequately pleads the "when … of the misconduct alleged." *Id.* at 1126. She alleges only that she visited Smith & Wesson's website in or around 2024. This level of generality fails to provide Smith & Wesson with adequate notice. Smith & Wesson cannot, for example, determine what specific representations regarding cookies were made on its website or how the website was using any cookies placed on users' devices at the time Cuevas Garcia visited the website. *See, e.g.*, *id.* at 1126 (concluding that the plaintiff had not satisfied Rule 9(b) when he failed to plead "when he was exposed to" the television advertisements at issue or to "specify … when [an allegedly fraudulent] statement was made").

Smith & Wesson also argues that plaintiffs fail to plausibly allege any damage resulting from its purported fraud. A plaintiff generally "must suffer actual monetary loss to recover on a fraud claim." *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995). The Ninth Circuit has found the allegation that "browsing histories carry financial value" sufficient to plead Article III standing. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599–601 (9th Cir. 2020). Another court in this district found allegations "that there is a market for [users'] browsing data" and that defendant's "surreptitious collection of the data inhibited plaintiffs' ability to participate in that market" sufficient to allege an economic injury under California's unfair competition law. *Brown*, 685 F. Supp. 3d at 942. Here, plaintiffs allege that Smith & Wesson's alleged misconduct resulted in the "diminution of the value of their private and personally identifiable information and communications." At the pleading stage, plaintiffs' allegations are sufficient to allege fraud damages. *See Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 WL 2494368, at *13 (N.D. Cal. Aug. 29, 2025) (concluding plaintiffs had alleged damages for fraud based on allegations that data transmitted via cookies had financial value).

Accordingly, plaintiffs Thayer and D'Antonio adequately allege a claim for common law fraud, deceit, and misrepresentation. Smith & Wesson's motion to dismiss their claims is denied. Because plaintiff Cuevas Garcia's allegations do not satisfy Rule 9(b), however, the motion to dismiss her common law fraud, deceit, and misrepresentation claim is granted with leave to amend.

## V. Unjust Enrichment

Smith & Wesson argues that plaintiffs fail to state a claim for unjust enrichment because they do not adequately allege a benefit Smith & Wesson received and retained through its alleged conduct. While California does not have a standalone cause of action called "unjust enrichment," "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (cleaned up); *see also Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998 (2015). A defendant who unjustly enriches itself "may be required to make restitution." *Hartford Cas. Ins.*, 61 Cal. 4th at 998. "[T]he obligation arises when the enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained.'" *Id.* (quoting Restatement (3d), Restitution and Unjust Enrichment, § 1 cmt. B, p. 6).

Plaintiffs have alleged that Smith & Wesson misled them as to the effect of rejecting all cookies and that the resulting data collection was valuable because it enabled Smith & Wesson to better market its firearms, better target advertisements, and better profit from its understanding of users' behaviors. Because plaintiffs have thus adequately alleged a cause of action for unjust enrichment, Smith & Wesson's motion to dismiss that claim is denied.

## VI. Breach of Implied Contract

Smith & Wesson argues that plaintiffs' breach of implied contract claim should be dismissed because plaintiffs do not allege a contract containing mutual obligations with Smith & Wesson. All enforceable contracts require consideration, which means "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person other than such as he is at the time of consent lawfully bound to suffer." Cal. Civ. Code § 1605; *see Godun v.*

11

*JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025) ("Because contract formation is a question of state law, we first look to the appropriate state law."). Under California law, a contract must have sufficient consideration, which means, first, that a party must "confer (or agree to confer) a benefit or must suffer (or agree to suffer) prejudice," and, second, that the benefit or prejudice "must have induced the promisor's promise." *Steiner v. Thexton*, 48 Cal. 4th 411, 420–21 (2010).

Plaintiffs have not adequately alleged the existence of a contract because they have not pleaded that there was a bargained-for exchange. Plaintiffs argue that the benefit they conferred on Smith & Wesson was "surrender[ing] more data than they bargained for and that such data is valuable." But plaintiffs do not allege that they "bargained" for less tracking as opposed to having merely indicated their preference for less tracking. To the contrary, plaintiffs would have received the same access to Smith & Wesson's website whether or not they consented to additional cookies. While plaintiffs may have alleged that Smith & Wesson broke a promise, they have not alleged that the benefit plaintiffs conferred on Smith & Wesson induced Smith & Wesson's promise. Because plaintiffs have not adequately alleged that they formed a contract with Smith & Wesson, Smith & Wesson's motion to dismiss that claim is granted with leave to amend.[4]

## VII. Breach of the Implied Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing exists in every contract and requires "that no party to the contract will do anything that would deprive another party of the benefits of the contract" and functions to "protect[] the reasonable expectations of the contracting parties based on their mutual promises." *Digerati Holdings, LLC v. Young Money Ent., LLC*, 194 Cal. App. 4th 873, 885 (2011) (citing, among other cases, *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007), and *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373–74 (1992)). The implied covenant, however, applies only to existing contracts. *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349–50 (2000). Because plaintiffs did not form a contract with Smith & Wesson, plaintiffs cannot plead a breach of the implied covenant of good faith and fair

---

[4] The Court does not consider plaintiffs' promissory estoppel theory, which they raised for the first time in their opposition brief. *Tietsworth v. Sears*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.").

12

dealing. Smith & Wesson's motion to dismiss the breach of the implied covenant of good faith and fair dealing is therefore granted with leave to amend.

### VIII. Trespass to Chattels

Finally, Smith & Wesson argues that plaintiffs have failed to state a claim for trespass to chattels because they have not plausibly alleged damage to their property. Under California law, a defendant commits trespass to chattels when they "intentionally and without authorization interfere[] with plaintiff's possessory interest," and the trespass "proximately resulted in damage" that "impaired the condition, quality, or value of the personal property." *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *7 (N.D. Cal. Feb. 20, 2024) (citing California state decisions).

Plaintiffs have failed to plausibly allege the second requirement—that Smith & Wesson "impaired the condition, quality, or value of [their] personal property." Plaintiffs argue that the cookies impaired their devices by damaging their security and "by taking up storage space." In *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342 (2003), however, the California Supreme Court said that a trespass-to-chattels plaintiff must "demonstrate some measurable loss from the use of [their] computer system," observing as relevant whether a defendant caused "any physical or functional harm or disruption." *Id.* at 1357, 1360. Here, plaintiffs have not plausibly alleged physical, functional, or other "measurable loss" from the involuntary placement of cookies on their devices. Smith & Wesson's motion to dismiss the trespass-to-chattels claim is therefore granted with leave to amend.

### CONCLUSION

For the foregoing reasons, Smith & Wesson's motion to dismiss is denied in part and granted in part. Smith & Wesson's motion to dismiss plaintiffs' intrusion upon seclusion, invasion of privacy, common law fraud as to plaintiffs Thayer and D'Antonio, and unjust enrichment claims is denied. Smith & Wesson's motion to dismiss plaintiffs' CIPA wiretapping, CIPA pen register, common law fraud as to plaintiff Cuevas Garcia, breach of contract, breach of the implied covenant of good faith and fair dealing, and trespass to chattels claims is granted with leave to amend. Plaintiffs must file any amended complaint by March 17, 2026. Failure to file an amended complaint will result in the dismissal with prejudice of the claims dismissed in this order.

**IT IS SO ORDERED.**

Dated: February 17, 2026

_____
P. Casey Pitts
United States District Judge