Alexis M. Buese (SBN 259812)
Bradley Arant Boult Cummings LLP
1001 Walter Street, Suite 1000
Tampa, FL 33602-5809
Telephone: (813) 559-5511
Facsimile: (813) 229-5946
Email: abuese@bradley.com

Erin J. Illman (SBN 238262)
Bradley Arant Boult Cummings LLP
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Phone: (704) 338-6026
Email: eillman@bradley.com

*Attorneys for Defendant Smith & Wesson Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

TONY D'ANTONIO, THOMAS THAYER, and REINA CUEVAS GARCIA, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

SMITH & WESSON INC.,

Defendant.

Case No. 5:25-cv-03085-PCP

[*Assigned to Hon. J. Casey Pitts*]

**SMITH & WESSON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Hearing Date: May 21, 2026
Hearing Time: 10:00 A.M.
Courtroom: Courtroom 8

Action Filed: April 4, 2025
FAC Filed: March 17, 2026

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ..... ii

NOTICE OF MOTION ..... v

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. ISSUES TO BE DECIDED ..... 3

IV. LEGAL STANDARD ..... 3

V. ARGUMENT ..... 3

A. Plaintiff Thayer's Claims Are Time-Barred. ..... 3

B. The FAC Fails to Plausibly Allege a Violation of Section 631 of CIPA. ..... 6

1. Plaintiffs have not alleged a predicate violation of Section 631(a)'s second clause. ..... 6

2. Certain categories of Private Communications allegedly collected do not qualify as "contents" under Section 631(a). ..... 14

C. Plaintiffs' Pen Register (CIPA Section 638.51) Claim Still Fails. ..... 17

1. The New Plaintiff-Specific Paragraphs Add No Factual Allegations of Communications or Signaling Information. ..... 17

2. The New Generic Technical Paragraphs Add No Plaintiff-Specific Signaling Information. ..... 19

3. Plaintiffs Cannot Clear Even the Lower Bar That Proved Fatal in *MyFitnessPal*. ..... 20

D. The FAC fails to state a plausible or particularized claim for common law fraud, deceit, and/or misrepresentation as to Cuevas Garcia. ..... 21

VI. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson,*
355 F.3d 1179 (9th Cir. 2004)……………………….……………………………..….12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................3

*Bird v. Real Time Resols., Inc.*,
183 F. Supp. 3d 1058 (N.D. Cal. 2016)……………………………………………...21

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)…………………………………….…..3, 8, 9, 14, 16

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)………………..…………………………….....3

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)……………………………………………….9

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993)…………………………………………………………...5

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ..........................................................10, 12, 13

*Durnford v. MusclePharm Corp.*,
907 F.3d 595 (9th Cir. 2018)………………………………………...……...….4, 5

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ......................................................................14

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)……………………..…………………………12

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ......................................................................21

*Heiting v. Taro Pharms. USA, Inc.,*
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ..................................................................10, 14, 15

*Hinton v. Pac. Enters*.,

5 F.3d 391 (9th Cir. 1993)……………………………………………………………….5

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024)……………………………………………...6

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)……..………………………………………………………5

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)……………………………………………………………….3

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)…………………………………………………..…..…..6, 10

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ..........................................................................10

*Maiden v. Finander*,
2013 WL 5969840 (C.D. Cal. Nov. 6, 2013)…………………………………………...12

*Mikulsky v. Bloomingdale's*, *LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)………………………………………………………8

*Nev. Power Co. v. Monsanto Co.*,
955 F.2d 1304 (9th Cir. 1992)……………………………………………..………………3

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)……………………10, 13

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026)………………………………………………20

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)…………………………………………………………...3, 7, 12

*Stemmelin v. Matterport, Inc.*,
No. C 20-04168, 2020 WL 6544456 (N.D. Cal. Nov. 7, 2020)............................................21

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ............................................................10, 11, 14

*Tapia Carmona v. Cnty. of San Mateo,*
2019 WL 4345973 (N.D. Cal. Sept. 12, 2019)……………………………………………..5

*Tavernetti v. Superior Court*,
22 Cal. 3d 187 (1978) ..........................................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)…………………………………………………………………...3

*Torres v. Prudential Fin., Inc.*,
No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....13

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023)....10, 11, 12

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....21

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010)....4

*Williams v. DDR Media, LLC*,
No. 22-CV-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ....13

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....6

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....7, 8, 15

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)....7, 14, 15

**Statutes**

Cal. Civ. Proc. Code § 335.1....3

Civ. Proc. Code § 340....3

Cal. Penal Code § 631(a) .... *passim*

Cal. Penal Code § 638.50(b) ....15

Cal. Penal Code § 638.51(a) .... *passim*

California Invasion of Privacy Act .... *passim*

Federal Wiretap Act....14

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....3

# NOTICE OF MOTION

**TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 21, 2026, at 10:00 a.m., or such other date and time as the Court prefers, before the Honorable J. Casey Pitts, San Jose Courthouse, Courtroom 8, 4th Floor, 280 South First Street, San Jose, CA 95113, Defendant Smith & Wesson Inc. ("S&W") will, and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for entry of an order dismissing Plaintiffs Tony D'Antonio, Thomas Thayer, and Reina Cuevas Garcia's First Amended Class Action Complaint (Doc. 51) (hereafter, "FAC") .

S&W respectfully submits this Motion pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that: (1) Plaintiff Thayer's claims arising from his 2019 website visit and unspecified intervening visits are time-barred on the face of the FAC; (2) Plaintiffs fail to allege sufficient facts to plead a violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631(a); (3) Plaintiffs fail to allege sufficient facts to plead a violation of CIPA, California Penal Code § 638.51; and (4) the FAC fails to state a plausible or particularized claim for common law fraud, deceit, and/or misrepresentation as to Cuevas Garcia.

This Motion is based on this Notice, the incorporated Memorandum of Points and Authorities, Request for Judicial Notice, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

Dated: March 31, 2026

Respectfully Submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

*/s/ Alexis M. Buese*

Alexis M. Buese (SBN 259812)
abuese@bradley.com
1001 Walter Street, Suite 1000
Tampa, FL 33602-5809
Telephone: (813) 559-5511/Facsimile: (813) 229-5946

Erin J. Illman (SBN 238262)
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, NC 28202

Phone: (704) 338-6026
Email: eillman@bradley.com
*Attorney for Defendant Smith & Wesson Inc.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Plaintiffs Tony D'Antonio, Thomas Thayer, and Reina Cuevas Garcia ("Plaintiffs") amended their complaint (the "FAC") following Smith & Wesson's ("S&W") motion to dismiss. In partially granting S&W's initial motion to dismiss, this Court dismissed Plaintiffs' CIPA wiretapping and pen register claims because Plaintiffs failed to allege that they personally engaged in any communications with S&W's website (the "Website") whose contents could have been intercepted, and failed to identify the specific dialing, routing, addressing, or signaling information for their outgoing communications that was tracked. [Dkt. No. 48] (the "Order") at 12:4-18, 9:1-5. The Court also dismissed Plaintiff Cuevas Garcia's common law fraud claims for failure to plead the "when" of the alleged misconduct with the particularity Rule 9(b) requires. *Id.* at 10:7-12. Plaintiffs fail to cure these defects.

Despite having the benefit of this Court's Order identifying precisely what was missing, the FAC still contains no facts explaining how any named Plaintiff's specific communications were intercepted in transit, what specific dialing, routing, addressing, or signaling information from any named Plaintiff's outgoing communications was tracked, or when specifically Cuevas Garcia encountered the alleged misrepresentation. Instead, the FAC recycles the same generic descriptions of how cookie and tracking technologies function across the internet generally, dresses them in new technical vocabulary, and then incorporates those generic allegations by wholesale cross-reference into each Plaintiff's individual sections—adding visit context without adding communicative content. This is precisely the pleading device the Court found insufficient in its Order, and it remains insufficient now.

The FAC's new allegations also give rise to an independent basis for dismissal that did not exist in the original complaint. By adding specific factual allegations about Thayer's website visits, the FAC now affirmatively pleads that Thayer first visited S&W's Website "[i]n 2019"—more than five years before this action was filed. FAC ¶ 82. These newly added allegations establish on the face of the complaint that Thayer's claims arising from that visit, and from his unspecified intervening visits described only as occurring "over the next few years," fall well outside the

applicable statutes of limitations. For all the reasons discussed below, S&W respectfully requests that the Court dismiss without leave to amend.

## II. FACTUAL BACKGROUND[1]

The basic facts are virtually unchanged from Plaintiffs' initial complaint. S&W operates a publicly accessible website providing information about its products. FAC ¶ 1. The Website uses cookies and similar technologies to support functionality and analyze performance. *Id.* When visiting the website, users are presented with a cookie banner disclosing the use of cookies and providing preference options. *Id.* Plaintiffs allege they visited S&W's website, viewed the cookie banner, and selected "Reject All" before continuing to browse. *Id.*

The FAC alleges that, notwithstanding these selections, certain cookies and tracking technologies remained active and allowed third-party service providers to receive information relating to users' interactions with the website. *Id.* ¶ 3. Plaintiffs broadly assert that such information may include categories such as browsing activity, device information, and other user data. *Id.* However, beyond these labels, the FAC provides no concrete factual allegations regarding what specific communications were intercepted, what data was collected from any Plaintiff, or how any such interception occurred. Instead, Plaintiffs rely on sweeping and hypothetical categories of information—such as "browsing history," "user input data," and "geolocation data"—without alleging that any such information was actually captured from them. *See e.g. id.* ¶¶ 20, 31.

Nor does the FAC identify any specific communication transmitted by Plaintiffs that was intercepted in transit, any particular third party that allegedly intercepted such a communication, or any mechanism by which such interception occurred. Critically, paragraphs 75-79 (D'Antonio), 84-88 (Thayer), and 92-96 (Cuevas Garcia) of the FAC—the sections describing each plaintiff's cookie consent experience—say nothing whatsoever about what specific communications those plaintiffs transmitted after clicking "Reject All." They describe the banner interaction and then

---

[1] As this Court already is familiar with the factual background, S&W provides an abbreviated version of the facts, focusing on Plaintiffs' factual interactions with the website that this Court previously found deficient.

jump directly to the conclusion that cookies were transmitted, skipping entirely over what plaintiff-specific content was allegedly intercepted. Instead, Plaintiffs rely on generalized descriptions of how cookies and third-party tools may function in the abstract. *See id.* ¶¶ 58-64.

## III. ISSUES TO BE DECIDED

- Have Plaintiffs satisfied the Rule 12(b)(6) standard for each of their claims?

## IV. LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "more than [mere] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Furthermore, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## V. ARGUMENT

### A. Plaintiff Thayer's Claims Are Time-Barred.

Because Plaintiffs bring state law claims, California's statutes of limitations apply. *See Nev. Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306 (9th Cir. 1992). The applicable statutes of limitations are one year for the CIPA wiretapping and pen register claims, *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) (Koh, J); Civ. Proc. Code § 340, and two years for the invasion of privacy and intrusion upon seclusion claims, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) (Koh, J.) (citing Cal. Civ. Proc. Code § 335.1) and three years for the common law fraud, deceit, and/or misrepresentation. (Cal. Civ. Proc. Code § 338(d)).

S&W recognizes that a court may dismiss a claim as untimely at the pleading stage only when "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). In the initial complaint, Thayer alleged only that he visited the Website in or around November 2024: a date that fell within all applicable limitations periods and therefore could not support a limitations defense on the face of the pleading. This time, however, Thayer has pled himself out of his claims by "admit[ting] all the ingredients of an impenetrable [statute of limitations] defense." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018).

The FAC now alleges that Thayer first visited S&W's website "[i]n 2019" in connection with his search for a new firearm." FAC ¶ 82. He then alleges he "returned to the Website several times over the next few years to search for accessories, including holsters, cleaning equipment, branded gear such as eye and ear protection, cleaning mats, and tee-shirts." *Id.* Plaintiffs filed this action on April 4, 2025. Any claims arising from Thayer's 2019 visit are therefore plainly time-barred: the one-year CIPA limitations period expired no later than 2020; the two-year invasion of privacy and intrusion upon seclusion limitations period expired no later than 2021; and the three-year fraud limitations period expired no later than 2022.

Thayer's unspecified intervening visits described only as occurring "over the next few years" after 2019, do not save his claims. FAC ¶ 82. Those visits are not tied to any specific date or year, meaning they could have occurred anywhere between 2020 and 2024. To the extent any of those visits occurred more than one year before the April 2025 filing, which the FAC's own vague "next few years" framing makes entirely plausible, any CIPA claims arising from those visits would likewise be time-barred. And because the FAC does not allege that any of these intervening visits gave rise to distinct misconduct separate from the 2019 visit, it describes them as a continuation of the same pattern of browsing for accessories, FAC ¶ 82, it does not establish a new limitations period for any of Thayer's claims arising from that period. The FAC treats these visits as discrete browsing occasions rather than as a continuing course of conduct, (FAC ¶¶ 82-83) meaning the statute of limitations must be applied separately to each alleged visit rather than running from the most recent one.

Further, the other visits also do not meet the heightened pleading standard required for the common law fraud claims. The unspecified intervening visits, described only as occurring "over the next few years" without any identification of a specific date, month, or even year, fail to satisfy Rule 9(b)'s requirement to plead the "when" of the alleged misconduct with particularity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Just as this Court found that Cuevas Garcia's allegation of visits "in or around 2024" was too vague to provide S&W with adequate notice of what specific representations were made on the Website or how cookies were configured at the time of her visits, Order at 10:7-12, Thayer's allegation of visits occurring at some unspecified point over a multi-year period is at least as deficient—if not more so.

S&W does not presently contend that Thayer's November 2024 visit is time-barred. However, the 2024 visit provides Thayer no refuge from dismissal for a different reason. As discussed in more detail below, every factual allegation in the FAC describing Thayer's purported actual interactions with the Website, navigating product specification pages, reviewing firearms information, and searching for accessories, is expressly tied to his 2019 visit and his unspecified intervening visits. FAC ¶ 82. By contrast, the FAC's description of Thayer's November 2024 visit is limited to a single allegation: that he "was particularly interested in the Smith & Wesson M&P Shield 2.0 and navigated to the web pages displaying information for that firearm multiple times over several visits." FAC ¶ 83. It describes only passive navigation to product pages, the same deficiency that requires dismissal of all three Plaintiffs' CIPA claims.

Nor does the FAC allege any basis for tolling. To survive a motion to dismiss on limitations grounds, Thayer must plead "facts showing the potential applicability of the equitable tolling doctrine." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993); *see also Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to tolling falls upon the plaintiff."). The FAC alleges no facts suggesting delayed discovery, fraudulent concealment, or any other basis for tolling. Because Thayer has not affirmatively pled the facts establishing this defense on amendment, his claims arising from the 2019 visit and unspecified intervening visits should be dismissed without leave to amend. *See Durnford*, 907 F.3d at 604 n.8; *Tapia Carmona v. Cnty. of San Mateo*, 2019 WL 4345973, at *9 (N.D. Cal. Sept. 12,

2019) ("General, conclusory allegations need not be credited…when they are belied by more specific allegations of the complaint.").

**B. The FAC Fails to Plausibly Allege a Violation of Section 631 of CIPA.**

Section 631(a) of CIPA prohibits "three distinct and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Sup. Ct.*, 22 Cal. 3d 187, 192 (1978). This section also prohibits "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned [in the first three clauses]." Cal. Penal Code § 631(a). To impose liability under an aiding-and-abetting theory, Plaintiffs must first plausibly allege that a third party committed a predicate violation of one of the first three clauses. *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) (holding aiding-and-abetting defendant's liability is based entirely on whether a third party violated Section 631(a) in some way). Plaintiffs fail to do so here, and their Section 631(a) claim again fails as a matter of law.

**1. Plaintiffs have not alleged a predicate violation of Section 631(a)'s second clause.**

The second clause of Section 631(a) is violated only where a third party "***reads***, or attempts to read, or to learn the ***contents*** or meaning of any message, report, or communication while the same is in ***transit***." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558 at *4 (S.D. Cal. Sept. 30, 2024) (emph. added); *see Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (Lin, J.) (wiretapping concerns "the unauthorized *interception* of communications, not any subsequent storage and/or use"). This Court previously rejected Plaintiffs' Section 631(a) claim because it found that under Clause 2 "plaintiffs do not specifically allege that *their* communications were intercepted." Order at 7. Plaintiffs' allegations remain deficient on this point.

*First,* Plaintiffs fail again to plausibly allege that they transmitted any communications—much less communications with ***contents*** capable of interception. *Brodsky v. Apple Inc.*, 445 F.

Supp. 3d 110, 127 (N.D. Cal. 2020). (Section 631 prohibits only the "unauthorized access of the contents of any communication"). Under CIPA, the "contents" of a communication are limited to "the intended message conveyed by the communication and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Because Plaintiffs failed to allege even the most basic facts about their own interactions with S&W's website, the Court dismissed their Section 631(a) claims while granting leave to amend and provided clear guidance on the specific facts required to survive a pleading challenge. Order at 7:8-16. Plaintiffs have clearly ignored those instructions, and just like their original complaint, the FAC lacks key facts about Plaintiffs' *actual interactions* with S&W's Website. *See* FAC ¶¶ 74, 79, 82, 88, 91, 96 (amended paragraphs in Plaintiffs' Experiences section of the FAC). None of the Plaintiffs allege they entered any user-input information into S&W's Website. D'Antonio alleges that on or around February 25, 2025 he "navigated to the 'Gear' link on the Website, selected filters to bring up t-shirts, and browsed different options." FAC ¶ 74. These allegations do not come close to pleading that D'Antonio interacted with the Website in a manner that involved communications whose contents could plausibly have been intercepted. D'Antonio does not identify what specific terms he entered into the search bar, what specific filters he selected, or what specific content he communicated through any interaction with the Website. Undefined filter selections, product browsing, and an unspecified search bar use do not convey an "intended message" and therefore fall outside Section 631(a). *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (finding "keystrokes, mouse clicks, pages viewed, and shipping and billing information... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" are not "contents" under Section 631(a)); *Sprewell*, 266 F.3d at 988 ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Moreover, D'Antonio expressly alleges he "ultimately did not make a purchase," FAC ¶ 74, meaning no transactional content of any kind was communicated through the Website during his visit.

Thayer's allegations fare no better. As discussed in the statute of limitations section above, Thayer's 2019 visit—during which he "focused his search on the Smith & Wesson 9mm M&P Shield" and "navigated to pages displaying the specifications of the firearm as well as reviews," FAC ¶ 82—falls well outside all applicable limitation periods. That leaves only Thayer's November 2024 visit as a potentially timely basis for his CIPA claims. That visit is entirely devoid of any allegation that Thayer transmitted any communication whose contents could have been intercepted. The FAC's description of Thayer's November 2024 visit is limited to a single allegation: that he "was particularly interested in the Smith & Wesson M&P Shield 2.0 and navigated to the web pages displaying information for that firearm multiple times over several visits." FAC ¶ 83. Thayer does not allege that he entered any content into any field, used a search bar, submitted any form data, or engaged in any interaction during the November 2024 visit that could plausibly constitute a communication with interceptable content. Navigation to product specification pages is passive consumption of website content, not a communication whose substance or meaning could be intercepted. *See Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021). Thayer's amended allegations thus leave him in an impossible position: the visits that contain factual allegations of website interaction are time-barred, and the visit that is timely contains no allegation of any communication at all.

Cuevas Garcia's allegations are equally deficient. Cuevas Garcia alleges that between June and August 2024 she visited the Website multiple times and "used the Website's search bar to search for different firearms, calibers of firearms, and accessories." FAC ¶ 91. While Cuevas Garcia's allegation of search bar use comes closest among the three Plaintiffs to alleging a communication with some content, it still falls short of what Section 631(a) requires. Cuevas Garcia does not identify what specific search terms she entered, what specific firearms or calibers she searched for, or what specific content was transmitted through the search bar. A bare allegation that a plaintiff used a search bar to search for unspecified products within a general category does not plausibly allege a communication whose specific contents could have been intercepted. *See Mikulsky v. Bloomingdale's*, *LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (dismissing Section

631(a) claims where plaintiffs alleged only that their "interactions" were intercepted without identifying the contents of any communication).

Critically, none of the three Plaintiffs connect their described interactions to any specific cookies, any specific transmission, or any specific third party that allegedly received their communications[2]. Instead, each plaintiff-specific section concludes with a wholesale cross-reference back to the FAC's generic technical allegations at paragraphs 35-68—descriptions of how Google, Twitter, Listrak, and Lightbox technologies function across the internet generally. See FAC ¶¶ 79, 88, 96 (each incorporating by reference "¶¶ 3, 20, 31, 35–68"). This pleading device cannot substitute for the plaintiff-specific factual allegations the Court required. The FAC describes what these technologies are theoretically capable of doing to "Website users" generically and then asserts by conclusion that those things happened to each named Plaintiff—without any factual allegation connecting the generic technology descriptions to any Plaintiff's specific session, device, or transmitted data. These undefined interactions and conclusory cross-references do not constitute the "contents" of any communication and therefore do nothing to cure the deficiencies the Court identified in its Order.

*Second,* even if Plaintiffs have alleged communications including content with S&W (they have not), they still fail to allege any facts showing that those communications were intercepted while in transit. The Court did not reach this issue in its Order as it found the "first issue is dispositive." Order at 7:8. This argument remains fully available and is independently sufficient to require dismissal. The second prohibition of Section 631(a) bars eavesdroppers from "read[ing]" or "learn[ing]" the contents of communications "'while' the communication is 'in transit . . . or is

[2] Public records reflect that D'Antonio has filed multiple similar lawsuits against unrelated entities—including CNN and CoStar Group—asserting materially similar allegations, including under CIPA. *See, e.g., D'Antonio v. Cable News Network, Inc. (CNN)*, Case No. 1:24-CV-03132 (Southern District of New York); *Dywanna Drummer et al. v. CoStar Group, Inc.*, Case No. 5:25-CV-01047 (Central District of California). Courts may consider such patterns in assessing plausibility where allegations appear generalized or untethered to a plaintiff's specific experience. *See Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023) (noting that plaintiff and her counsel were "serial litigants bringing numerous 'cookie cutter' lawsuits under CIPA" and relying on "virtually identical" allegations across cases). This pattern further underscores that the FAC relies on generalized, investigator-driven allegations rather than facts tied to D'Antonio's own experience.

being sent from, or received' within California." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1000 (N.D. Cal. 2024) (*quoting* Cal. Penal Code § 631(a)). The Ninth Circuit has made clear that an interception requires acquisition of a communication during its transmission—that is, to "stop, seize, or interrupt in progress or course before arrival." *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added). The word "while" naturally "implies the interception must occur contemporaneous with the sending or receipt of the message." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). Accordingly, to state a plausible claim under this clause, a complaint must "allege specific facts as to how or when the interception takes place," providing "sufficient detail to support an inference of in-transit interception." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109-10 (C.D. Cal. 2023); *see also Heiting v. Taro Pharms. USA, Inc*., 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024) ("To plausibly allege that Plaintiff's communications were intercepted while in transit, factual allegations regarding the method, or nature, of interception are required."). Where a complaint fails to allege such specific facts, courts routinely dismiss. *See Licea*, 659 F. Supp. 3d at 1109-11; *Swarts v. Home Depot, Inc*., 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (dismissing Section 631(a) claim where complaint "does not indicate when the interception occurs").

Merely inserting words such as "real time" and "intercept" does not satisfy this requirement. *See Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [the defendant] is intercepting their data in transit."); *Cody*, 718 F. Supp. 3d at 1001 ("conclusory allegations restating the pleading requirement of real-time interception fail to provide specific factual allegations"). Without a specific explanation of how the third parties' interface with the defendant's platform, the complaint is "entirely speculative." *Valenzuela*, 674 F. Supp. 3d at 758.

The FAC's in-transit theory is presented entirely at this impermissibly generic level. Paragraphs 57 through 64—the FAC's entire in-transit argument—purport to describe how third parties intercept communications while in transit, but every allegation in those paragraphs is framed in the abstract, describing how third-party data processing systems operate generally across

the internet, not what occurred during any Plaintiff's visit to smith-wesson.com on any specific date. Paragraph 57 asserts, on "information and belief," that third parties "intercept user communications while those communications are in transit." FAC ¶ 57. This is a bare legal conclusion. It does not identify which third party intercepted which communication from which Plaintiff during which visit, or how any such interception occurred contemporaneously with transmission.

The FAC relies heavily on Chrome Developer Tools screenshots and related network captures to support its theory that S&W's Website transmitted user data to third parties despite a user's selection of "Reject All." *See* FAC ¶¶ 29-30, 39. But those materials do not plausibly allege that any interception occurred while any communication was in transit. The FAC asserts, in conclusory fashion, that the depicted activity occurred "after the user rejected all cookies," FAC ¶ 30, but the screenshots themselves contain no timestamps, sequencing information, or indication of when the "Reject All" selection occurred relative to the logged requests. Nor do they identify which requests—if any—were triggered after a user's rejection of cookies as opposed to before, or which requests coincided with any communicative act by any Plaintiff. A tool that, by design, captures all page-load activity regardless of consent state cannot establish that any request was contemporaneous with any communication in the manner *Konop* and *Valenzuela* require. The FAC thus assumes the very sequencing it must plead—that the depicted network activity occurred while a communication was in transit following a "Reject All" selection. An unsupported inference of this kind cannot substitute for the specific factual allegations the in-transit element demands. *See Swarts*, 689 F. Supp. 3d at 746.

The FAC's in-transit theory fails at a second, independent level as well: the screenshots do not establish that any identified communication was intercepted, as opposed to routine network requests being generated in the ordinary course of page loading.

The screenshots do not distinguish between first- and third-party cookies, do not identify the substance of any transmitted information, and do not show that any particular request involved the contemporaneous interception of a communication rather than standard browser behavior. At most, they reflect that the Website—like "most internet websites," FAC ¶ 2, generates network

requests during ordinary operation. Critically, these deficiencies are not merely gaps in pleading, they affirmatively undermine the FAC's conclusory "information and belief" allegations that protected communications were intercepted. Where a complaint's own exhibits and allegations fail to support, and instead cast doubt on, the inferences plaintiffs ask the Court to draw, the Court need not accept those conclusory allegations as true. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim because "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs in real-time."); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001) (court need not accept allegations contradicted by the complaint's own exhibits); *Maiden v. Finander*, 2013 WL 5969840 (C.D. Cal. Nov. 6, 2013) (court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations); *see also Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss").

Paragraphs 58 through 61 describe four generic data processing steps—transformation, deduplication, validation, and real-time analytics—attributed to unnamed third parties, without alleging any such step occurred with respect to Plaintiffs' communications. *See* FAC ¶¶ 58–61.

Paragraphs 62 and 63 illustrate the FAC's impermissible reliance on industry-level abstraction. Rather than allege facts specific to Google, X Corp., Listrak, or Digioh as applied to S&W's Website, these paragraphs describe generic stream processing platforms—"Apache Flink, Kafka, and Amazon Kinesis"—as examples of technology that processes data in real time. FAC ¶ 62. The FAC does not allege that any of these platforms are used by any of the identified third parties in connection with S&W's Website, or that any such platform processed any communication from any Plaintiff. This is precisely the kind of vague allegation that courts have found insufficient. *See Cody*, 718 F. Supp. 3d at 1001 (dismissing where complaint failed to "explain how the software works or how the interception occurs"); *Valenzuela*, 674 F. Supp. 3d at 758 (complaint alleging only that code "allows the third party to secretly intercept in real time" was "overly vague" and failed to provide "detail as to how the interception occurs"). Paragraph

64's conclusion that the third parties "function as active interceptors that contemporaneously read and process the contents of user communications,", is no more than a legal conclusion dressed in technical language—exactly what *Rodriguez* and *Cody* foreclose.

The plaintiff-specific sections of the FAC do nothing to cure these deficiencies. Paragraphs 79, 88, and 96 each assert in identical, formulaic language that S&W "permitted the Third Parties to intercept, read, process, track, and collect" each Plaintiff's "Private Communications" "in real time." FAC ¶¶ 79, 88, 96. Each paragraph then incorporates by wholesale cross-reference the generic technical allegations at paragraphs 3, 20, 31, and 35 through 68. *Id*. This pleading device cannot substitute for the specific factual allegations the in-transit element requires. The FAC offers no explanation of how D'Antonio's February 2025 browsing of t-shirts, how Thayer's November 2024 navigation of M&P Shield product pages, or how Garcia's mid-2024 search bar activity was seized during transmission rather than collected after the fact.

Finally, even if Plaintiffs had alleged that the identified third parties collected data in real time that would still be insufficient. Liability under the second clause of Section 631(a) "requires some effort at understanding the substantive meaning of the message, report or communication." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (*quoting Williams v. DDR Media, LLC*, 2024 WL 4859078, at *5 (N.D. Cal. Nov. 20, 2024)). And as one court explained, "it would stretch CIPA's statutory language too far to interpret 'while . . . in transit' to encompass any hypothetical future attempt to read or understand the meaning of a communication." *Torres*, 2025 WL 1135088, at *6. The FAC contains no allegation that Google, Twitter, Listrak, or Digioh attempted to understand the substantive meaning of any Plaintiff's communication while it was traveling over the wire—not D'Antonio's unspecified t-shirt search terms, not Thayer's product specification page views, and not Garcia's firearm and accessory search queries. Because the FAC fails on this independent dimension as well, Plaintiffs have failed to state a claim under the second clause of Section 631(a).

*Third*, the final potential predicate violation is "us[ing] or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information" obtained in violation of the first or second clauses. Cal. Penal Code § 631(a). Because the FAC does not state a plausible

claim that information was obtained in violation of the first or second clauses, it necessarily cannot state a plausible claim for violation of this provision. *See Swarts*, 689 F. Supp. 3d at 744 (citing *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020)).

Indeed, Plaintiffs' theory rests on the same deficient allegations discussed above—namely, that S&W allegedly caused cookies to be placed on users' devices and that third parties purportedly received user data and "tracked" user activity. *See* FAC ¶¶ 3, 20, 28. But because the FAC fails to plausibly allege any underlying interception of a communication in transit, there can be no derivative liability for the use of such information. Accordingly, Plaintiffs fail to state a claim under the third clause of Section 631(a).

**2. Certain categories of Private Communications allegedly collected do not qualify as "contents" under Section 631(a).**

Even if Plaintiffs had adequately alleged personal communications—which they have not—the majority of the categories they identify as "Private Communications" constitute record information rather than contents as a matter of law. A claim under Section 631 must be premised on the interception of the contents of a communication rather than record information about it. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). The distinction mirrors the Federal Wiretap Act, which defines "contents" as including "the substance, purport, or meaning of th[e] communication." *Id.* (quoting 18 U.S.C. § 2510). "Record information," on the other hand, "includes the name, address, and subscriber number or identity of a subscriber or customer." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (quoting 18 U.S.C. § 2702(c)(2)). "Record information" also includes IP addresses and geolocation. *See Heiting*, 728 F. Supp. 3d at 1123–24.

The FAC's own allegations make clear that most of what Plaintiffs allege was intercepted falls squarely into the category of record information rather than contents. The FAC defines "Private Communications" to include fourteen categories of data, enumerated at paragraph 20: browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session

information, user identifiers, and geolocation data. FAC ¶ 20. Of these, the following are plainly record information that cannot form the basis of a Section 631(a) claim as a matter of law:

"Device information"—which the FAC defines as "[d]etails about the Website user's device, such as the type of device (mobile, tablet, desktop), operating system, and browser type," FAC ¶ 20—is precisely the kind of characteristic information about the communication rather than its substance or meaning. It describes the instrument used to communicate, not what was communicated. Courts have consistently treated device and browser information as record information rather than contents. *See Yoon*, 549 F. Supp. at 1082 (finding "browser type" and "operating system" are not contents under Section 631(a)).

"Session information"—defined as "[d]etails about the user's current Website browsing session, including the exact date and time of the user's session, the session duration and actions taken on the Website," FAC ¶ 20—describes timing and characteristics of the communication, not its substance or meaning. Timing and duration information is paradigmatic record information. *See Zynga*, 750 F.3d at 1106.

"User identifiers"—defined as "[a] unique ID that is used to recognize and track a specific Website user across different websites over time," FAC ¶ 20—are subscriber identity information, which falls squarely within the *Zynga* definition of record information. *See* 750 F.3d at 1106. The FAC's own technical exhibits confirm this: the gacid value shown at paragraph 39 is described as "a unique identifier for the user's browser and device," FAC ¶ 40—an identifier, ***not*** a communication with substance or meaning.

"Geolocation data"—defined as "[g]eneral location information based on the Website user's IP address or GPS data," FAC ¶ 20—is expressly identified as record information in *Heiting*. 728 F. Supp. 3d at 1123-24. The FAC further admits at paragraph 46 that the IP address transmitted is "dialing, routing, addressing, or signaling information"—the statutory definition of pen register data under Section 638.50(b), not contents under Section 631(a).

"Referring URLs"—"[i]nformation about the website that referred the user to [S&W's] Website, FAC ¶ 20—describes a characteristic of how the user arrived at the Website, not the substance of any communication the user made while there. Referring URL information identifies

the routing path of the user's navigation, which is addressing and routing information rather than communicative content.

"Visit history"—defined as "[i]nformation about the frequency and total number of visits to the Website," FAC ¶ 20—describes a pattern of access rather than any substantive communication. The frequency and number of visits to a website conveys no "substance, purport, or meaning" of any communication and is properly characterized as record information. *See Brodsky*, 445 F. Supp. 3d at 127.

The FAC's technical exhibits reinforce this conclusion. The specific data shown in the DoubleClick request at paragraph 39— including tid, dma, gcd, npa, pscdl, aip, fledge, frm, and z parameters alongside the gacid identifier—are advertising configuration and device-level parameters, not the substance or meaning of any communication. The npa parameter, which the FAC highlights at paragraph 41 as evidence of wrongdoing, indicates only whether personalized ads are enabled—a configuration *setting*, not a communication with contents. The user-agent string shown at paragraph 44, which the FAC acknowledges "corresponds to the device and browser that the user has used to access the Website," FAC ¶ 45, is device characteristic information—record information by definition. And the IDE cookie shown at paragraph 43, which Google describes as an advertising identifier used to personalize ads, is a user identifier—again, record information under *Zynga* rather than contents under Section 631(a).

Stripping away these record information categories leaves only a narrow subset of the FAC's alleged "Private Communications" that could even potentially constitute contents, principally "user input data" and, arguably, certain "browsing history" and "shopping behavior" allegations to the extent they reflect specific search queries or product selections revealing what a user was seeking to communicate. But as discussed above, none of the three Plaintiffs have adequately alleged that *they* transmitted any such user input data during their visits. D'Antonio does not identify what he typed into the search bar; Thayer alleges only navigation to product pages with no user input; and Cuevas Garcia describes only the general category of her searches without identifying specific terms. The FAC thus cannot sustain a Section 631(a) claim even as to

the narrow category of data that could theoretically constitute contents, because none of the named Plaintiffs have alleged that they transmitted any such data in a form capable of interception.

Because the FAC's Section 631(a) claim rests overwhelmingly on the alleged collection of record information rather than the interception of communicative contents, and because the narrow residual category of potentially qualifying content is unpled as to each named Plaintiff, the claim should be dismissed in its entirety.

### C. Plaintiffs' Pen Register (CIPA Section 638.51) Claim Still Fails.

Section 638.51 prohibits any person from "install[ing] or us[ing] a pen register . . . without first obtaining a court order." Cal. Penal Code § 638.51(a). Here, Plaintiffs allege that the "cookies and the corresponding software code" installed on S&W's website are pen registers. FAC ¶ 153. When it dismissed this claim, the Court made clear that should Plaintiffs choose to amend their pen register claim, they must "identify not only their communications with Smith & Wesson's website but also the ***specific 'dialing, routing, addressing, or signaling information'*** for outgoing communications that were tracked." Order at 9:6-9 (emph. added). Plaintiffs fail to do so.

#### 1. The New Plaintiff-Specific Paragraphs Add No Factual Allegations of Communications or Signaling Information.

The FAC's new plaintiff-specific allegations (paragraphs 74, 79, 82, 83, 88, 91, and 96) do not identify any specific communication transmitted by any Plaintiff or any specific signaling information derived from any such communication. Paragraph 74 adds that D'Antonio "navigated to the 'Gear' link," "selected filters to bring up t-shirts," "browsed different options," "click[ed] on an option to review further," and "used the search bar to search for t-shirts and other merchandise." FAC ¶ 74. These additions describe only the general nature of D'Antonio's browsing activity—they do not identify what specific terms he entered into the search bar, what specific filters he selected, or what specific content he communicated through any interaction with the Website. The FAC does not allege what, if any, dialing, routing, addressing, or signaling information accompanied any such transmission. Undefined filter selections, product page clicks, and an unspecified search bar use do not constitute the identification of communications or signaling information the Court's Order required.

Paragraph 79 lists categories by name: "user agent information, IP address, specific cookie identifiers" but this is not the same as identifying the specific dialing, routing, addressing, or signaling information for D'Antonio's outgoing communications that was actually tracked. The assertion that D'Antonio's "search requests and browsing activity" were intercepted does not identify what those search requests contained or what signaling information accompanied them. This is a conclusory label, not the specific factual identification the Court's Order required.

Paragraphs 82 and 83 add that Thayer visited the Website in or around November 2024 to research the M&P Shield 2.0 and "navigated to the web pages displaying information for that firearm multiple times over several visits." FAC ¶¶ 82-83. They describe where Thayer went on the Website—not what he transmitted. No user input, no search terms, no form data, and no specific signaling information are identified. Navigation to product specification pages and repeated visits to the same page describe passive consumption of website content, not outgoing communications with associated signaling information.

Paragraph 88, mirrors paragraph 79, asserting interception of Thayer's "search requests and browsing activity expressing his interest in certain firearms and accessories, and his user agent information, IP address, specific cookie identifiers, and other associated metadata and signaling, routing, and addressing information." FAC ¶ 88. It then incorporates by cross-reference the same generic technical paragraphs. *Id.* For the same reasons as paragraph 79, this allegation lists categories rather than identifying specific signaling information and asserts interception by conclusion rather than by fact.

Paragraph 91 adds that Cuevos Garcia visited the Website between June and August 2024 and "used the Website's search bar to search for different firearms, calibers of firearms, and accessories." FAC ¶ 91. This is the closest any Plaintiff comes to alleging a communication with some content, but it still identifies only the general category of search activity—not the specific terms entered, not the specific pages navigated to as a result, and not the specific signaling information transmitted from Garcia's device. A bare allegation that a plaintiff searched for unspecified products within a general category does not identify the outgoing communication or the signaling information the Court required. Likewise, Paragraph 96, mirrors paragraphs 79 and

88, asserting interception of her "search requests and browsing activity expressing her interest in certain firearms and accessories, and her user agent information, IP address, specific cookie identifiers, and other associated metadata and signaling, routing, and addressing information." FAC ¶ 96. It then incorporates by cross-reference the same generic technical paragraphs. *Id.* This adds nothing beyond the same categorical labels that the Court already found insufficient.

**2. The New Generic Technical Paragraphs Add No Plaintiff-Specific Signaling Information.**

Paragraphs 65 through 68 are the FAC's new pen register-specific technical allegations, and they fare no better. Paragraph 65 describes "TCP and/or UDP port numbers associated with outgoing communications initiated by Plaintiffs' and Class Members' browsers and devices." FAC ¶ 65. But it does not identify what port numbers were transmitted from D'Antonio's device in February 2025, Thayer's device in November 2024, or Garcia's device between June and August 2024, or which third party recorded them. Paragraph 66 describes "TLS handshake and negotiation metadata used to establish HTTPS sessions" as signaling information. FAC ¶ 66. But it does not allege that any such metadata from any named Plaintiff's session was recorded—it describes the category generically and asserts by conclusion that it falls within the pen register definition. Paragraph 67 describes HTTP "Host" header and connection-management headers as "digital 'dialing' information." FAC ¶ 67. But again, it does not allege that these headers were recorded from any named Plaintiff's outgoing communications during any specific visit. Paragraph 68 describes "destination IP addresses, port identifiers ... connection initiation and termination timestamps, connection duration, and identifiers such as the protocol used." FAC ¶ 68. Like the preceding paragraphs, it describes a category of network-level metadata in the abstract without connecting that metadata to any Plaintiff's specific session or outgoing communication.

These paragraphs describe how internet communications work generally, applicable to every HTTPS connection made by any device to any website anywhere. They do not tell the Court what specific signaling information from any named Plaintiff's specific visit to smith-wesson.com was recorded by any identified third party. That is the identification the Court's Order required, and paragraphs 65 through 68 do not provide it. Adding technical vocabulary to describe categories

of signaling information does not satisfy the requirement to identify the specific signaling information for Plaintiffs' outgoing communications that was tracked—it simply describes the general architecture of internet communication while leaving the plaintiff-specific connection entirely unpled.

**3. Plaintiffs Cannot Clear Even the Lower Bar That Proved Fatal in *MyFitnessPal*.**

The insufficiency of Plaintiffs' allegations is thrown into contrast by this Court's decision in *MyFitnessPal*. In *MyFitnessPal*, plaintiffs alleged their interactions with a health and fitness tracking website had been intercepted after they opted out of cookies. *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *1, slip op. (N.D. Cal. Jan. 27, 2026). The nature of those interactions was inherently more sensitive: the website's primary product was designed to help users track their calorie intake, exercise, and health and fitness goals, *id.* at *4, and this Court acknowledged that the type of information allegedly collected—"interactions with MFP related to personal topics like nutrition and fitness tracking"—could plausibly be "embarrassing, invasive, or otherwise private." *Id.* at *3. Yet the Court still dismissed the pen register claim because plaintiffs "ha[d] not alleged that they ever communicated with the website" and therefore could not "allege that the 'dialing, routing, addressing, or signaling information' relating to any such communication was unlawfully tracked." *Id.* at *8.

Plaintiffs here cannot clear even that lower bar. In *MyFitnessPal*, the nature of the website—a personal health and fitness tracker—gave rise to a plausible inference that interactions involved sensitive personal information. Here, Plaintiffs allege interactions with a commercial firearms website that does not even sell firearms: D'Antonio browsed t-shirts, FAC ¶ 74; Thayer navigated product specification pages, FAC ¶¶ 82-83; and Garcia conducted unspecified searches for firearms and accessories, FAC ¶ 91. These are commercial browsing activities that do not implicate any sensitive sphere. More importantly, Plaintiffs do not even identify what specific content was transmitted during any of these visits. If the more substantive *MyFitnessPal* allegations were insufficient, Plaintiffs' bare commercial browsing descriptions are inadequate.

### D. The FAC fails to state a plausible or particularized claim for common law fraud, deceit, and/or misrepresentation as to Cuevas Garcia.

The Court dismissed the common law fraud, deceit and misrepresentation claim as to Cuevas Garcia because she "inadequately plead the 'when . . . of the misconduct alleged." Order at 10:7-8. Plaintiff's amendment fares no better. "A plaintiff alleging fraud under California law must plead facts demonstrating five elements: (1) a misrepresentation; (2) the speaker's knowledge of falsity; (3) the intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage." *Bird v. Real Time Resols., Inc.*, 183 F. Supp. 3d 1058, 1061 (N.D. Cal. 2016) (quotation omitted). A claim for misrepresentation has similar elements, requiring a knowingly or recklessly false statement of an "important fact" intended to induce reliance that was a substantial factor in causing the plaintiff's harm. *See id.* Either claim is subject to the pleading standards of Rule 9(b), which requires allegations regarding the "who, what, when, where, and how of the misconduct charged." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1079 (N.D. Cal. 2022); *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003); *Stemmelin v. Matterport, Inc.*, No. C 20-04168, 2020 WL 6544456, at *2 (N.D. Cal. Nov. 7, 2020).

In the original complaint, Cuevas Garcia alleged she "visited Smith & Wesson's website in or around 2024." Order at 10:8-9. The Court found "this level of generality fails to provide Smith & Wesson with adequate notice. Smith & Wesson cannot, for example, determine what specific representations regarding cookies were made on its website or how the website was using any cookies placed on users' devices at the time Cuevas Garcia visited the website." *Id.* at 10:9-12. The Court granted leave to amend specifically so that Garcia could provide the specificity Rule 9(b) requires.

In a failed attempt to remedy this deficiency, the FAC now alleges only that "[b]etween June and August of 2024, Plaintiff Reina Cuevas Garcia visited the Website multiple times to browse for and research multiple firearms and firearm accessories." FAC ¶ 91. This amendment narrows the timeframe from twelve months to approximately ninety days, but it does not cure the fundamental deficiency the Court identified. A three-month window spanning multiple

unspecified visits still fails to identify "when" the alleged misconduct occurred with the particularity Rule 9(b) demands.

The Court dismissed because S&W "cannot determine what specific representations regarding cookies were made on its website or how the website was using any cookies placed on users' devices at the time Cuevas Garcia visited the website." Order at 10:9-12. That reasoning applies with equal force to a ninety-day window as it does to a twelve-month one. Cookie consent banners, consent management platform configurations, and third-party tracking technologies can and do change over time. Garcia's amendment replaces one imprecise range with a somewhat narrower but still imprecise range—it identifies a window of visits rather than a specific visit, and does not identify on which date within that window she encountered the cookie consent banner or when specifically the alleged misconduct occurred.

By contrast, this Court found that Plaintiffs D'Antonio and Thayer adequately pled the "when" requirement because D'Antonio alleged a visit "in or around February 2025" and Thayer alleged a visit "in or around November 2024"—each identifying a specific month tied to a specific visit. Order at 9:24, 10:1-4. Indeed, the contrast between the other two Plaintiffs' allegations and Garcia's underscores the deficiencies—D'Antonio and Thayer each identified a single visit within a single month, while Garcia alleges "multiple times" over three months without identifying any specific occasion on which she encountered the cookie consent banner or was allegedly misled.

## VI. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' FAC with prejudice.

Dated: March 31, 2026

Respectfully Submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

*/s/ Alexis M. Buese*

Alexis M. Buese (SBN 259812)
abuese@bradley.com
1001 Walter Street, Suite 1000
Tampa, FL 33602-5809
Telephone: (813) 559-5511
Facsimile: (813) 229-5946

Erin J. Illman (SBN 238262)

BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Phone: (704) 338-6026
Email: eillman@bradley.com

*Attorney for Defendant Smith & Wesson Inc.*