Alexis M. Buese (State Bar No. 259812)
abuese@bradley.com
1001 Walter Street, Suite 1000
Tampa, FL 33602-5809
Telephone: (813) 559-5511
Facsimile: (813) 229-5946

Erin J. Illman (SBN 238262)
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Phone: (704) 338-6026
Email: eillman@bradley.com

*Attorneys for Defendant Smith & Wesson Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| TONY D'ANTONIO, THOMAS THAYER, and REINA CUEVAS GARCIA, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SMITH & WESSON INC.,<br><br>Defendant. | Case No. 5:25-cv-03085-PCP<br><br>[*Assigned to Hon. J. Casey Pitts*]<br><br>**SMITH & WESSON'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date: May 21, 2026<br>Hearing Time: 10:00 A.M.<br>Courtroom: Courtroom 8<br><br>Action Filed: April 4, 2025<br>FAC Filed: March 17, 2026 |

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .................... ii

MEMORANDUM OF POINTS AND AUTHORITIES .................... 1

I. INTRODUCTION .................... 1

II. ARGUMENT .................... 1

A. Plaintiff Thayer Has Not Pled Facts Entitling Him to Tolling Doctrines for His Untimely Claim. .................... 1

B. The FAC Fails to State a Claim Under CIPA Section 631 .................... 4

1. Plaintiffs' Opposition Cannot Excuse the Failure to Allege "Contents" of "Communications." .................... 4

2. Plaintiffs Still Have Not Alleged That Any Interception Occurred "While in Transit." .................... 7

3. Plaintiffs Concede That Six of Fourteen "Private Communications" Categories Are Record Information. .................... 10

C. The FAC's Pen Register Claim Still Fails. .................... 11

D. Plaintiff's Three-Month Period Still Fails to Provide Defendant with Adequate Notice. .................... 12

E. The Court Should Deny Plaintiffs' Second Request for Leave to Amend Due to Their Repeated Failure to Cure Deficiencies and as Futile .................... 13

III. CONCLUSION .................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*A.S. v. SelectQuote Ins. Servs.*, No. 3:23-cv-02258-RBM-MSB, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ....... 4

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....... 3

*Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023) ....... 6

*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010) ....... 13

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) ....... 9

*Diamond S.J. Enter., Inc. v. City of San Jose*, No. 18-CV-01353-LHK, 2018 WL 5619746 (N.D. Cal. Oct. 29, 2018) ....... 2

*Durnford v. MusclePharm Corp.*, 907 F.3d 595 (9th Cir. 2018) ....... 2

*Foman v. Davis*, 371 U.S. 178 (1962) ....... 13

*Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914 (Cal. 2005) ....... 3

*Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024) ....... 4

*Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112 (C.D. Cal. 2024) ....... 10

*Love v. Ladder Fin., Inc.*, No. 23-cv-04234-VC, 2024 WL 2104497 (N.D. Cal. May 8, 2024) ....... 4

*Mitchell v. Sonesta Int'l Hotels Corp.*, No. 2:24-cv-02603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024) ....... 7, 8

*R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024) ....... 3

*Ramirez v. City of Buena Park*,
560 F.3d 1012 (9th Cir. 2009) ....................................................................................10

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)....................................7, 9

*Rosales v. FitFlop USA, LLC*,
882 F. Supp. 2d 1168 (S.D. Cal. 2012)..........................................................................12

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-CV-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ..........................4

*Shah v. MyFitnessPal, Inc.*,
No. 25-cv-04430-PCP, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ...............................11, 12

*Sierra Network, Inc. v. Tobacco Import USA*,
No. CV 07-6104 DSF, 2008 WL 11338578 (C.D. Cal. June 2, 2008) ...................................12

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ..........................................................................................9

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ............................................................................9

*Thompson v. BMW of N.A., LLC*,
No. SACV 17-01912-CJC-KS, 2019 WL 988694 (C.D. Cal. Jan. 10, 2019)..........................3

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ...............................................................................8

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................................9

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) ..........................................................................................4

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) ......................................................................................14

*Wiley v. Universal Music Group, Inc.*,
No. 25-CV-03095-PCP, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ..............................13

*Wilson v. Frito-Lay N.A., Inc.*,
961 F. Supp. 2d 1134 (N.D. Cal. 2013) ..........................................................................13

*Wu v. Sunrider Corp.*,
793 F. App'x 507 (9th Cir. 2019) .....................................................................................2

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................................................................4, 6, 10

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ....................13

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................6, 10

**Statutes**

Cal. Bus. & Prof. Code § 17200 ....................12

Cal. Penal Code § 631 ....................4, 9

Cal. Penal Code § 631(a) ....................6, 10, 11

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................2, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Opposition confirms what the Motion demonstrated: the First Amended Complaint ("FAC") fails to cure the deficiencies this Court identified in its February 17, 2026 Order (the "Order"). Despite clear guidance from the Court on precisely what was missing, Plaintiffs chose to recycle generic descriptions of how cookies and tracking technologies function across the internet, dress them in new technical vocabulary, and then incorporate those abstractions wholesale into each Plaintiff's individual sections. The Court already found this approach insufficient. It remains insufficient now.

The Opposition does not grapple with the substance of S&W's arguments. Instead, it evades the Court's directives and relies on conclusory assertions that cannot substitute for the plaintiff-specific factual allegations this Court required. On the CIPA wiretapping claim, Plaintiffs still have not alleged what specific contents of their communications were intercepted, nor have they alleged facts—as opposed to conclusions—showing that any interception occurred while any communication was in transit. On the pen register claim, Plaintiffs still have not identified the specific "dialing, routing, addressing, or signaling information" for their own outgoing communications that were tracked, as the Court expressly required. On fraud, Cuevas Garcia's three-month window is no more adequate than the twelve-month window the Court already rejected. And Plaintiffs' newly minted statute-of-limitations tolling theories, raised for the first time in their Opposition, find no support in the FAC itself.

The Court should dismiss the challenged claims. Plaintiffs have now had two opportunities to plead viable claims and have failed both times. Further amendment would be futile.

## II. ARGUMENT

### A. Plaintiff Thayer Has Not Pled Facts Entitling Him to Tolling Doctrines for His Untimely Claim.

As S&W acknowledged in its initial motion, Plaintiff Thayer's visit "in or around November 2024" permissibly falls within the applicable limitations period. FAC ¶ 83. But Thayer's amendments added a new visit—one only alleged as occurring sometime "[i]n 2019."

FAC ¶ 82[1]. Thayer's opposition bluntly reveals the motive behind this amendment; Thayer now claims his allegations also "are sufficient to allege tolling for various prospective class members" which would in turn greatly expand the purported class beyond the class definition that appears in the FAC. Opp. at 5:3–4. Thayer's vague amendment cannot remedy that Thayer has pled himself out of his claims "by admit[ting] all the ingredients of an impenetrable [statute of limitations] defense." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018).

But rather than confront the facial untimeliness of these claims, Plaintiffs pivot to tolling doctrines they never pled: the discovery rule and fraudulent concealment. Neither saves Thayer's claims because the FAC itself contains no allegations supporting either of Plaintiffs' new tolling theories. Plaintiffs do not allege when they discovered their claims, how they discovered them, or what diligence they exercised. As the Ninth Circuit has held, to invoke delayed discovery, a plaintiff "must show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Wu v. Sunrider Corp.*, 793 F. App'x 507, 510-511 (9th Cir. 2019). The FAC pleads none of this.[2]

Instead, to justify tolling under the discovery rule, the Opposition relies solely on Plaintiffs' supposed lack of technical knowledge. Specifically, they assert that "Plaintiffs have alleged they do not know how the Website is programmed" and "determining whether Defendant is placing unauthorized cookies and transmitting data to third parties requires specialized software developer training." Opp. at 4:24–27, *see also* FAC ¶¶ 81, 90, 98. These assertions do not justify tolling. "[T]he California Supreme Court has stated that a plaintiff has reason to discover the facts essential

[1]To the extent Thayer's 2019 visit could support a fraud claim independent of the timeliness defect, it cannot satisfy Rule 9(b). The FAC alleges only that Thayer visited the Website "[i]n 2019" without identifying a specific month, date, or even season. FAC ¶ 82. This Court dismissed Cuevas Garcia's fraud claim because her allegation of a visit "in or around 2024" was too vague. Order at 10. Thayer's bare reference to "2019" identical in scope to the one the Court already rejected, is plainly insufficient under the same reasoning.

[2] "Plaintiff[s] cannot amend the complaint through briefing," and "[a]llegations raised for the first time in the briefing are not considered in determining the sufficiency of the complaint." *Diamond S.J. Enter., Inc. v. City of San Jose*, No. 18-CV-01353-LHK, 2018 WL 5619746, at *6 (N.D. Cal. Oct. 29, 2018) (quotation omitted). Defendant believes the Court should disregard these arguments, which have been raised for the first time in Plaintiffs' Opposition, and by responding does not imply they shouldn't be waived.

to his claim when he 'has reason at least to suspect a factual basis for its elements.'" *Thompson v. BMW of N.A., LLC*, No. SACV 17-01912-CJC-KS, 2019 WL 988694, at *4 (C.D. Cal. Jan. 10, 2019) (citing *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005)). Plaintiffs need not know precisely how S&W's Website is programmed, or even understand Chrome Developer Tools, to have reason to suspect the factual basis for their claims.

The FAC's lack of allegations regarding how Thayer ultimately discovered the facts supporting his legal claims is telling. He does not allege he began receiving targeted advertisements, marketing materials, or other indicia that his activity on the Website had been tracked. *See, e.g., R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 886 (C.D. Cal. 2024) ("After Meta viewed and analyzed Plaintiffs' private communications with Walgreens, Plaintiffs began receiving targeted ads on their Facebook accounts related to the medical conditions and treatments they disclosed to Defendant."). Instead, the FAC is silent on how exactly Thayer ever learned of his alleged injury. Such silence should not permit him to operate as a tolling vehicle through which Plaintiffs may expand their class. *See generally* FAC ¶¶ 74–81 (D'Antonio), 82–90 (Thayer), 91–98 (Cuevas Garcia), Opp. at 5:3–5.

The doctrine of fraudulent concealment suffers the same fatal flaw. Even assuming *arguendo* that S&W both affirmatively misled Plaintiffs and that Plaintiffs had no actual or constructive knowledge, Plaintiffs still have not shown that this doctrine applies. The FAC does not allege that Plaintiffs tried to uncover the facts behind their claim at all—let alone that they did so "diligently." *See Brown v. Google LLC,* 525 F. Supp. 3d 1049, 1070 (N.D. Cal. Mar. 12, 2021) (enumerating elements of fraudulent concealment). The Opposition blames S&W's "affirmative misrepresentation, and Plaintiff's lack of technical expertise," to claim "Plaintiff acted diligently in bringing this action after learning of Defendant's privacy violations in 2024." Opp. at 5:17–19. But nowhere in the FAC—let alone paragraphs 30, 76, 78, 80–81, 85, 89–90, 93, or 97–98—does Plaintiff Thayer or any other Plaintiff demonstrate how or when they truly "learned" about any violations. They certainly do not allege facts showing they "acted diligently in trying to uncover the facts." *Brown*, 525 F. Supp. at 1070. Thayer's 2019 visit suffers from an even more fundamental defect that also forecloses tolling: the FAC does not allege that Thayer encountered

the "Reject All" cookie consent banner or clicked "Reject All" during that 2019 visit. FAC ¶ 82. Nor could he have—S&W's Website did not offer a "Reject All" option in 2019.[3]

A court may only dismiss a claim as untimely at the pleading stage when, as here, "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). Plaintiff Thayer was unable to plead any facts revealing why his visit in 2019 should be entitled to tolling. Instead, where the FAC fails to include a single assertion regarding how or when Plaintiff Thayer—let alone any other Plaintiff—learned of their claims, dismissal is both timely and appropriate.

### B. The FAC Fails to State a Claim Under CIPA Section 631

#### 1. Plaintiffs' Opposition Cannot Excuse the Failure to Allege "Contents" of "Communications."

This Court dismissed Plaintiffs' wiretapping claim because Plaintiffs did "not specifically allege that their communications were intercepted" and did "not allege that, in interacting with Smith & Wesson's website, they personally engaged in any communications with the website whose content could have been intercepted." Order (ECF No. 48) at 7:11, 7:15–16. The Court cited multiple cases in which plaintiffs described specific website interactions—submitting forms, entering search terms, providing personal information—that courts found sufficient. *Cf. Yoon v.*

---

[3] The FAC attaches a screenshot of S&W's cookie consent banner but only as it appeared at a later date—it does not include the version in effect during Thayer's newly pled 2019 visit. This Court can consider on a motion to dismiss the cookie banner in effect at the time of the allegation. *See, e.g.*, *A.S. v. SelectQuote Ins. Servs.*, No. 3:23-cv-02258-RBM-MSB, 2024 WL 3881850, at *3–4 & n.4 (S.D. Cal. Aug. 19, 2024) (collecting cases considering website privacy policies under judicial notice and incorporation by reference doctrine considering identified effective date of privacy policy); *Love v. Ladder Fin., Inc.*, No. 23-cv-04234-VC, 2024 WL 2104497, at *2 n.2. (N.D. Cal. May 8, 2024) (considering privacy policy incorporated by reference where "[t]he Complaint quotes selectively from the Privacy Policy"; dismissing CIPA and common law invasion of privacy claims); *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *4 (C.D. Cal. Feb. 27, 2025) (incorporating by reference privacy policies in effect at the time of plaintiff's visits where plaintiff cited to them and they formed the basis of her claims). S&W's banner in effect at the time of that visit is properly before the Court because Thayer's claims are founded on that banner and it is referenced repeatedly in the FAC. *See* FAC ¶¶ 24, 34. The full cookie banners shown on S&W's home page from three different months in 2019 are attached to the Declaration of Alexis M. Buese. *See* Exs. 1–3, Declaration of Alexis M. Buese in Support of Reply Brief. Because Thayer did not particularly allege *when* in 2019 he visited, S&W has attached three different months to demonstrate that at no point in 2019 was "Reject All" an option.

*Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1077, 1083 (C.D. Cal. 2021); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 854–55 (C.D. Cal. 2024).

Plaintiffs argue the FAC "now contains such allegations, identifying the type of browsing, navigation, and searching each Plaintiff did on the Website." Opp. at 6:23–24. But the Opposition then concedes the game: Plaintiffs admit they "still have not listed out the specific search terms they entered or other specific communications that were transmitted to third parties." Opp. at 7:12–13. Undeterred, they argue this Court should not require them to do so because "the detailed information is in the possession of Defendants and third parties, not plaintiffs" and because Plaintiffs "are not testers and lack the technical sophistication to observe their network activity in real time." Opp. at 7:12–18.

This argument is a shell game. Plaintiffs conflate two entirely different categories of information: (1) what Plaintiffs themselves put into the Website (*i.e.*, the substance of their own interactions) and (2) what the Website's backend technology did with that information. The Court's Order required the former, not the latter. Plaintiffs need not know or plead how S&W's Website is programmed, which cookies were firing, what data was transmitted to which Third Party, or how any interception mechanism functioned. Those are facts that go to whether and how a CIPA violation occurred. But Plaintiffs must be able to say what they themselves communicated to the Website—what they typed into a search bar or what information they entered into a form. That information is exclusively within Plaintiffs' own knowledge. A plaintiff who searched for "9mm holsters" knows she searched for "9mm holsters." A plaintiff who entered his email address into a checkout field knows he entered his email address. Plaintiffs' claim that they lack technical sophistication may explain why they did not know they had a legal claim, but it cannot excuse their failure to allege the substance of their own actions on the Website.

The FAC's plaintiff-specific allegations confirm this deficiency. D'Antonio alleges he "navigated to the 'Gear' link," "selected filters," and "browsed different options." FAC ¶ 74. He also alleges he "used the search bar to search for t-shirts and other merchandise." *Id.* But he does not identify what specific terms he entered into the search bar, what specific filters he selected, or what content was thereby communicated. These are facts he knows—or should know—yet he

withholds them. Likewise, for Thayer's November 2024 visit (the only timely basis for his CIPA claims), he alleges only that he "navigated to the web pages displaying information" for a particular firearm. FAC ¶ 83. This is passive consumption of website content, not a communication whose content could be intercepted. *See Yoon*, 549 F. Supp. 3d at 1082 (holding that "keystrokes, mouse clicks, pages viewed" are not "contents" under Section 631(a)). Finally, Cuevas Garcia alleges she "used the Website's search bar to search for different firearms, calibers of firearms, and accessories" (FAC ¶ 91), but she does not identify a single search term—even though she plainly knows what she searched for. A bare allegation that a plaintiff used a search bar for unspecified products within a general category is not a communication with identifiable content.

Nor can the Chrome Developer Tools screenshots salvage the "contents" deficiency. Plaintiffs point to these screenshots (FAC ¶¶ 29–30) as support for their theory that intercepted contents were transmitted. Opp. at 7–8. But these screenshots are not individualized to any named Plaintiff. They do not depict D'Antonio's browsing session, or Thayer's, or Cuevas Garcia's. They are generic captures of network traffic from an unidentified testing session.[4] These generic investigator-generated exhibits cannot substitute for the plaintiff-specific factual allegations this Court required. Put another way, these screenshots show what any website's network traffic looks like in the abstract; they do not show what any named Plaintiff communicated to S&W's Website or what content of that communication was intercepted.

Under Section 631(a), "contents" means "the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Plaintiffs must allege not merely that they used a website, but that they transmitted a communication with discernible substance or meaning. They have not done so. Each Plaintiff's section ends with a wholesale cross-reference to the FAC's generic technical allegations at paragraphs 35–68—descriptions of how Google, Twitter, Listrak, and Lightbox function across the internet generally.

[4] S&W noted in its Motion that D'Antonio has a pattern of filing materially similar CIPA lawsuits against unrelated entities. This allegation went unanswered. The absence of any response reinforces the inference that the FAC relies on generalized, investigator-driven allegations rather than facts tied to D'Antonio's own experience. *See Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023).

*See* FAC ¶¶ 79, 88, 96. This cross-referencing device cannot substitute for plaintiff-specific factual allegations connecting the generic technology descriptions to any Plaintiff's specific session, device, or transmitted data.

Moreover, even if the Court were to accept that some subset of the FAC's fourteen categories of "Private Communications" could constitute "contents," the vast majority plainly constitute record information as a matter of law: "device information" (type of device, operating system, browser type); "session information" (date, time, duration); "user identifiers" (unique tracking IDs); "geolocation data" (IP-based location); "referring URLs" (routing path); and "visit history" (frequency and number of visits). Stripping away these record information categories leaves only a narrow subset—principally "user input data"—that could even potentially constitute contents. But as shown above, no Plaintiff has adequately alleged transmitting any such data.

**2. Plaintiffs Still Have Not Alleged That Any Interception Occurred "While in Transit."**

The Court did not reach the "in transit" element in its prior Order because the failure to allege communications was "dispositive." Order at 7. The argument remains fully preserved and is independently fatal.

Plaintiffs rely on the FAC's new paragraphs 57–64 to argue that Third Parties intercept communications "in real time." Opp. at 7–9. Rather than allege that any specific processing platform was used by Google, X Corp., Listrak, or Digioh in connection with S&W's Website, the FAC offers only generic "examples" of stream processing technology, such as "Apache Flink, Kafka, and Amazon Kinesis" (FAC ¶ 62), that the FAC itself acknowledges are merely illustrative of how data processing systems operate across the industry generally. The FAC does not allege that any of these platforms are used by any of the identified Third Parties in connection with S&W's Website. Paragraph 57 asserts, on "information and belief," that Third Parties "intercept user communications while those communications are in transit." FAC ¶ 57. This is a bare legal conclusion, not a factual allegation. See *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [the defendant] is intercepting

their data in transit."). Plaintiffs' reliance on *Mitchell v. Sonesta Int'l Hotels Corp*., No. 2:24-cv-02603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701, at *19–20 (C.D. Cal. Oct. 4, 2024) is equally misplaced. Even the *Mitchell* court deemed the in-transit element met only because the plaintiffs in that case alleged that their communications were "duplicated and sent to third parties at the same moment they were transmitted to the website." *Id.* Plaintiffs here allege no such simultaneous duplication tied to any specific Plaintiff's communication.

Plaintiffs also rely on the same generic Chrome Developer Tools screenshots discussed above (FAC ¶¶ 29–30) to argue that in-transit interception occurred. Opp. at 8. As explained, these screenshots do not appear to be drawn from any named Plaintiff's browsing session. But even setting that aside, these screenshots contain no timestamps, no sequencing information, and no indication of when a "Reject All" selection occurred relative to the logged requests. A tool that captures all page-load activity regardless of consent state cannot establish that any specific request was contemporaneous with any communication. See *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (dismissing where "simultaneity claims are just too conclusory to survive").

Plaintiffs also fail entirely to address S&W's independent argument that the screenshots do not establish that any identified communication was intercepted—as opposed to routine network requests being generated in the ordinary course of page loading. *See* Motion (ECF No. 53) at 11–12. S&W argued that the screenshots do not distinguish between first-party and third-party cookies, do not identify the substance of any transmitted information, and do not show that any particular request involved the contemporaneous interception of a communication rather than standard browser behavior. *Id.*

Plaintiffs' Opposition does not dispute any of this. Their entire response to S&W's challenge to the screenshots consists of a single sentence dismissing it as a "distraction" and asserting that the screenshots are "specific factual allegations of what occurred on the Website." Opp. at 8:1–4. But labeling S&W's argument a distraction is not a response—it is a concession dressed in bravado. Plaintiffs do not explain how the screenshots distinguish intercepted communications from routine page-load activity. They do not identify timestamps or sequencing

data in the screenshots. They do not argue that any particular depicted request corresponds to a specific communication by any named Plaintiff. And they do not contest that Chrome Developer Tools captures all page-load activity regardless of consent state, making it impossible to infer from the screenshots alone that any request was contemporaneous with any communication.

This silence is telling. Where a party fails to respond to a specific argument in opposition, the Court may treat the argument as conceded. See *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (treating arguments not addressed in opposition as conceded). Plaintiffs had every opportunity to explain how the screenshots support an inference of interception rather than routine browser behavior. They chose instead to wave the argument away with a single sentence. The Court should hold them to that choice.

The consequence of this concession is significant. The screenshots are the only purportedly concrete, factual evidence Plaintiffs offer to bridge the gap between their generic technical allegations (FAC ¶¶ 57–64) and the specific factual showing the in-transit element demands. *See* Opp. at 8:1–4. Without the screenshots, Plaintiffs are left with nothing but conclusory assertions that interception occurred "in real time"—precisely the kind of bare legal conclusion that *Rodriguez*, *Cody*, and this Court's own precedent have held insufficient to survive a motion to dismiss. *See Rodriguez*, 2022 WL 214552, at *2; *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024). Indeed, these deficiencies do more than leave a gap in Plaintiffs' pleading—they "affirmatively undermine" the FAC's "information and belief" allegations that protected communications were intercepted. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim where "conclusory allegation that Vizio intercepted their electronic communications 'during transmission' was supported only by "vague allegations about how Vizio's data collection occurs in real-time"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001) (court need not accept allegations contradicted by the complaint's own exhibits). As a result, the FAC is inadequately pled, and the Court should dismiss the CIPA section 631 claim.

### 3. Plaintiffs Concede That Six of Fourteen "Private Communications" Categories Are Record Information.

The Motion demonstrated, category by category, that the majority of the fourteen data types the FAC labels "Private Communications" constitute record information rather than "contents" as a matter of law. Mot. at 14–17. Specifically, S&W showed that "device information" (browser type, operating system, device type), "session information" (date, time, duration of visit), "user identifiers" (unique tracking IDs such as the gacid value), "geolocation data" (IP-derived location), "referring URLs" (the website that sent a user to S&W's site), and "visit history" (frequency and number of visits) are all characteristic information about the communication rather than its substance or meaning. *See In re Zynga Priv. Litig.*, 750 F.3d at 1106 (record information "includes the name, address, and subscriber number or identity of a subscriber"); *Yoon*, 549 F. Supp. 3d at 1082 ("browser type" and "operating system" are not contents); *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1123–24 (C.D. Cal. 2024) (geolocation and IP addresses are record information). S&W further showed that the FAC's own technical exhibits confirm this conclusion: the gacid identifier (FAC ¶ 40), the npa advertising configuration parameter (FAC ¶ 41), the user-agent string (FAC ¶¶ 44–45), and the IDE advertising cookie (FAC ¶ 43) are all device-level identifiers or configuration settings—not communications with substance or meaning.

The Opposition does not address this argument. It does not dispute that device information, session information, user identifiers, geolocation data, referring URLs, and visit history are record information. The Opposition's silence is a concession. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009). These categories of data—which account for the vast majority of the FAC's "Private Communications"—cannot form the basis of a Section 631(a) claim as a matter of law.

Without these categories of information, Plaintiffs' Section 631(a) claim cannot survive. What remains, at most, is a narrow residual category: "user input data" and, arguably, certain "browsing history" and "shopping behavior" allegations to the extent they reflect specific search queries or product selections that reveal what a user was seeking to communicate. But as discussed above, not one of the three named Plaintiffs has alleged specific content within even these narrow

categories. D'Antonio does not identify what he typed into the search bar. FAC ¶ 74. Thayer's only timely visit alleges no user input whatsoever—only passive navigation to product pages. FAC ¶ 83. And Cuevas Garcia describes only the general category of her searches without identifying specific terms. FAC ¶ 91. The FAC thus cannot sustain a Section 631(a) claim even as to the narrow category of data that could theoretically constitute "contents," because no named Plaintiff has alleged that they transmitted any such data in a form capable of interception. The Section 631(a) claim fails in its entirety.

**C. The FAC's Pen Register Claim Still Fails.**

This Court dismissed the pen register claim and directed that, should Plaintiffs choose to amend, "they must identify not only their communications with Smith & Wesson's website but also the specific 'dialing, routing, addressing, or signaling information' for outgoing communications that was tracked." Order at 9:6–9. The Opposition never explains how the FAC complies with this directive. Instead, Plaintiffs argue that they cannot "be expected to know the specific numbers and headers that were transmitted" because they are not "technically sophisticated." Opp. at 10:23–25. That is not S&W's position. As set forth in the Motion, the deficiency is more fundamental: Plaintiffs have not even alleged what specific communication they sent, let alone what signaling information accompanied it.

The FAC's new technical paragraphs (¶¶ 65–68) describe categories of network-level metadata—TCP/UDP port numbers, TLS handshake metadata, HTTP Host headers, and destination IP addresses—in the abstract, without connecting any of that metadata to any Plaintiff's specific session or outgoing communication. These paragraphs describe how internet communications work generally, applicable to every HTTPS connection made by any device to any website anywhere. They are not the plaintiff-specific identifications the Court required.

The Motion relied in part on *Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026). In *Shah*, the website's primary product was designed to help users track their calorie intake, exercise, and health and fitness goals, and this Court acknowledged that the type of information allegedly collected could plausibly be "embarrassing, invasive, or otherwise private." *Id.* Yet the Court still dismissed because plaintiffs "ha[d] not alleged that they

ever communicated with the website." *Id.* Plaintiffs here fare worse: they allege interactions with a commercial firearms website limited to browsing t-shirts, navigating product specification pages, and conducting unspecified searches. The Opposition does not mention *Shah* at all. That silence is itself a concession that Plaintiffs have no answer.

### D. Plaintiff's Three-Month Period Still Fails to Provide Defendant with Adequate Notice.

Plaintiff Cuevas Garcia attempts to justify unspecified allegations that "[b]etween June and August of 2024" she "visited the Website multiple times," by claiming there are "no allegations that the Website or cookie banner changed during this period." FAC ¶ 91, Opp. at 11:18–19. This justification fails for two discrete reasons. First, her case in support involved alleged violations of Cal. Bus. & Prof. Code § 17200 relating to a "uniform course of fraudulent conduct" which were only "sufficiently specific *in the context of* exposure to a long-term advertising campaign." *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1175 (S.D. Cal. 2012) (emphasis added). That makes sense—an advertising campaign does not change over time. A website, however, frequently changes, which is precisely why this Court found it pertinent that Defendant receive "adequate notice" of "what specific representations regarding cookies were made on its website or how the website was using any cookies placed on users' devices *at the time*." Order at 10:9–11 (emphasis added).

Second, by claiming Defendant has not alleged the Website or cookie banner changed throughout the alleged three-month period, Cuevas Garcia impermissibly attempts to shift "[t]he plaintiff['s]…burden of pleading sufficient facts to state a claim" onto Defendant. *Sierra Network, Inc. v. Tobacco Import USA*, No. CV 07-6104 DSF (CTx), 2008 WL 11338578, at *2 (C.D. Cal. June 2, 2008). Even assuming the Website or cookie banner was the same during Cuevas Garcia's "multiple [visits] over a three-month period," (Opp. at 11:16), this still does not provide Defendant adequate notice to know "how the website was using any cookies placed on users' devices at the time Cuevas Garcia visited the website." Order at 10:9–12. Instead, Cuevas Garcia's inability to particularly allege the "when" has left Defendant unable to "determine what specific representations regarding cookies were made on [the Website] on the specific dates that [Cuevas

Garcia] visited those websites or determine how the websites were using any cookies placed on users' devices on those specific dates." *Wiley v. Universal Music Group, Inc.*, No. 25-CV-03095-PCP, 2025 WL 3654085, at *10 (N.D. Cal. Dec. 17, 2025).

Plaintiff Cuevas Garcia was only able to identify she visited the Website "[i]n or around 2024." Compl. (ECF No. 1) ¶ 78. After a chance at amendment, she still could not narrow her visit beyond sometime "[b]etween June and August of 2024." FAC ¶ 91. This meager attempt to cure her claim's initial pleading deficiency still fails to satisfy Rule 9(b) and certainly fails to provide Defendant with adequate notice of the specific dates she visited, such that it could determine what specific representations, or which specific cookies, were in place at the time.

### E. The Court Should Deny Plaintiffs' Second Request for Leave to Amend Due to Their Repeated Failure to Cure Deficiencies and as Futile.

Plaintiffs misrepresent the applicable law governing leave to amend. Plaintiffs assert that "leave to amend is only properly denied 'where the amendment would be futile.'" Opp. at 12:4–5. Rather, a court "may exercise its discretion to deny leave to amend due to undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [and] futility of amendment." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In fact, "where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Wilson v. Frito-Lay N.A., Inc.*, 961 F. Supp. 2d 1134, 1139 (N.D. Cal. 2013) (quoting *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1007 (9th Cir. 2009)).

The case presented here is precisely the situation where leave to amend should be denied. The Court's prior order told Plaintiffs precisely what was missing: specific allegations about what communications were intercepted and what routing or signaling information was captured. Order at 7, 9. If Plaintiffs cannot plead those facts now, after having the Court's Order as a roadmap and ample time to investigate, they almost certainly cannot plead them ever. A plaintiff cannot cure a pleading deficiency by simply asserting that the missing facts exist somewhere and might surface

in discovery. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021). Plaintiffs had every opportunity to investigate and plead the necessary facts in the FAC. Their failure to do so is not a basis for granting still more time.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' FAC with prejudice.

Dated: April 21, 2026

Respectfully Submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

*/s/ Alexis M. Buese*

Alexis M. Buese (State Bar No. 259812)
abuese@bradley.com
1001 Walter Street, Suite 1000
Tampa, FL 33602-5809
Telephone: (813) 559-5511
Facsimile: (813) 229-5946

Erin J. Illman (State Bar No. 238262)
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Phone: (704) 338-6026
Email: eillman@bradley.com

*Attorney for Defendant Smith & Wesson Inc.*